UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JOSEPH JENKINS,

               Defendant.

Case No. 5:11-cr-00602-GTS

Notice of Motion

---

    **PLEASE TAKE NOTICE,** that upon the annexed Affidavit of Jeffrey Parry, Esq., the submitted Memorandum of Law and upon all of the prior pleadings and proceedings heretofore had herein, a Motion will be made as follows;

    **DATE, TIME AND PLACE OF MOTION:** Per the Court's Scheduling Order, motions are returnable August 2, 2012 on submit.

    **TYPE OF MOTION:** Defendant seeks an Order of the Court suppressing the evidence seized or, in the alternative, a hearing to determine same. Defendant further seeks discovery of certain materials which, if not in the possession of the United States Attorney, may be under their immediate control. Additionally, Defendant seeks the suppression of any statements or evidence he may have inadvertently divulged to Canadian officials absent an appropriate *Miranda* warning or otherwise in contradiction to his rights under the United States Constitution. As well, defendant seeks leave to file such other motions as may be appropriate together with such other and further relief as the Court may deem just and proper.

Dated: July 8, 2012

                                        Respectfully submitted,

                                        Jeffrey R. Parry, Esq.
                                        Attorney for Defendant Joseph Jenkins
                                        Bar Roll No. 508023
                                        The White House, Suite L103
                                        7030 E. Genesee Street
                                        Fayetteville, N.Y. 13066
                                        (315)424-6115

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JOSEPH JENKINS,

                Defendant.

---

Case No. 5:11-cr-00602-GTS

Affirmation

Jeffrey Parry deposes and states;

1. I am an attorney duly admitted before the District Court for the Northern District of New York and I am counsel for the Defendant herein. As such, I am fully familiar with the facts and circumstances as depicted herein.

2. Upon assuming my duties I investigated this matter and learned of the Canadian court dates depicted in Defendant's Memorandum of Law. To the best of my knowledge, and upon inquiry from at least two sources, I believe that these dates are correct.

3. As to other dates cited in Defendant's Memorandum, they stem from the Court's own record and, as such, no further proof is submitted.

4. As well, I have personally confirmed the fact that Mr. Jenkins' computer was sequestered in a forensics lab many miles from the point of his arrest and that neither he nor his attorney had access to said computer even at the outset of his Canadian trial.

Dated: July 8, 2012

Respectfully submitted,

Jeffrey R. Parry, Esq.
Attorney for Defendant Joseph Jenkins
Bar Roll No. 508023
The White House, Suite L103
7030 E. Genesee Street
Fayetteville, N.Y. 13066
(315)424-6115

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,  Case No. 5:11-cr-00602-GTS

v.

JOSEPH JENKINS,
                       Defendant.

# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION

## PRELIMINARY STATEMENT

Defendant, Joseph Jenkins, is charged in a two count indictment with the following;

1) knowingly and unlawfully transporting child pornography, using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer in violation of Title 18, United States Code, Sections 2252A(a)(1) and 2256(8)(A), and

2) knowingly possessing material that contained one or more images of child pornography, that had been transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2256(8)(A).

Defense counsel submits this Memorandum in support of the attached motion seeking the suppression of evidence and the production of materials which, if not in the possession of the United States Attorney would be under the Government's control and therefore subject to disclosure. Defense counsel further moves for leave to file such additional motions as may be deemed appropriate.

## STATEMENT OF FACTS

On or about May 24, 2009, Joseph Jenkins sought to enter the country of Canada via the Port of Lansdowne, Lansdowne, Ontario, Canada from Wellesley Island, New York. There, Mr. Jenkins encountered members of the Canadian Border Services Agency, (hereinafter CBSA) who conducted a search of his vehicle pursuant to the Canada Customs Act. It is uncontested that the vehicle belonged to Mr. Jenkins and that the vehicle contained items personal to Mr. Jenkins.

2

During the course of their search, CBSA officers encountered two laptop computers and several thumb drives. Upon viewing this equipment, the agents went on to discover what they allege to be multiple images of child pornography. Mr. Jenkins was arrested under the Canada Criminal Code with "Importing-Distributing Child Pornography" and "Possessing Child Pornography". Mr. Jenkins was released a few days later on $10,000.00 bail.

Thereafter, Mr. Jenkins' case proceeded towards trial in a manner and under procedures not unlike those found in American courts with two notable exceptions, Mr. Jenkins was not afforded access to his seized equipment nor, was he provided with the analysis of said equipment that was conducted by the Crown. Mr. Jenkins appeared, either personally or through counsel, upon many appearance dates including; May 25, 2009, May 26, 2009, June 19, 2009, July 3, 2009, October 30, 2009, November 27, 2009, January 8, 2010 and February 5, 2010. Upon each date further delay occurred for the very same reason, the failure of the Crown to disclose to Mr. Jenkins the discovery materials necessary under Canadian law.

