# EXHIBIT B

## WILL SAY STATEMENT

**In the matter of:**     JENKINS, Joseph, ▮▮▮▮▮▮▮▮

**ANTICIPATED EVIDENCE OF:**     HACHE, Glen
Canada Border Services Officer
Canada Border Services Agency
Port of Lansdowne

Will state that he is employed by Canada Border Services Agency and has been employed by them since October 2005.

That he is currently assigned to the Port of Lansdowne, Ontario.

That on May 24, 2009 he was working the 07:30 to 16:30 shift.

That during the hours of 08:00 and 09:00 was assigned to customs secondary examinations.

That at approximately 08:53 he witnessed a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ pulling a flat bed trailer with two ATVs, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ pulled over under the canapé into the secondary area.

That the driver was a male Caucasian.

That he heard over the port radio, Border Services Officer SOUSA-DIAS, Pedro calling from primary inspection line that the occupant of the blue pickup truck pulling the trailer was being referred for Immigration secondary processing.

That HACHE approached the vehicle and the driver presented a US Passport identified as JENKINS, Joseph ▮▮▮▮▮▮▮▮▮▮ and the E67 referral slip marked for Immigration secondary and a declaration of a 1 week stay in Canada with no other declaration, in other words no goods staying in Canada, no currency equal to or greater than $10,000 CAD, no firearms or weapons, no alcohol or tobacco, no commercial goods and no gifts for anyone in Canada.

That at approximately 08:55 HACHE instructed the driver to proceed with his passport inside the traffic office using door marked (1) and to present himself to an Immigration officer and that JENKINS understood and agreed.

That at approximately 08:56 HACHE listened to the preliminary Immigration interview conducted by Border Services Officer BOYD, Melanie at the Immigration counter.

That as a result of the information provided by JENKINS regarding his employment, being a self employed electrician, HACHE decided to conduct an examination of the vehicle for compliance verification.

That at approximately 08:58 HACHE asked JENKINS if he was the owner of the vehicle, and JENKINS said he was, if JENKINS was aware of the contents of the vehicle, and JENKINS said he was, and that if JENKINS packed the vehicle himself, and JENKINS said he yes he did.

That at approximately 08:59 HACHE asked for the keys to the truck and started performing a secondary inspection of the vehicle.

That since Border Services Officers JOHNSTON, Jarret and Border Services Officer GARRAH, Tristan were assigned customs secondary for examinations between the hours of 09:00 and 10:00 and assisted in the search.

That at approximately 09:07 HACHE had finished the examination of the driver side of the truck, both front and back. That at that time GARRAH was finishing up the examination of the back of the truck, meaning the cargo box containing tools for the electrical and construction business.

That at approximately 09:07 JOHNSTON finished the examination of the trailer and proceeded to start with the rear passenger side of the cab. That he noticed a laptop appearing to be new and inside a laptop box with many of the original documentation.

That at approximately 09:08 JOHNSTON approached JENKINS who was standing outside, to ask him if the laptop was new.

That at approximately 09:09 JOHNSTON returned to the truck and said JENKINS told him that he kept the laptop in the box since he did not have a proper laptop computer bag to store it in.

That at approximately 09:10 JOHNSTON turned on a Toshiba laptop located in a box on the rear passenger seat and that JOHNSTON began by inspecting a video and at which time stated he was concerned with what he witnessed.

That at approximately 09:10 HACHE stood beside JOHNSTON and witnessed what appeared to be two prepubescent girls being filmed by a web cam, and that they were wearing tank tops and shorts, and that they were smiling at the camera, touching their fronts moving side to side, getting up then bending down, and some of the poses were construed by HACHE as the girls in the video possibly trying to be seductive for the camera, and that at the top left of the video was a marking of "sexygirl95".

That at approximately 09:11 HACHE suggested the laptop examination be continued inside the Superintendent's office. The reason for the progressive examination was to search for the possibility of suspected child pornography.

