# EXHIBIT E

## INFORMATION TO OBTAIN A SEARCH WARRANT
### *DÉNONCIATION EN VUE D'OBTENIR UN MANDAT DE PERQUISITION*

Form / *Formule* 1
Section / *Article* 487
of the / *du Criminal Code / Code criminel*

CANADA
PROVINCE OF ONTARIO
*PROVINCE DE L'ONTARIO*

**Toronto**

(Region / *Région*)

INFORMATION of  **Kip WOHLERT**
*Les présentes constituent LA DÉNONCIATION de*

of / *de*  **Ontario Provincial Police**

**Police Officer**

(occupation / *profession*)

hereinafter called the informant, taken. / *ci-après appelé(e) le dénonciateur, portée devant moi.*

The informant says that      **he / il**          has reasonable and probable grounds to believe and does believe that there is(are) in a
*Le dénonciateur déclare qu'*                      *a des motifs raisonnables et probables de croire qu'il y a dans un certain*

certain building, receptacle or place, namely, the / *certain bâtiment, contenant ou lieu, à savoir :*

**Building**

(dwelling-house, building, receptacle, or place / *habitation, bâtiment, contenant ou lieu*)

of  **the Canada Customs Border Service Agancy**
*de*

(owner or occupant of dwelling-house, building, etc. / *propriétaire ou occupant de l'habitation, du bâtiment, etc.*)

at  **Port of Lansdowne 862 Highway 137 Lansdowne, Ontario -  Queens warehouse main building  – traffic office bond**
*(au)*  **room**

(address or location of dwelling-house, building, etc. / *adresse ou emplacement de l'habitation, du bâtiment, etc.*)

**See Appendix "A"**

(describe things to be searched for / *décrire les choses à rechercher*)

which there is reasonable ground to believe / *dont on a des motifs raisonnables de croire qu'elles*

☒ will afford evidence with respect to the commission of an offence against the *Criminal Code*, namely, the offence of
*fourniront une preuve touchant la perpétration d'une infraction au Code criminel, à savoir*

**See Appendix "B"**

(describe offence in respect to which search is to be made / *décrire l'infraction à l'égard de laquelle la perquisition doit être effectuée*)

or / *ou*

☐ "is(are) intended to be used for the purpose of committing an offence against the person for which a person may be
arrested without warrant, namely the offence of
*ou "sont destinées à servir aux fins de la perpétration d'une infraction contre la personne, pour laquelle un individu peut
être arrêté sans mandat, à savoir :*

_____ ."

and that **his** grounds for so believing are that: / *et que ses soupçons reposent sur les motifs suivants :*

(state grounds of belief / *énoncer les motifs*)

**See Appendix "C"**

**WHEREFORE** the informant prays that a ____ rch warrant may be granted to search th__ id
*EN CONSÉQUENCE, le dénonciateur demande qu'un mandat de perquisition soit décerné pour perquisitionner dans ladite(ledit)*

**Building** _____ for the said thing(s).

(dwelling-house, building, etc. / *habitation, bâtiment, etc.*)   *en vue de trouver lesdites choses.*

Sworn before me at   **City**
*Assermenté devant moi, à(au)*

Informant / *Dénonciateur*

of / *de*   **Toronto**

in the Province of Ontario / *dans la province de l'Ontario*

this   **27**   day of   **May / mai** _____, yr.   **2009**
*ce*   *jour de*   *an*

Justice of the Peace / *Juge de paix*

# *Appendix "C"*

**This is Appendix "C" of the Warrant to Search of Kip WOHLERT dated the 27th day of May 2009, Sworn at the City of Toronto, in relation to an application to search the building of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room**

## Introduction

1) I, Kip WOHLERT of the Ontario Provincial Police, Peace Officer, make oath and say as follows that:

2) I am a member of the Ontario Provincial Police and have been so employed since the 30th November 1987. On the 06 February 2006, I was assigned to the Child Pornography Section, of the Investigation Bureau, commonly known as Project "P". My duties are to investigate the possession, manufacturing, distribution, sale, importation and mailing of child pornography. My duties also include investigations relating to the luring of children by means of a computer system over the Internet for the purpose of facilitating the commission of certain sexual offences in relation to children or

1

child abduction. I have personal knowledge of the matters hereinafter deposed to, except where stated to be based on information and belief. I believe that all the information hereinafter deposed to be true.

