**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**UNITED STATES OF AMERICA**                          **Criminal Action No.**
                                                       **11-CR- 602 (GTS)**

**v.**


**JOSEPH JENKINS,**

                   **Defendant.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


**GOVERNMENT'S RESPONSE TO DEFENDANT'S OPPOSITION TO THE MOTION**
**FOR DISCLOSURE OF THE DEFENDANT'S FINANCIAL AFFIDAVIT (FORM CJA**
**23) AND NOTICE TO THE COURT OF FACTS RELEVANT TO THE DEFENDANT'S**
**ELIGIBILITY FOR ASSIGNED COUNSEL**

## I. INTRODUCTION

On August 20, 2012, the United States of America, by and through its counsel of record,

the United States Attorney for the Northern District of New York, moved for the disclosure of

the Form CJA 23, Financial Affidavit (CJA 23) completed by the defendant on October 4, 2011.

Additionally, the government provided the Court with information concerning the defendant's

financial eligibility for court-appointed counsel.  On September 7, 2012, the defendant filed his

response opposing the government's motion and notice.   The government now submits its

response to the defendant's September 7, 2012, motion in opposition.

## II. PROCEDURAL BACKGROUND

On September 12, 2011, a criminal complaint was filed and an arrest warrant was signed by the Honorable Andrew T. Baxter charging defendant Joseph Jenkins with one count of transporting child pornography, in violation of Title 18, United States Code, Section 2252A(a)(1), and one count of possessing child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B).   On October 4, 2011, Jenkins was arrested and brought before Judge Baxter for an initial appearance on the criminal complaint.  At that time, Jenkins completed a CJA 23 in support of his request for assigned counsel.  The court reviewed the financial affidavit and found the defendant eligible for assigned counsel.

On December 21, 2011, a federal grand jury returned an indictment charging the defendant with one count of transporting child pornography in violation of Title 18, United States Code, Section 2252A(a)(1) and one count of possessing child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B).  On July 9, 2012, the defendant filed a motion for omnibus relief, and the government filed its response on July 23, 2012.  As a result of the filing of the motion, the Court adjourned the trial of the matter pending a decision on the defendant's motion.  On August 24, 2012, the Court denied defendant's motion for omnibus relief.   A trial date has not been scheduled pending a decision on the instant motion.

### III.  LEGAL AND FACTUAL BACKGROUND

The government relies on its prior submission of August 20, 2012.

### IV.  MOTION FOR DISCLOSURE OF THE FORM CJA 23, FINANCIAL AFFIDAVIT

The United States moved for the disclosure of the CJA 23 completed by the defendant at his initial appearance on October 4, 2011.  The defendant objects to the release of the CJA 23 to the government.

2

A.    Section 210.40.20 of the Guide to Judicial Policy does not forbid the disclosure of the defendant's CJA 23 for the purposes espoused by the government.

The defendant objects to the disclosure to the government of the defendant's CJA 23. The basis for the objection is that the government may provide the form to the grand jury, and that the grand jury may return an indictment against the defendant for perjury.  The defendant states that Section 210.40.20 of the Guide to Judiciary Policy, forbids disclosure for that purpose.[1]  *See* Def's Mot. in Opp'n 4.

Section 210.40.20 prohibits the prosecution and other interested entities from utilizing judicial inquiry into a defendant's financial eligibility as a forum to discover whether the defendant has assets subject to forfeiture, the ability to pay a fine, make restitution, or compensate another person under the Victim/Witness Protection Act or other purposes not related to the appointment of counsel.  *See* exhibit B.

The government seeks the disclosure of the CJA 23 to determine whether Jenkins falsely and/or fraudulently disclosed or failed to disclose all of his assets in the financial affidavit he submitted to the Court for the appointment of counsel.  This purpose is related to the appointment of counsel.  Section 210.40.20 of the Guide to Judicary Policy does not forbid discovery of CJA 23 when it relates to the appointment of counsel.  Section 210.40.20 forbids the use of the form by the prosecution for discovery of collateral matters.  In the instant matter, the government isn't seeking the information from CJA 23 to determine if defendant has assets for restitution or for payment of a fine.  Nor, as the government explained in its motion, is it seeking the use of the CJA 23 in its case-in-chief for indictment 11-CR-602, where Jenkins is charged

