UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOSEPH JENKINS,

                Defendant.

Case No. 5:11-cr-00602-GTS

Defendant's Second Motion to Suppress Evidence

## INTRODUCTION

Joseph Jenkins, the defendant in this matter is charged by indictment with one count of transporting child pornography in violation of Title 18, United States Code, Section 2252A(a)(1) and one count of possessing child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). In a previous motion the Defendant moved to suppress certain electronic evidence seized from him by Canadian border patrol officers. Said evidence was subsequently tendered to members of the Office of Homeland Security pursuant to a search warrant issued by the Hon. George H. Lowe.

Mr. Jenkins previously made a motion for omnibus relief as to that evidence however, since that time, and on or about September 7, 2012, new discovery materials were tendered by the Government that were not addressed in defendant's earlier motion. As well, certain materials came to light via correspondence with the Jenkins family attorney. As these materials were unknown to the defendant at the time of the earlier motion and since the Government has voiced the intent to use them in their case-in-chief, leave is respectfully requested to seek suppression of certain information as they are in clear violation of the Defendant's Constitutional rights.

1

## FACTS

**Point 1.**

On or about May 24, 2009 the Defendant was apprehended while attempting to enter Canada at the Port of Lansdowne, Ontario, Canada from Wellesley Island, New York. Mr. Jenkins' computers came to be searched as part of a general inspection of his vehicle and certain files were discovered which are alleged to constitute child pornography. Mr. Jenkins was subsequently charged with the following violations of the Canadian Criminal Code; § 163.1(3) Import-Distribute Child Pornography and §163.1(4) Possessing Child Pornography. Additionally, Mr. Jenkins was charged with violating §12(1) Non-Report of Goods, §153(c) Evading Compliance with the Act and §159 Smuggling under the Customs Act.

The matter initially proceeded before the Hon. J.D.G. Waugh in the Superior Court of Ontario. Important for the issues at hand, trial in this matter was scheduled for, and actually began, on September 17, 2010 and court records indicate that Mr. Jenkins was in attendance. Exhibit A illustrating the document entitled "Update as of October 18, 2010-10-28" and depicting, amongst other things, the bench warrant issued by Judge Waugh. However, the trial was adjourned so that the Court could consider an 11(b) Charter Motion for unreasonable delay. Id. (A cursory review of §11(b) reveals that it is, in very general terms, the Canadian equivalent of a speedy trial law and a motion presented upon its grounds would be recognizable in every court in the United States even though it would appear that it is not as stringently construed as its American counterparts.) As mentioned above, this document was provided to the defense by the Government during a recent exchange of discovery material. Id.

Upon reconvening on September 17, 2010, Judge Waugh denied defendants' speedy trial

motion and trial was then rescheduled for October 18, 2010. However, upon the day of trial the Judge took note that Mr. Jenkins was not in attendance and therefore issued a bench warrant. Id. The Defendant is known to have returned to his home in Geneva, N.Y.

Several months thereafter, the Canadian matter was referred to the Department of Homeland Security for prosecution in the United States. Mr. Jenkins was arrested at his home pursuant to the charges comprising the present action and litigation began anew upon American soil.

However, during the course of my representation of Mr. Jenkins I was given a copy of a letter from Steven Edgely, Esq., Mr. Jenkins' attorney in Canada, and Mr. Timothy Buckley, Esq., the Jenkins family attorney (hereinafter the "Edgely letter"). Exhibit B. As the Edgely letter clearly points out, Mr. Jenkins left the jurisdiction of the Canadian court upon advice of counsel. Further, said advice clearly led him to believe that there would be no repercussions as long as he avoided re-entering Canada. Id. He was simply told that the matter would not affect him were he to return home. Affidavit of Joseph Jenkins. Presented by an officer of a Canadian court, this is a proposition that would be readily accepted by any layman, the intricacies of extradition and the prospects of international cooperation between law enforcement agencies being beyond the ken of the average citizen.

