**Agence des services frontaliers du Canada    Canada Border Services Agency**

## PROSECUTOR'S INFORMATION SHEET
## FICHE DE RENSEIGNEMENTS À L'INTENTION DU PROCUREUR

| PROTECTED WHEN COMPLETED | PROTÉGÉ LORSQUE COMPLÉTÉ | SEIZURE NO / NO DE SAISIE |
|---|---|---|
| Note: The information on this form is collected to maintain records and is protected under the provisions of the Privacy Act. The form is stored in personal information bank, Investigations record no. RCC PPU 020. | Note: Les renseignements que contiennent cette formule sont recueillis dans le but de conserver des dossiers et sont protégés par les dispositions de la Loi sur la protection des renseignements personnels. La formule est conservée dans le fichier de renseignements personnels concernant les enquêtes no RCD PPU 020. | INVESTIGATION FILE NO. N. DU DOSSIER D'ENQUÊTE |

| Port/Bureau | Investigator(s)/Enquêteur(s) |
|---|---|
| CBSA – Port of Lansdowne | Marie-Josee Vinette |

### PERSONAL INFORMATION / RENSEIGNEMENTS PERSONNELS

| Defendant's Name / Nom de l'accusé | D.O.B./DDN | Driver's Licence No./No. de permis de conduire |
|---|---|---|
| Joseph Vincent JENKINS | 22 Jan 1970 | |

| Address / Adresse |
|---|
| 4072 Dwyer Lane, Geneva, NY, 14456 |

### OFFENCE(S) / DÉLITS

| Offence / Délit | Section and Act / Article et Loi |
|---|---|
| Non-Report, Evading Compliance, Smuggling Child Porn | 12(1), 153 (c) and 159 Customs Act |

| Date | Time / Heure | Place / Lieu |
|---|---|---|
| May 24, 2009 | 09:55 | Port of Lansdowne |

| Witnesses' Name / Nom des témoins | Address / Adresse |
|---|---|
| BSO Pedro Sousa-Dias – primary officer | Port of Lansdowne |
| BSO Melanie Boys - immigration | Port of Lansdowne |
| BSO Glen Hache – secondary officer | Port of Lansdowne |
| BSO Tristan Garrah – arresting officer | Port of Lansdowne |
| BSO Jarrett Johnston – assisting officer | Port of Lansdowne |
| Investigator Marie-Josee Vinette | 2265 St-Laurent – Ottawa |

### COURT INFORMATION / RENSEIGNEMENTS JUDICIAIRES

| Bail / Cautionnement | C.P.I.C. Check / Vérification auprès du C.I.P.C. | Value for Duty / Valeur pour fin de droits |
|---|---|---|
| Held | NCIC Positive (agg harass $50 fine) | |

| Name of Crown Attorney / Nom du Procureur de la Couronne approché | Name of Defence Attorney / Nom du Procureur de la Défence |
|---|---|
| Harry Clarke | |

| Disposition / Sentence | Revenue Evaded/Revenu éludé |
|---|---|
| | |

### DETAILS / DÉTAILS

On May 24th, 2009 at approximately 8h50, a lone driver arrived at the Port of Lansdowne Primary Inspection Lane 5. He was driving a navy blue ram truck. He stated to primary officer Sousa-Dias that he was here to join his parents at their cottage in Quebec. He identified himself as Joseph JENKINS. The officer noticed that the driver's behavior was inconsistent with a typical tourist due to the fact that he was avoiding eye contact and looked away during the interview. The officer referred him to immigration for a criminal check.

JENKINS reported inside to Officer Boyd at the immigration counter. He presented his American passport and reiterated that he was going to visit his parents at their cottage in Quebec for the week. She asked him if he had ever been arrested/charged or convicted of an offence, to which he stated no. She verified FOSS, which is an immigration system and he was negative in the system. CPIC/NCIC was not working at the time but when available, the system showed that JENKINS had been convicted for aggravated harassment in 1998 for which he was fined $50.00, this would not make JENKINS inadmissible to Canada. She deferred the examination to Customs secondary based on the following indicators and concerns. JENKINS appeared extremely nervous while she was questioning him, he did not make eye contact and was evasive in his answers. Furthermore, she noticed that he was driving a truck pulling a trailer which appeared to be full of personal belongings. She was concerned whether JENKINS would possibly stay in Canada longer than a week considering he is self-employed and that his parents live in Canada as summer residents.