Thereafter, and with additional discovery still pending, Mr. Jenkins appeared upon the scheduled trial date of September 13, 2010. Upon arrival he learned that the discovery material, a critical forensic report from the Electronic Crime Section of CBSA, was still not available and the matter was once again adjourned to October 18, 2010. Believing that he would not receive a fair trial for lack of discovery and that his rights were being violated, Mr. Jenkins did not appear at trial at the October proceedings. The Hon. J.D.G. Waugh issued a bench warrant for Mr. Jenkins arrest.

Importantly for our further discussion below, during this entire period Mr. Jenkins was deprived of access to the evidence against him, his computer and peripheral equipment being

3

housed at a forensic laboratory several hours from the place of trial. This occurred even though Mr. Steven J. Edgley, Esq., Mr. Jenkins' Canadian attorney, made repeated demands of the Crown to produce this material.

On or about July 6, 2011, over two years since Mr. Jenkins' original confrontation with Canadian authorities, the Hon. George Lowe issued a Warrant allowing Homeland Security Agents to procure the evidence heretofore held by the Canadian government. A Complaint was subsequently issued on September 12, 2011 by the Hon. Andrew Baxter. Mr. Jenkins was apprehended at his home on or about October 4, 2011 and this action ensued. It is not contested that this arrest was predicated upon the actions of the CBSA. As well, and very obviously, only the October 4, 2011 arrest brought Mr. Jenkins under the authority of this Court.

## ARGUMENT

It almost need not be said that, after a two year hiatus, the subject matter of this case came before a United States District Court. As such, this matter is now subject only to the laws of the United States and, most importantly, its Constitutional protections. In short, regardless of its place of it place of origin, this case must pass muster before the Constitution of the United States if it is to be prosecuted on our shores. As well, it is axiomatic that the Fourth Amendment to the United States Constitution protects its citizens and others upon its shores against unreasonable searches and seizures. It is asserted below that the seizure of Mr. Jenkins' computer without due process constitutes a violation of this Constitutional protection now that the matter stands before an court of the United States.

### Point I: The Search and Seizure of Mr. Jenkins Computer and Peripheral Equipment was Unreasonable Such as to Justify Suppression of the Evidence.

4

Case 5:11-cr-00602-GTS   Document 25-1   Filed 07/09/12   Page 7 of 11

Cases relating to the Boarder Search Doctrine are inevitably controversial as they virtually always involve questions of 4th Amendment infringements and the common desire amongst Americans to be secure in matters involving their own property. Furthermore, a line of cases spanning several decades carves out what has been dubbed the "Border Search Doctrine" which flies in the face of 4th Amendment protections as they exist anywhere but at the border. United States v. Flores-Montano, 541 U.S. 149 (2004) *holding that the dismantling of an automobile gas tank was not intrusive and therefore a reasonable search*. The reasoning of the Court in both Flores-Montano and other cases in this genre, centers upon the notion that the Government's interests in protecting its citizens rises to a zenith at its boarders. Torres v. Puerto Rico, 442 U.S. 465 (1979). Certainly one would be hard pressed to disregard this line of thought.

However, that the United States Supreme Court concluded that "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant" at a border gives one pause. United States v. Montoya de Hernandez, 473 U.S. 531 (1985). Certainly, a blanket rejection of a fundamental right cannot exist without exceptions regardless of the priorities of national security and, as will be brought forth below, some exceptions are indeed in the making as this is written.

It was only a matter of time before the matter of a search of a laptop computer came to the attention of an appellate court. Following this precedent; the Ninth Circuit likened the search of a laptop to the search of any simple container and ruled that reasonable suspicion was not required at a boarder. United States v. Arnold, 523 F.3d 941 (9th Cir. 2008). As the Court may imagine, this was a matter of some controversy and, standing alone, would seem to put an end to the matter at hand. However, in a subsequent case, *United States v. Cotterman*, the Ninth Circuit reestablished the fact that certain search activities may remain prohibited at border crossings and


did so upon a fact pattern which is strikingly familiar to the one at bar. *United States v. Cotterman*, __ F.3d __, 2011 WL 1137302 (9th Cir. March, 30, 2011)

In *Cotterman* the Ninth Circuit examined the issue of whether a border search of an individual's computer which began upon its discovery at the border entry point and ended two days later and 170 miles away was still within the parameters of the Border Search Doctrine. The District Court had ruled in the negative considering it a "simple matter of time and space". Id. Initially, the Ninth Circuit disagreed and ruled that the time/space requirement was essentially irrelevant in light of a line of cases which essentially allowed for an "anything goes" approach at the border. Under this reasoning, a two day search at a distant location for child pornography would stand and Cotterman appeared to be without recourse.

However, upon an extensive review of the several *amicus* briefs filed in that case, the Ninth Circuit agreed to rehear the matter *en banc*. In doing so the Court noted that the above decision of the panel was NOT to be used as precedent in any case in the Ninth Circuit. The *en banc* panel heard oral argument on June 12, 2012 and, obviously, a decision has yet to be rendered.