That at approximately 09:11 GARRAH noticed a second laptop in the front seat of the cab and that he collected the laptop along with several thumb drives in plain view, for further examination and brought it inside the superintendent's office as well.

That at approximately 09:15 HACHE asked to speak with JENKINS outside. JENKINS followed HACHE outside and immediately asked him why the officers took his laptops inside.

That HACHE told him the examination of laptops may be part of the examination of the contents of the vehicle as per the Custom's Act. JENKINS asked HACHE what the officers were looking for and that HACHE explained that the officers were looking for possible child pornography based on a video that the officers came across while examining the laptop found in the back seat. HACHE was very clear with JENKINS that what he saw was not in itself child pornography but led him to believe that further searching was required. The video being an indicator meant a further examination of the laptops would be necessary.

That HACHE asked JENKINS directly if he had any such child pornography on his laptops, if there were any images or videos on his laptops that would be perceived as child pornography meaning boys or girls under the age of 18 and JENKINS replied "not to my knowledge." That JENKINS proceeded to say "I don't think so". This answer led HACHE to ask JENKINS if he ever downloaded naked pictures of teens or children onto his laptops or computer devices. That JENKINS replied, "ah, no, I don't think so."

That at approximately 09:25 HACHE went back inside the traffic office, to the superintendent's office where GARRAH and JOHNSTON were conducting a thorough examination of the laptops.

That at approximately 09:45 GARRAH located files on a thumb drive belonging to JENKINS that many had girls' ages in the titles being between 9 years and 13 years. That GARRAH selected on named "9yo_vicky_stripping_sucking..." That video started off with one lone Caucasian girl appearing to be prepubescent, with long brown hair wearing a flowered shirt, skirt and leggings. That the video shows the girl taking off her clothes to the point where she is nude from the bottom and continuing with taking off her shirt, but at this point the video was stopped. That this was evidence enough to suspect possession of child pornography and that JENKINS was to be arrested.

That at 09:46 the superintendent on duty was notified and that Investigations be called in for further processing.

That at approximately 09:55 HACHE asked JENKINS to accompany him to the interview room.

That at approximately 09:56 GARRAH arrested JENKINS, that he notified him of the reason being possession / attempting to smuggle child pornography into Canada. That his rights and caution were read from the Officer's Reference Booklet, that JENKINS said he understood.

That at approximately 09:59 JENKINS said "yes" when asked to contact counsel.

That at approximately 10:00 he witnessed GARRAH cuff and frisk JENKINS.

That at approximately 10:02 JENKINS was placed in the cell and asked if he had any medical problems or if he had to take any medications. That JENKINS answered no to both questions.

That at approximately 10:43 JENKINS signed the Vienna Convention form and that he refused to contact an Embassy representative.

That at approximately 12:41 HACHE went over to the warehouse Contraband Detection Unit office to retrieve a Canada Border Services Agency CD called "IC what UC" to assist in the laptop examination. That HACHE witnessed many images that were of nude girls appearing to be in their teens but not able to conclude that they were children without a doubt.

That at approximately 13:40 Investigator officer VINETTE, Marie-Josée arrived at the port of Lansdowne and interviewed the officers involved in this case.

That at approximately 16:26 HACHE and JOHNSTON resumed the search of the truck and trailer for the purpose of collecting any media devices.

That at approximately 16:27 HACHE collected one Olympus digital camera, serial number 408242909, and one generic DVD marked Staples on the cover. The DVD was found on the front passenger seat and the digital camera was in a case and hanging from a cell phone adapter which was plugged into the center dash outlet. That JOHNSTON collected a cell phone found in a small dash compartment.

That at approximately 16:30 HACHE collected 3 Discovery credit cards, 2 Master Cards, and 1 Visa credit card, all in the name of either Joseph JENKINS, or JENKINS ELECTRONICS, which were found in the center console.

That at approximately 16:55 concluded search of vehicle.

Glen Haché
Badge 16181