3) Since my assignment to Project "P", I have personally been involved in investigations involving the possession and distribution of Child Pornography. Several of these investigations have dealt with the distribution of Child Pornography through computers and the Internet.

4) I have been personally trained on computers and I have completed the Canadian Internet Child Exploitation Course through the Canadian Police College. I have been involved in the execution and preparation of numerous search warrants in my career and have received formal training in the preparation of search warrants.

## **Definitions**

5) Hard Drive is removable device from the computer. The hard drive stores the entire computer's information and retains the information when the computer is turned off. A fast hard drive is

needed to supply the CPU with data as fast as it needs it. Hard drive size are typically measured in Gigabytes (GB). Gigabytes. The hard drive is capable of storing computer graphic images, computer graphic movies as well as text data. This data can be forensically recovered upon being live or in a deleted format.

6) It has been my experience that Child Pornography is usually in the form of computer generated graphic image files. These files are usually identified as "GIF" or "JPEG". A "GIF" stands for Graphic Image File and "JPEG" stands for Joint Photographic Expert Group Image. To put it simply, these are photographs that are capable of being viewed and stored on a computer.

7) It has also been my experience that Child Pornography can also be in the MPEG format. MPEG stands for Moving Picture Experts Group. To put it simply, these are movies that are capable of being viewed and stored on a computer.

8) The Internet is a worldwide computer network, which connects computers and allows communication and the transfer of data and information across provincial, state, national and international boundaries. Individuals who use the Internet can communicate by

using electronic mail or "E" mail, and means, which include f
servers.

9) For the purposes of this information a "computer" is a box that
houses the central processing unit (CPU), along with any internal
storage devices, that store information in the form of files (such as
internal hard drives) and internal communication devices (such as
internal modems capable of sending and receiving electronic mail or
a fax) along with any other hardware stored or housed internally.
Thus, a "computer" refers to hardware, software and data contained
in the main unit.  Printers, external modems (attached by a cable to
the main unit), monitors, and any other external attachments will
be referred to collectively as peripherals.   When the computer and
all peripherals are referred to as one package, the term "computer
system" is used.

10) "Uploading" is the transmission of a file from one computer system
to another. Generally the term "Uploading" refers to the "sending" of
a file. "Downloading" is the transmission of a file from one
computer system to another. Generally the term "Downloading"
refers to "receiving" a file.

4

# <u>Investigative Sources</u>

11) During the course of this investigation, I have received information from a number of investigative sources that I believe to be reliable and credible.

12) CPIC (Canadian Police Information Centre) is a computer database maintained by the Royal Canadian Mounted Police containing information on charged person(s) and criminal records. I believe CPIC to be an accurate and reliable source of information.

13) The Niche Records Management System (Niche RMS) originates from members of the Ontario Provincial Police, other police forces and other government agencies. Niche RMS includes information on individuals, premises, incident details and other information received by police.  All information is cross-referenced in the same manner.  I believe the Niche RMS system to be an accurate and reliable source of information.

# Involved Persons

14) **Tristan GARRAH** – is a Canada Customs Officer since 2008 and is assigned to the Port of Lansdowne.  His duties involve enforcing the provisions of the Canada Customs Act, monitoring persons and goods entering Canada and conducting searches for prohibited material.

15) **Joseph Vincent JENKINS** – ████████████████████████

████████████████████████████████████

████████████       Joseph Vincent JENKINS is the accused in this matter and the owner of the two laptops, three USB sticks, digital camera and card, Verizon cellular telephone, wireless card and the six CD's as described in Appendix "A" of this information to obtain a search warrant.

# Overview

16) On the 24th day of May 2009, Canada Border Services Officer Tristan GARRAH was assigned to conduct secondary searches of motor vehicles at the Port of Lansdowne.  At 9:00 am a pick up truck was issued a notice to attend the Canada Customs building

6

for a secondary search by Canada Customs officers.   Canada Border Services Officer Tristan GARRAH and other officers were assigned to search the truck.    A search of the cab of the truck revealed a laptop bag which contained a Compaq laptop.    As Canada Border Services Officer Tristan GARRAH searched the bag which contained the Compaq laptop computer he located an Attache USB stick 8 GB, black and blue in colour.