---

[1]  In its August 20, 2012, motion, the government attached Section 210.40.20 of the Guide to Judicial Policy as exhibit B.  Future reference to same will be identified as exhibit B.

with transporting and possessing child pornography.   Instead, the government seeks the

information to make a determination of whether or not the defendant made any false statements

in his application for counsel, as false statements in a form CJA 23 are subject to the penalties of

perjury.  *See United States v. Harris,* 707 F.2d 653, 658 (2d Cir. 1983).[2]

The defendant argues that the duty of deciding whether a defendant is eligible for

assigned counsel lies solely with the Court.  *See* Def's Mot. in Opp'n 4.  The defendant maintains

that "it is not contemplated that the Government take part in the 'appropriate inquiry,' and that

the Court may proceed to decision without debate."  *Id.*  The court does have the sole authority

for determining the appointment of counsel; however, it is contemplated and authorized for the

government, or other interested parties, to take part in said determination.  Section 210.40.20 of

the Guide to Judiciary Policy plainly states that the prosecution is entitled to present to the court

information concerning the applicant's eligibility for assigned counsel.

B.     Disclosure of the CJA Form 23 after trial

The defendant makes an alternative proposal: if the court permits the disclosure of the

CJA 23, it should do so after trial.  The government objects to delaying disclosure of the CJA 23

until after trial of the instant matter.

There exists no special need to seal the CJA 23 until after trial.  The only reason to do so

is to delay the grand jury investigation into the instant matter.   Defendant acknowledges that his

desire to seal the CJA 23 relates to his apprehension that "an errant word would bring indictment,

---

[2]  Because the government may prosecute for perjury a defendant who files false statements
in a CJA 23, that would, by necessity, require the court to release the financial affidavit to the
government.  *See Harris,* 707 F.2d at 663.  If the government was denied access to the CJA 23, it
could not prosecute any defendant who commits perjury on the CJA 23.

conviction, and perhaps worse, the loss of counsel." *See* Def's Mot. in Opp'n 6.  The determination of assignment of counsel will be made prior to a trial of the instant matter. Therefore, there is no possibility that if the form is not sealed, the defendant risks the loss of counsel.  Any defendant runs the risk that his words, at a trial, might have a negative impact upon him.  For that, the defendant is not unique.

The defendant relies on *United States v. Ponzo,* 2012 WL 28065 (D. Mass. 2012), for the authority to seal his CJA 23 until after trial.  In *Ponzo,* the defendant applied for court appointed counsel by filling out the CJA 23, under penalty of perjury, on March 25, 2011, with supplemental submissions filed in April 2011.  *Id.* at 1.  On March 28, 2011, a search of the defendant's home resulted in the seizure of a safe containing $102,000 in currency, and gold coins valued at $65,000.  *Id.*  On July 29, 2011, the government filed a motion for access to, *inter alia*, the CJA 23 filed by the defendant.  *Id.*  The government stated that if the defendant failed to disclose all of his assets on the CJA 23, he could face additional prosecution for perjury. *Id.* at 2.  The defendant objected to the disclosure of his CJA 23 form and argued disclosure would create a constitutionally untenable conflict between his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel.  *Id.*  The court held that the defendant's Fifth Amendment privilege with respect to his CJA 23 and supplemental form was not a bar to the government having access to the information, nor did it bar its use against him. *Id.* at 4.  The court, mindful that the defendant's invocation of his Fifth Amendment right came only after the government sought disclosure of the CJA 23, stated that:

>  "[f]or him to now argue that his submissions are protected against a possible prosecution
> for perjury gives him the best of both worlds; he could submit financial information under
> oath, with impunity, knowing that if the veracity of the information is questioned it

cannot be used against him.  Given the Court's need to rely on accurate and truthful representations from litigants, Ponzo's position is untenable.  Simply put, Ponzo cannot hide behind the Fifth Amendment to shield himself from prosecution *if* he chose to lie in order to obtain court appointed counsel."