As Mr. Jenkins' actions were based upon the advice of counsel, I requested of the United States Attorney that the matter be stipulated as inadmissible at trial. Conversely however, the United States Attorney has indicated to me that she intends to introduce Mr. Jenkins' failure to appear in the Canadian Court as evidence of his guilt, their position being that he had fled the jurisdiction. Further, she expects to request a jury instruction to that effect. As this position is not justified by the facts and would be prejudicial to Mr. Jenkins to the point of denying him a fair

3

trial, it is argued that this Court should exclude testimony and evidence pertaining to the bench warrant, allegations of Mr. Jenkins flight, etc. based upon the fact that they arise from the ineffective assistance of counsel. Certainly, no attorney is justified in recommending the option of fleeing the jurisdiction, an act that is clearly illegal under Canadian law and resulted in a bench warrant. Such an illegal and outrageous act by counsel surely rises to the level of ineffective assistance and therefore constitutes a violation of Mr. Jenkins' rights under the Sixth Amendment now that litigation proceeds in a court of the United States.

Furthermore, as the Update as of October 18th, 2010-10-28 points out, Mr. Jenkins was indeed present and cooperating in the process upon the original trial date of September 13, 2010. Exhibit A. As such, it is simply contrary to the facts to allege that Mr. Jenkins fled the jurisdiction or was uncooperative in the judicial process until he simply followed one of the options presented by his attorney.

Point 2.

Upon this second point the facts are few and abundantly clear. Canadian border patrol officers located what is alleged to be child pornography on Mr. Jenkins computer. The computers were removed from the vehicle and confiscated. Exhibit C. As this was done, Mr. Jenkins was, unmistakably, being held and was under arrest in fact if not in name. Id. BSO Hache then sought out Mr. Jenkins within the customs building and questioned him as to whether he had ever downloaded child pornography on his computer. Id. Mr. Jenkins, while in custody, without counsel and without being apprised of his rights, provided several vague answers which unintentionally raise the inference of guilt, i.e.; "I don't think so", "not to my knowledge", etc.

However, and as the report clearly indicates, Mr. Jenkins was not provided with any semblance of Miranda warnings until further review of the computers was conducted. Exhibit C

4

at p2, Para. 3. More specifically, while Mr. Jenkins has unquestionably been detained and evidence of an allegedly incriminating nature has been collected, he is not made aware of the charges against him, his rights under Canadian law and he is interrogated nevertheless. As will be further argued below, any statements made at this point are contrary to Mr. Jenkins right to remain silent and to proceed upon the advice of counsel. As such, they should be precluded from use at trial.

## ARGUMENT

### Point 1 – Allegations of Flight Must be Excluded at Trial.

Certainly, the Court need not be reminded that the right to counsel is clearly enunciated in the Sixth Amendment to the United States Constitution. Further, the right to *effective counsel* has been made clear by several decisions arising from our nation's highest court. Strickland v. Washington, 466 U.S. 668 (1984). In that historic case the Court made clear that "a person who happens to be a lawyer is present at trial alongside the accused... is not enough to satisfy the constitutional command." As ours is an adversarial system, the need for an effective defense counsel is manifest. Simply put, without effective defense counsel the system not only does not work, it does not exist. As such, *effective counsel* is deemed a necessary precursor to a fair trial.

In its ruling in *Strickland* the Supreme Court adopted a two prong test to delineate that actual deprivation of effective counsel, to wit; 1) that the services of counsel were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and 2) that the deficient performance rose to such a level as to deprive the defendant of a fair trial. Id. Delving further into the question as to whether counsels' actions

were insufficient, the Court stated that one should apply an "objective standard of reasonableness" in determining whether the role of attorney and advocate was compromised. Id.

In the matter at bar, the first prong of the *Strickland* is easily met by the advice of Mr. Edgely who advises to avoid prosecution by illegal means by fleeing the jurisdiction. Under the law of either the United States or Canada, or for that matter any civilized country, a defense attorney may not counsel his client to break the law. Put in more common terms, it is not an appropriate defense tactic to "run away".