Officer Hache then proceeded with the examination of the vehicle and noticed that there were many files and tools in the truck and wanted to ensure that JENKINS was not coming to Canada to work. Officers Johnston and Garrah became available and proceeded to assist in the search of the vehicle. BSO Johnston noticed a laptop in a box in the back seat of the car and asked JENKINS if it was new and staying in Canada. JENKINS stated that he didn't have a laptop bag for the computer and

kept it in the box. He said he'd been using it for over a year and when asked stated personal files would be found on the computer. BSO Johnston powered up the computer and noticed a file as a shortcut, when opened up it appeared to be a male holding a young girl and a video was viewed of two girls who appeared to be pre-pubescent clothed only in underwear while performing sexually suggestive acts. At this point it was decided to bring the video inside the office to review for child pornography. BSO Garrah found a second laptop in the truck and proceeded to bring it inside for review as well.

BSO Hache asked to speak to JENKINS. JENKINS asked why the officers were taking his laptops inside. Hache explained that they would review the contents of the laptops and that they would be looking for child pornography and asked JENKINS if there was any on the laptops. JENKINS replied "not to my knowledge" and "I don't think so." Hache then asked JENKINS if he had ever downloaded naked pictures of teens or children and JENKINS replied "ah, no, I don't think so."

BSO Johnston reviewed the Toshiba laptop while Garrah reviewed the Compaq Presario and then one of the USB sticks. While reviewing the USB stick, Garrah viewed a file that he deemed to be child pornography. He arrested, cautioned and offered rights to counsel to JENKINS. JENKINS spoke with duty counsel and investigations were contacted.

Investigator Marie-Josee Vinette contacted Project P and spoke with Terry Padden and was instructed to review the video to determine if in fact it was child pornography and to review a few more to ensure that the video was not perhaps an accidental download. Vinette arrived at the port at 13h40 and reviewed the video in question.

At 14:55 a file entitled 9yo_vicky_stripping_and_sucking_kidy_pedo_illegal_underage_preteen was reviewed. The video was 01:39 in length and depicted a young girl in a tank top and skirt with black stockings that went mid-thigh. She appeared pre-pubescent and appears to be instructed to twirl and then to undress. She removes all of her clothing except for the stockings. She has no breast or hip development and no pubic hair. She approaches the person holding the camera and performs oral sex. This video was believed to be child pornography.

Vinette with Garrah proceeded to view a few more videos.

At 15:13 a video entitled 2.95_gigs_in_71_files_4 was viewed. The video was marked www.bd-company.info and was of two naked girls being filmed. Both girls are undressed and one is pre-pubescent with no development while the other one has some development. The one girl with no development proceeds to take pictures of the other while both are being filmed.

At 15:17 a video entitled bd-company-9yo_marina was viewed. The video was marked www.bd-company.com and was a video of a young naked girl, pre-pubescent with no development in the breast or hips and no pubic hair and poses for the camera. This video was believed to be child pornography.

At 15:21 a video entitled Bd-C.avi_1 was viewed. The video was marked bd-company.com and was of a pre-pubescent girl with no development posing during a photo shoot. At times the camera focuses specifically on the genitalia and was of 4:05 in duration. This video was believed to be child pornography.

At this point the search was concluded. A review of the thumbnails indicated that more files of the same nature would be uncovered. There were approximately 123 videos on the USB and the majority appeared to be minors. The USB in question was an "Attache" with black and blue plastic, 8g but no serial number but the letters CEFG are indicated on it.

Vinette contacted Project P and spoke with Terry Padden and explained the findings to him. He informed Vinette that an Investigator would contact me. She proceeded to read the secondary warning to JENKINS and explained the process to him and then allowed him to contact his mother. She then spoke with Investigator Kip Wohlert from Project P and gave him the details of the case. He told me that he would make arrangements to send an officer from the local detachment to pick up JENKINS.

At 17:18 all evidence was locked in the Queen's Warehouse located at the Port of Lansdowne at 862 Highway #137, Lansdowne, Ontario. The Queen's Warehouse is located on the second floor and is the first door on the right at the top of the stairs.

At 18:26 Constable Travis Buchan, badge #11843 arrived at the port and I transferred JENKINS belongings (driver's license, money and credit cards) to him and at 18:40 he left with JENKINS.


Agence des services frontaliers du Canada
B207(jcc28-03-2003/modifié2009-mai-26)


Canada

Canada Border Services Agency