Nevertheless, it bears mentioning that the facts of the case at bar are far worse than those faced by defendant Cotterman. Specifically, Mr. Jenkins' computer was taken from him prior to his arrest and was transported many miles and several hours away. There the computer was to stay for some sixteen months without his having access to it. Mr. Jenkins faced the prospect of going to trial without having reviewed the evidence against him, the mere suggestion of which flies in the face of the American version of due process. Moreover, Mr. Jenkins was not given even the analysis of his computer as conducted by Canadian forensics, a clear deprivation of his right to confront his accusers and properly prepare for trial. Panic stricken that he was about to

enter into a jury trial wholly unprepared, it is at least understandable that Mr. Jenkins fled the jurisdiction.

Canadians, of course, are not employees of the United States government. In fact, it is conceded that in the present matter they stand as mere witnesses before this Court, nothing more. Nevertheless, the Canadians turned the much delayed and now stale evidence to agents of the Office of Homeland Security rather than delve into extradition proceedings for reasons that are entirely their own. This form of forum shopping is made all the more egrigious by the fact that the case remains upon the Provincial docket and, by Canadian standards at least, trial ready. However, as the two law enforcement agencies acted in concert to bring this case before an American court, they must jointly pass Constitutional scrutiny and, with the Cotterman court still undecided, it remains entirely up to this Court as to whether the case may be legally pursued. In fact, this writer knows of no other case where an appellate court has addressed this precise fact pattern except Cotterman.

It is asserted that the issue as to whether this evidence herein should be suppressed due to a violation of Mr. Jenkins' Fourth Amendment Rights must be answered in the positive. In making this request, the Court is respectfully reminded of the words from the original panel decision in Cotterman.

> Still, the line we draw stops far short of "anything goes" at the border. The Government cannot simply seize property under its border search power and hold it for weeks, months, or years on a whim. Rather, we continue to scrutinize searches and seizures effectuated under the longstanding border search power on a case-by-case basis to determine whether the manner of the search and seizure was so egregious as to render it unreasonable. Id.

As such, the Defendant respectfully requests that the evidence seized and kept from him for such a protracted period be suppressed and this matter be dismissed. Absent that, and in the alternative, the Defendant respectfully requests a hearing to determine the propriety of same.

## II. The Defendant Respectfully Demands the Disclosure of Investigative Materials Which, Upon Information and Belief, are within the Governments' Ability to Acquire.

Noting the use of interagency communications to "flag" the Cotterman vehicle at the border crossing in the above case, and having experience with the use of "wanted cards" in other jurisdictions, the Defendant respectfully demands any materials that the United States Attorney may have, or may be able to require through acts of due diligence, which would have caused the CBSA to stop and search the Jenkins vehicle. United States v. Cotterman, __ F.3d __, 2011 WL 1137302 (9th Cir. March, 30, 2011).

## III. The Defendant Respectfully Demands the Suppression Of any Statements or Evidentiary Materials made to Canadian Authorities Absent Appropriate *Miranda* Warnings.

In the Warrant application to the Hon. George Lowe, it is noted by the Homeland Security Agent that Mr. Jenkins received his "secondary warnings which are the Canadian equivalent of the *Miranda* warnings used in the United States". However, while the CBSA officer conducting the arrest may well have performed admirably under Canadian law, there simply is no perfect fit between the rights protected under the Bill of Rights and those found under Section 10 of the Canadian Charter of Rights and Freedoms. While both are documents of immense merit in depicting the freedoms of their citizens, they simply do not perfectly coincide and a comparative study reveals that at least some rights protected under the United States Constitution are not the subject of its Canadian counterpart. As such, it is entirely a matter of speculation as to whether Mr. Jenkins was appropriately advised of his rights when his freedom was taken from him in Canada. It is, therefore, respectfully requested that any evidence that

arose from this discrepancy must be suppressed at trial and that a hearing is appropriate to determine the nature of said evidence and its admissibility.

## IV. DEFENDANT RESPECTFULLY SEEKS LEAVE TO BRING ANY ADDITIONAL MOTIONS WHICH MAY BECOME NECESSARY.

Counsel has endeavored to bring all motions applicable to the instant case at this time. Defense counsel respectfully requests however, leave to bring any additional motions which may become necessary based upon any possible new developments in the Government's prosecution of the case, the Government's response to the present motions or new facts uncovered by the Defendant's ongoing investigations.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that the Court issue an order granting the relief sought in the annexed Notice of Motion or, alternatively, hold a hearing to resolve all factual and legal issues raised in this motion and grant such other and further relief as the Court may deem just and proper.

Dated: July 8, 2012

Respectfully submitted,

Jeffrey R. Parry, Esq.
Attorney for Defendant Joseph Jenkins
Bar Roll No. 508023
The White House, Suite L103
7030 E. Genesee Street
Fayetteville, N.Y. 13066
(315)424-6115

9