17) At 9:50 am Canada Border Services Officer Tristan GARRAH found a video titled:

**"9yo_vicky_stripping_**

**and_sucking_kiddy_pedo_illegal_underage_preteen"**

Canada Border Services Officer Tristan GARRAH stated that this video contained possible child pornography.  The video showed a pre-pubescent girl with dark hair, pony tails and no development of breast or pubic hair and she was undressing.  When she pulled down her underwear he stopped viewing the video.  Further examination of this video at 2:55 pm revealed that the prepubescent female was performing fellatio on an erect adult male penis.  This video clip is known to me as the "Vicky Series" and I have categorized this video as child pornography numerous times.

After viewing the video at approximately 9:55 am, Canada Border Services Officer Tristan GARRAH arrested the Joseph Vincent JENKINS read his rights and cautions which Joseph Vincent JENKINS stated he understood and would like to exercise his right to duty counsel. At approximately 10:26 am duty counsel Peter BERDERKA called and was transferred to Joseph Vincent JENKINS in a private room.

18) Canada Border Services Officer Tristan GARRAH conducted a search of the laptop computer as authorized under section 99 of the Canada Customs Act.

19) The seized exhibits were secured in the Canada Customs evidence vault pending the completion of this information to obtain a search warrant.

20) At 6:26 pm uniform officers from the Thousand Island Detachment of the Ontario Provincial Police arrived to transport Joseph Vincent JENKINS to the Brockville Detachment of the Ontario Provincial Police.  Joseph Vincent JENKINS was brought before a justice on the 25th day of May 2009 and held over until he could ensure all conditions requested by the crown could be met.

# Investigation

21) On the 25th day of May 2009, I was assigned to a request for assistance in a seizure of two laptop computers, three thumb drives and six CD's at the Port of Lansdowne by Canada Customs. The exhibits were seized as a result of a secondary search that was conducted by Canada Border Services Officer Tristan GARRAH under the authority of the Canada Customs Act.

22) I reviewed the report submitted by Canada Border Services Officer Tristan GARRAH on the 25th day of May 2009.  His statement is as follows:

23) Canada Border Services Officer Tristan GARRAH has been a Canada Customs officer since the summer of 2008.  On the 24th day of May 2009 he was working the day shift at the Port of Lansdowne.  His duties for this shift were to conduct secondary searches of motor vehicles.

24) At 9:00 am he examined a pick up truck with ███████████ ████████. Inside the cab of the truck he located a laptop bag containing a silver Compaq laptop computer.  A further search of

9

the laptop bag revealed a black and blue coloured 8 GB (USB) Thumb drive.

25)     Canada Border Services Officer Tristan GARRAH removed these items to the Canada Customs building for further investigation.  He searched the 8 GB thumb drive and observed the following video clip:

**"9yo_vicky_stripping_**

**and_sucking_kiddy_pedo_illegal_underage_preteen"**

Canada Border Services Officer Tristan GARRAH stated that this video contained possible child pornography.   The video showed a pre-pubescent girl with dark hair, pony tails and no development of breast or pubic hair and she was undressing.   When she pulled down her underwear he stopped viewing the video.  Further examination of this video at 2:55 pm revealed that the prepubescent female was performing fellatio on an erect adult male penis.

26)     At 9:55 am Canada Border Services Officer Tristan GARRAH arrested Joseph Vincent JENKINS for smuggling or attempting to smuggle goods into Canada the importation of which is prohibited,

controlled or regulated by or pursuant to the Customs Act or any act of Parliament.  He then read Joseph Vincent JENKINS his right to counsel and the caution.  Joseph Vincent JENKINS understood his rights and requested to speak to duty counsel.  At 10:26 am duty counsel spoke to Joseph Vincent JENKINS and he was lodged awaiting police arrival.

27)  Based on the description of the video clip and the knowledge I have of this video clip I therefore believe that the elements of the offence under section 163.1 (1)(a) of the Criminal Code have been met.

28)  I conducted computer checks through the CPIC and RMS NICHE and there were no records found for Joseph Vincent JENKINS.

## Grounds to believe offence has been committed

29)  On the basis of the aforementioned paragraphs, I believe on reasonable grounds that the items to be seized as listed in Appendix "A" that are secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne, Ontario contain images of child pornography contrary to section 163.1(4) of the Criminal Code as well as the offence of importation of child

pornography contrary to section 163.1 (3) of the Criminal Code. My grounds for belief may be summarized as follows:

30) On the 25th day of May 2009 Canada Border Services Officer Tristan GARRAH stated in his report that during the execution of his duties as a Canada Customs officer he a black and blue 8 GB thumb drive from a pick up truck being operated by Joseph Vincent JENKINS.  A search conducted by Canada Border Services Officer Tristan GARRAH of the thumb drive revealed a video clip depicted to be child pornography.