*Id.*  (emphasis in original)

Holding that the government was entitled to access to the CJA 23, the *Ponzo* court went on to undertake an analysis of when said disclosure would be made to the government.  *Id.*  As noted by the defendant, the *Ponzo* court decided to seal the CJA 23 until the conclusion of the charges against the defendant.  The factors that led to the decision to seal the CJA 23 in *Ponzo* are not present in the instant matter.  In *Ponzo,* the government proposed to do a superceding indictment to join the perjury charge with the defendant's pending charges.  The court expressed concern that the evidence of the perjury could be used against the defendant with respect to his other charges, thereby creating the constitutional problem of creating a conflict between the defendant's Fifth and Sixth Amendment rights.  *Id.* at 5.  In the instant matter, the government, should it be granted access to the CJA 23, and should the CJA 23 reveal evidence of perjury,will seek a separate indictment for perjury.

In the defendant's statement of facts for the instant motion, the defendant states that he has been left with no choice but to assert his Fifth Amendment right to remain silent as to the facts of this matter.   *See* Def's Mot. in Opp'n 2-3.  However, as he further acknowledges, *United States v. Branker*, 418 F.2d 378, 380 (2d Cir. 1969), does provide a solution to testimony in pre-trial hearings concerning the preservation of fundamental rights by holding that "the government should not be permitted to use as part of its <u>direct case</u> any testimony given by a defendant at a hearing where he is seeking forma pauperis relief or the assignment of counsel on the ground of

his financial inability to afford counsel." (emphasis added)[3]  This solution is applicable, and sufficient, in the instant matter.  The government has already indicated that it will neither use the information contained in the CJA 23 in its case-in-chief, nor will it file a *motion in limine* seeking the introduction of this evidence under Federal Rule of Evidence 404(b).

The protections of *Branker*, preventing the government from introducing in its case-in-chief testimony given by a defendant at a hearing where he is seeking forma pauperis relief or the assignment of counsel on the ground of his financial inability to afford counsel, coupled with the fact that a trial will go forward on the instant indictment (without any superceding indictment that joins any future perjury charges with the pending charges) make it unnecessary to seal the CJA 23.

## V.  DEFENDANT'S ELIGIBILITY FOR ASSIGNED COUNSEL

The court has the authority under 18 U.S.C. § 3006(A)(c) to terminate the appointment of counsel or authorize payment for counsel as the interests of justice so dictate, if at any time the court determines that the defendant is financially able to obtain counsel.  In its motion of August 20, 2012, the government, pursuant to United States Courts, Guidelines for Administering the CJA and Related Statutes, Section 210.40.20(g), provided this Court with information concerning the defendant's current financial eligibility for court appointed counsel.  The

---

[3]  In this section of the defendant's motion, he argues that the solution of prohibiting the use of the financial information in the government's case in chief is insufficient; instead, he argues the court should also prohibit the use of the information by the Grand Jury.  There exists no basis in law for the extraordinary relief requested by the defendant.  He asserts that the government has wrongfully interjected the grand jury process into the case at bar.  *See* Def's Mot. in Opp'n 2.  As the government previously noted in its first motion on this matter, it has the right and responsibility to bring to the Court's attention any possible misuse or waste of public funds.  *See United States v. Zelenka*, 112 F.Supp.2d 708 (M.D. Tenn. 1999).  The government did so.

information included: a synopsis of the bank records of Capital One, Ameriprise Financial

Services, Inc., and First Niagara Bank, N.A.; transcripts of tape-recorded jail calls between the

defendant and his father; and New York State Motor Vehicle Records as contained in the Lexis

Nexus report.  A copy of the full records have been provided to the Court and counsel directly.[4]

In response, the defendant chose to assert his Fifth Amendment right to remain silent as to the

facts of this matter.  *See* Def's Mot. in Opp'n 3.

The burden of proof in proceedings to determine whether counsel should be appointed or

terminated rests with the defendant, by a preponderance of the evidence, to establish that he is

financially unable to afford counsel.  *See Harris,* 707 F.2d at 661; *U.S. v. O'Neil*, 118 F.3d 65, 75

(2d Cir. 1997).  In *Harris*, the defendant submitted a CJA 23 for the assignment of counsel.  *Id.*

at 660.   Five months later, the government moved to terminate the appointment of counsel and

provided the court with information ascribing a higher income level to the defendant.  *Id.*   In

response, the defendant submitted an affidavit of his attorney that disclosed the earnings of