Referring to later case law, and in a matter which served to answer criticism arising from the *Strickland* decision that it failed to specifically address the question as to what is "effective assistance", the United States Supreme Court adopted the Rules of the American Bar Association as parameters for the conduct of attorneys. Wiggens v. Smith, 539 U.S. 510 (2003). In *Wiggens* the Court deemed counsel efforts ineffective for not conducting a sufficient investigation into his client's background and psychological condition for consideration at sentencing. That case is directly analogous to Mr. Edgely's conduct herein as he merely directs that his client flee the country of Canada contrary to law, without conducting legal research as to his client's exposure under United States' law or otherwise properly counseling Mr. Jenkins upon the ramifications of such actions should he be apprehended. In point of fact, laws concerning the possession of pornography are notoriously lax in the Canadian provinces while in America they constitute major Federal infractions often punishable by decades of incarceration. In actuality then, Mr. Edgely advised his client to leap from the frying pan directly into the fire.

In summarizing this point, Mr. Edgely's conduct did not rise to a reasonable standard of conduct by any attorney in any common law jurisdiction. His advice and conduct is an embarrassment to the defense bar regardless of the geographic location of his practice. As such,

the *Strickland test* is readily met and the Court is requested to disallow any mention of flight or the imposition of a bench warrant in the trial on the present matter.

**Point 2 – Statements Made By Mr. Jenkins Prior to His Being Informed of His Rights Must Be Excluded from Trial.**

Upon this issue the Court is respectfully reminded at the outset that Mr. Jenkins was isolated in the custom facilities of a foreign country and surrounded by many agents. The level of Mr. Jenkins' isolation is adequately proved by the admission of the customs agent which states that "BSO Hache asked to speak to Jenkins". Exhibit C at 2. Clearly, even the Canadian officer that initiated his arrest was not allowed access to Mr. Jenkins without specific permission, such was the level of security. Moreover, Mr. Jenkins' vehicle was removed to a secondary inspection area which was also highly guarded. Clearly, Mr. Jenkins was not free to leave and the level of intimidation was great.

As the United States Supreme Court noted in *Miranda v. Arizona*, at issue is "the admissibility of statements obtained from a defendant questioned while in custody or *otherwise deprived of his freedom of action in any significant way*". Miranda v. Arizona 384 U.S. 436 (1966). Clearly, Mr. Jenkins' freedom was impeded in a *very, very significant way* and the psychological impact was, inevitably, immense. Specifically, he is isolated, alone in a foreign country, detained and then confronted with his computer while unexpected inquiry is made as to whether he committed a potentially criminal act. Further, while Mr. Jenkins would not be expected to understand the laws of the United States without counsel, he finds himself in a foreign jurisdiction who's laws and customs he cannot possibly comprehend. Without a doubt, this intimidating situation led to compulsive comments by Mr. Jenkins which would have been avoided had the mandated safeguards elucidated by the Supreme Court in the *Miranda* analysis been observed. In fact, and as delineated a few sentences later in Exhibit C, duty counsel, a

7

defense attorney made available to the accused by telephone under Canadian law, was available to counsel Mr. Jenkins to remain silent. However, Mr. Jenkins was not given access to the duty counsel until after the potentially incriminating statements were made. Exhibit C.

As if speaking of this very fact pattern, the United States Supreme Court stated:

> Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored. Miranda v. Arizona 384 U.S. 436 (1966).

As such, it is clear that those statements uttered by Mr. Jenkins prior to receiving proper guidance as to his rights must be properly excluded as they were driven by impulse in an inherently coercive situation. Therefore, the Court is respectfully asked to preclude the statements "not to my knowledge", "I don't think so" and "ah, no, I don't think so" from use at trial along with any mention by witnesses of his pre-Miranda comments.

## CONCLUSION

By this motion the court is respectfully requested to grant relief upon two limited subjects which, should they not be precluded as required under controlling law, will likely render a fair trial an impossibility. Based upon the above mentioned law and analysis, evidence of any attempt to flee the jurisdiction of Canada should be properly excluded from trial as it is the product of ineffective assistance of counsel and is simply a

8

misstatement of fact. Further, any utterance made by Mr. Jenkins before being apprised of his rights should be properly precluded as contrary to the Miranda doctrine.

Dated: October 18, 2012

Respectfully submitted,

Jeffrey R. Parry, Esq.
Attorney for Defendant Joseph Jenkins
Bar Roll No. 508023
The White House, Suite L103
7030 E. Genesee Street
Fayetteville, N.Y. 13066
(315)424-6115