31) **"9yo_vicky_stripping_**
**and_sucking_kiddy_pedo_illegal_underage_preteen"**

Canada Border Services Officer Tristan GARRAH stated that this video contained possible child pornography.   The video showed a pre-pubescent girl with dark hair, pony tails and no development of breast or pubic hair and she was undressing.   When she pulled down her underwear he stopped viewing the video.   Further examination of this video at 2:55 pm revealed that the prepubescent female was performing fellatio on an erect adult male penis.

32)     I believe from the statement provided by Canada Border Services Officer Tristan GARRAH that the video clip he observed of a prepubescent female engaged in explicit sexual activity with an adult male, falls under the definition of child pornography as defined in Section 163.1(1)(a) of the Criminal Code.

## Grounds To Believe Things To Be Seized Will Afford Evidence Of The Offence

33) On the basis of the aforementioned paragraphs, I believe on reasonable grounds that the item to be seized, as specified in Appendix "A" of this information, will afford evidence that Joseph Vincent JENKINS did have in his possession as he entered the Port of Lansdowne child pornography contrary to section 163.1(4) of the Criminal Code as well as the offence of importation of child pornography contrary to section 163.1 (3) of the Criminal Code. My grounds for belief may be summarized as follows:

34) I spoke with members of the Electronic Crime Section of the Ontario Provincial Police. These officers have advised me of the following;

- that members of this unit could forensically analyze a computer system and retrieve a wide variety of information from it;

- To conduct the detailed search of the computer, it is the intention of the informant to employ the use of a computer software program that will make a forensic copy of all the information stored on the seized computer. This information will then be searched, thus not destroying or damaging any of the data on the computer;

- There are a wide variety of techniques available to even the novice computer users to disguise or resist casual examination of data saved on the hard disk drive. Electronic files that constitute evidence can be easily renamed to appear as otherwise innocuous system files, and/or be moved into directories housing unrelated programs. Files can also be password protected, encrypted or compressed by the user with widely available, free software or using features included in popular office suites (e.g. Microsoft Office). In addition, it is also possible to hide one type of file (e.g. a Word document) inside another much larger file (typically a large photograph). When opened, the larger file (in this

example, a photograph) appears unchanged, exactly the same as it did before the "insertion". This technique is known as *stenography*;

- It requires time, experience and computer resources to defeat these and other techniques. Accordingly, it is necessary to examine the entire hard disk drive, including the directory structure, program files and, in varying degrees, each and every file to complete a comprehensive search for electronic evidence;

- It is common for someone to download computerized graphic image files and save them onto the hard drive of a computer. From there the files can be copied to another storage device such as a thumb drive or CD-ROM that are transportable. When an image is copied from a hard drive to an external storage device the original file remains on the hard drive;

- Storage media (e.g. floppy diskettes, external hard drives, CD-Roms) found at the scene may contain copies of web pages, documents, e-mails or other information that was originally created on the computer system and subsequently saved on to the media. If the original data cannot be located

or retrieved from the computer system, it may nevertheless exist on media. The storage media may, therefore, be required to fully analyze information created by the computer system;

- In addition to the computer system itself, it may be necessary to seize the accompanying peripherals for several reasons. First, it may not be possible to properly assess the system without its constituent parts. If the computer system is dated or novel in design or construction, the peripheral devices, cables and hardware may not be commercially or otherwise available to investigators. Thus, the analysis may require the components that are found with the computer system;

35)   Given that the two laptop computers, three thumb drives, six CD's, a digital camera and picture card and a Verizon Motorola cellular telephone are currently in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario - Queens warehouse main building – traffic office bond room it is my belief that Joseph Vincent JENKINS did have in possession those exhibits while he entered Canada at the Post of Lansdowne.  Joseph Vincent JENKINS was

the lone occupant of the pick up truck and the exhibits were located within the tractor trailer when Canada Border Services Officer Tristan GARRAH conducted his search.

36)     I believe from the statement provided by Canada Border Services Officer Tristan GARRAH that the video clip he observed of a prepubescent female engaged in explicit sexual activity with an adult male, falls under the definition of child pornography as defined in Section 163.1(1)(a) of the Criminal Code.