Harris and his wife and, for the most part, contended that the information on the original CJA 23

was correct. *Id.* at 661.  The government came forward with additional information about

vehicles owned by the defendant and revised the income attributable to him.  The Court held that

the government affidavits supported that the defendant had access to a large sum of money and

nothing to indicate that he lacked access to the funds.  *Id.*  The court went on to state that "where

a defendant's inability to afford counsel has been put into doubt, he has the burden of coming

---

[4] As these records are financial records of the defendant, the Government will not file them
as attachments on the Court's electronic court filing system.  Instead, the government provided a
copy directly to the court and counsel.  Due to the size of the documents, the government submitted
the bank records on a compact disc to be referred to as exhibit #1, and the Lexis Nexus report as
exhibit #2 .

forward with evidence to rebut the government's evidence of ability to afford counsel.  If a

defendant fails to come forward with additional evidence instead of relying on a terse form

affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to

afford counsel, appointed counsel may be terminated." *Id.*

In the instant matter, the government came forward with records and evidence that raise

questions about the financial capacity of Jenkins at the time he completed the CJA 23 on October

4, 2011.  Moreover, the records and evidence also raise questions about Jenkins's present

financial ability to afford counsel.  The defendant declined to come forward and rebut this

evidence.  As in *Harris*, Jenkins can hardly complain if counsel is terminated as he declined to

rebut the government's evidence.  *Id.* at 662. Instead, as it happened in *Harris,* the defendant

complains that if counsel is removed, an unfair trial looms.  *See* Def's Mot. in Opp'n 7.  That

would be true, if the court fails to conduct an appropriate inquiry into Jenkins' financial ability to

afford counsel.

As in *Harris*, the defendant asks the court to consider other options short of termination.

However, when the Court makes a determination that a defendant is financially able to obtain

counsel, 18 U.S.C. § 3006(A)(f) specifically provides for termination of assigned counsel.   In the

instant matter, the government brought forward records and evidence and now asks the court, in

the interest of justice, to review same to make a determination of the defendant's eligibility for

assigned counsel.  Now that the government has provided that information, Jenkins must still

prove that he is financially unable to obtain counsel and, if he defaults in that proof, termination

is an appropriate remedy.  *Id.* at 663 (holding that "a defendant must still prove that he is

financially unable to obtain counsel and, if he defaults in that proof, termination is an appropriate remedy.)

The defendant asks the court to consider the following options short of termination: (1) continue the representation unabated based upon the previously submitted CJA 23; (2) require the defendant to pay part of the costs of representation; or (3) require the defendant to pay for all of the costs of representation[5]. *See* Def's Mot. in Opp'n 7. Each of the options suggested by the defendant first require a determination of the defendant's eligibility for assigned counsel. As noted by the defendant, to do so, the court may consider his previously submitted CJA 23, together with the records and evidence submitted by the government. *See* Def's Mot. in Opp'n 7 (stating as option 1 that the Court may continue representation based upon Mr. Jenkins earlier assertions that he cannot afford counsel.) The defendant urges the court not to order the withdrawal of counsel. If the court does make the determination that the defendant is not eligible for assigned counsel, the court would not order the withdrawal of counsel, instead, the court would not pay for the defendant's representation; defendant Jenkins would have the option of retaining counsel. That decision would rest with defendant Jenkins.

## VI. CONCLUSION

Based upon the foregoing, the Court should make a determination of defendant's eligibility for assigned counsel, and should the court determine that the defendant is not eligible for assigned counsel, schedule an appearance to determine the defendant's intentions with regard

---

[5] The defendant does not distinguish whether he means option (2) and (3) to require payment for his representation up until present, or requiring payment for future representation. If the defendant is addressing both, or just the future representation, the Court would need to inquire of the defendant if he wishes to continue representation by Attorney Jeffrey Parry, should the court determine he is not eligible for assigned counsel.

10

to representation.  Additionally, the Court should order the disclosure of the defendant's Form

CJA 23, Financial Affidavit prior to trial.


Dated: September 14, 2012



                             RICHARD S. HARTUNIAN
                             United States Attorney
                             Northern District of New York


                             /s/

By:    Tamara B. Thomson
        Assistant U.S. Attorney
        Bar Roll No. 515310


        /s/
By:    Gwendolyn Carroll
        Assistant U.S. Attorney
        Bar Roll No. 515777