## Grounds To Believe That Things To Be Seized Are At The Place To Be Searched

37) It is my belief that the item to be seized, as specified in Appendix "A" of this information, is located within the building of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario - Queens warehouse main building – traffic office bond room. My reasons for belief are as follows:

38) On the 24th day of May 2009, Canada Border Services Officer Tristan GARRAH seized and searched a black and blue 8 GB thumb

drive from a pick up truck driven by Joseph Vincent JENKINS at the Port of Lansdowne. The exhibits were seized as a result of a secondary search that was conducted by Canada Border Services Officer Tristan GARRAH under section 99 of the Canada Customs Act.

39) As a result of his search and the discovery of a video clip which depicts child pornography Canada Border Services Officer Tristan GARRAH and other officers seized the items listed in Appendix "A". These items were secured by Canada Border Services Officers in the evidence vault pending a judicial authorization. At that time the exhibits will be turned over to me.

40) The Canada Customs building at the Post of Lansdowne is a two-story rectangular structure with a beige stucco exterior finish. The building has a silver awning covering the secondary vehicle search on the east side of the building. The address is 862 Highway 137 Lansdowne Ontario. The evidence vault is located in the Queens Warehouse main building – traffic office bond room. This room is secured by a keypad lock. The room is on the north end of the building and is approximately six feet wide by twelve feet long and contains gray metal shelves along the wall.

# Conclusion

41) It is my firm belief that the execution of a search warrant at the building of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario - Queens warehouse main building – traffic office bond room for the items referred to in Appendix "A" of this Information to Obtain a Search Warrant will afford evidence to support the charges as specified in Appendix "B" of this Information to Obtain a Search Warrant. It is also my belief that Joseph Vincent JENKINS was in possession of child pornography as well as imported child pornography.   This conclusion is based on the following facts and beliefs:

42)       On the 24th day of May 2009, Canada Border Services Officer Tristan GARRAH seized and searched a black and blue 8 GB thumb drive from a pick up truck driven by Joseph Vincent JENKINS at the Port of Lansdowne. The exhibits were seized as a result of a secondary search that was conducted by Canada Border Services Officer Tristan GARRAH under section 99 of the Canada Customs

43) The   video   clip   of   child   pornography   was   titled **"9yo_vicky_stripping_**

**and_sucking_kiddy_pedo_illegal_underage_preteen"**

Canada Border Services Officer Tristan GARRAH stated that this video contained possible child pornography.   The video showed a pre-pubescent girl with dark hair, pony tails and no development of breast or pubic hair and she was undressing.   When she pulled down her underwear he stopped viewing the video.  Further examination of this video at 2:55 pm revealed that the prepubescent female was performing fellatio on an erect adult male penis. This video clip is known to me as the "Vicky Series" and I have categorized this video as child pornography numerous times and I have testified in court that this video clip depicts child pornography as defined in the Criminal Code

44) I have been advised through the report of Canada Border Services Officer Tristan GARRAH that the seized items as listed in Appendix "A" would remain in the evidence vault until I have obtained a search warrant.  At that time the items will be turned over to me.

45) The Toshiba and Compaq laptops contain hard drives capable of storing numerous images and movie clips which require examination to determine if any depict child pornography as defined in the Criminal Code.

46) The three thumb drives are capable of storing numerous images and movie clips which require examination to determine if any depict child pornography as defined in the Criminal Code.

47) The six Compact Discs are capable of storing numerous images and movie clips which require examination to determine if any depict child pornography as defined in the Criminal Code.

48) The Olympus digital camera and picture card are capable of storing numerous images and movie clips which require examination to determine if any depict child pornography as defined in the Criminal Code.

49) The Belkin wireless G plus Mimo notebook card allows a person to access the Internet wirelessly and this will provide evidence to corroborate any images of child pornography that were downloaded from the Internet

50) I believe this warrant to search is necessary to collect evidence that Joseph Vincent JENKINS was in possession of the exhibits as described in the body of this information to obtain a search warrant under section 487 of the Criminal Code

51) It is my knowledge that it is common for someone to record computerized graphic images and save them onto the hard drive of a computer. Thereafter the files can be copied to a storage device (3 ½ inch floppy diskettes, external hard drives or a CD-ROM) that is transportable. When an image is copied from the hard drive to an external storage device the original file remains on the hard drive

52) It is my knowledge that whenever a file is downloaded from the Internet or recorded onto the computer a record or log or actual copy of the image is embedded on the hard drive of that system and even if deleted the image can be retrieved through forensic police examination.

## **Investigative Plan**

53) It is the belief of the informant, based on the information previously stated, that by gaining entry to the items listed in Appendix "A" located within the building of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario - Queens warehouse main building – traffic office bond room information will be obtained concerning Joseph Vincent JENKINS and will provide evidence to the offences

described in Appendix "B" of this Information to Obtain a Warrant to Search.

54) The search of the items listed in Appendix "A" located within the building of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario - second floor Queens warehouse main building – traffic office bond room, Ontario, will be conducted by a member of the Ontario Provincial Police – Electronic Crime Section who has successfully been trained using forensic software to search computers.

55) It is the intention of the informant that these searches will be conducted using computer software which allows for the search of the computer without modifying, destroying or damaging any of the data on the computer.

56) To conduct the detailed search of the computer, it is the intention of the informant to employ the use of a computer software program that will make a forensic copy of all the information stored on the seized computer. This information will then be searched, thus not destroying or damaging any of the data on the computer.

57) Depending on the size of the seized computer(s) hard drive, the computer software program, which will make a forensic copy of all of the information stored on the seized computer and electronic media, can take one day or several days.

58) Any computer or computer related equipment, which shows a person who is, or is depicted as being under the age of eighteen years and is engaged in or depicted as being engaged in explicit sexual activity, or the dominant characteristic of which is the depiction for a sexual purpose, of a sexual organ or the anal region of a person under the age of eighteen years will be seized and taken to the Electronic Crime Section of the Ontario Provincial Police located at 777 Memorial Avenue, Orillia, Ontario or maintained by the informant at the Ontario Provincial Police Child Pornography Section, 1201 Wilson Avenue, Suite 224, Building "E", Downsview, Ontario.

59) At the Electronic Crime Section a detailed search will be conducted on these articles and all evidence will be recorded and disclosed to the courts.

60) Items seized as a result of the investigative techniques used will be dealt with in accordance with the following terms:

61) That the items continue to be stored at the Ontario Provincial Police, Electronic Crime Section, 777 Memorial Avenue, Orillia, Ontario for further examination.

62) That the informant or his designate will extract any information by:

- Examining the hard drive of the computer system for hidden, previously deleted or password protected computer files and or information relating to the alleged charges of possession of child pornography and importing child pornography contrary to the Criminal Code.

- To conduct a detailed search of the computer, it is the intention of the informant to employ the use of computer software, which makes a forensic copy of all the information stored on the seized computer(s). This information will then be searched from the forensic copy thus, not destroying or damaging any of the data on the seized computer.

- Working from this complete copy to extract any information discovered as a result of the examination

• Should this search warrant be granted and executed, it is the intention of the informant to do a search of any information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer related equipment. This media includes floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, DVD's, CD roms and any other media which is capable of storing magnetic coding containing evidence to support the allegations as set forth in Appendix B of this Information to Obtain a Search Warrant. These articles will be seized and kept at the Ontario Provincial Police, Child Pornography Section, Building E, Suite 224, Downsview, Ontario where a detailed search can be conducted.

63) It is the belief of the informant that this item will afford evidence that Joseph Vincent JENKINS did commit the offence of possessing child pornography as well as the offence of importing child pornography. Such evidence is essential, as it will assist in the investigation and corroborate the known offence.

64) I am further requesting that the warrant be valid between the hours of 9:00 am and 8:59 pm on the 28th day of May 2009. I have arranged with Canada Border Services to meet on the 28th day of

26

May 2009 and I will be allowed access to the evidence vault of the Canada Customs Service building.

65) It is the intention of the informant to make a return pursuant to the return provisions of the Criminal Code.

**WARRANT TO SEARCH**
*MANDAT DE PERQUISITION*

Form/*Formule* 5 C.C.
Section/*Article* 487

CANADA
PROVINCE OF ONTARIO
*PROVINCE DE L'ONTARIO*

.TORONTO
(Region/*Région*)

To the peace officers in the said Region and in the Province of Ontario or to the
*Aux agents de la paix dans ladite région et dans la province de l'Ontario ou à/au*

Kip WOHLERT

(Insert named public officers/ *Indiquez le nom des fonctionnaires publics*)

WHEREAS it appears upon the information of   Kip WOHLERT
*ATTENDU QU'il appert de la dénonciation de*

that there are reasonable grounds to believe that there are in   the building of the Canada Customs Border Services Agency
*qu'il existe des motifs raisonnables de croire qu'il y a dans*

Port of Lansdowne 862 Highway 137
Lansdowne, Ontario -  Queens
warehouse main building  — traffic
at/ *à/au*   office bond room

, herein called
*ci-après appelé(e)*

the premises, certain things namely:
· *les lieux, certaines choses, savoir :*

See Appendix "A"

that being sought as evidence in respect to the commission, suspected commission or intended commission of an offence against the *Criminal Code*, namely:
*qui sont recherchées comme preuve en ce qui concerne une infraction, présumée ou en voie d'être perpétrée, au Code criminel, savoir :*

See Appendix "B"

THEREFORE, this is to authorize and require you, between the hours of   9:00 am - 8:59 pm 28th day of May 2009   to enter into
*À CES CAUSES, les présentes ont pour objet de vous autoriser et obliger à entrer, entre les heures de*   *dans*

the premises and to search for and seize the above things, and to bring them before me or some other justice to be dealt with according
*lesdits lieux et de rechercher lesdites choses et de les apporter devant moi ou devant tout autre juge de paix afin qu'il en soit disposé*
to law.
*selon la loi.*

DATED this   27   day of   May   , yr.   2009   at   City of Toronto
*FAIT le*   *jour de*   *an*   *à/au*

Judge or Justice of the Peace in and for the Province of Ontario
*Juge ou juge de paix dans et pour la province de l'Ontario*

Executed on the   28   day of   May   , yr.   2009
*Exécuté le*   *jour de*   *an*

by   K. Wohlert   , P.C.   7253   Division   CBSA
*par*   *C.P.*   *Division*

Seizure under:   ☒ section 487;   ☐ section 489   ☐ no seizure
*Saisie aux termes de :*   art. 487;   art. 489;   *aucune saisie*

Return made before _____ , on the
*Rapport effectué devant*   *le*

_____ day of _____ , yr. ____ , at ____
*jour de*   *an*   *à/au*

1412 Hrs

CCO-5-487-1 (rev. 06/99)  (formerly/*anciennement* CC 2028)

APPENDIX "A"

**This is Appendix "A" of the Warrant to Search of Kip WOHLERT dated the 27th day of May 2009, Sworn at the City of Toronto, in relation to an application to search the building of the Canada Customs located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario - Queens warehouse main building – traffic office bond room.**

**Items requested to be searched for:**

1.  A Toshiba Laptop serial # 78175808W secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

2.  A Compaq Laptop serial # CNF3362GPN secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

3.  A Verizon Motorola cellular telephone secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

4. A Olympus digital camera serial # 408242909 secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

5. A Olympus XD picture card serial # MXD16P3K57106SSX30421MAD secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

6. A Belkin wireless access G plus notebook card serial # 15822C9302697 secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

7. Six CD's secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

8. One Attache USB stick 8 GB, marked with PNY on the cap secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room

9. One Attache USB stick 4 GB, marked with PNY on the cap and on the back of the stick secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building   – traffic office bond room

10.    One Attache USB stick 2 GB, marked with OPTIMAPRO secured in the evidence vault of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building   – traffic office bond room

## APPENDIX "B"

**This is Appendix "B" of the Warrant to Search of Kip WOHLERT dated the 27th day of May 2009, Sworn at the City of Toronto, in relation to an application to search the building of the Canada Customs Service located at the Port of Lansdowne 862 Highway 137 Lansdowne, Ontario, Queens warehouse main building – traffic office bond room.**

### Named offences under the Criminal Code of Canada

1. That Joseph Vincent JENKINS on the 24th day of May 2009, at the Port of Lansdowne, in the Province of Ontario, did have in his possession Child Pornography to wit: Computerized Graphic Images Files, contrary to the Section 163.1   (4) of the Criminal Code

2. That Joseph Vincent JENKINS on the 24th day of May 2009, at the Port of Lansdowne, in the Province of Ontario, did import Child Pornography to wit: Computerized Graphic Images Files, contrary to the Section 163.1 (3) of the Criminal Code