IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

******************************************

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 5:11-CR-602 |
| v. | GOVERNMENT RESPONSE TO DEFENDANT'S SECOND MOTION TO SUPPRESS EVIDENCE |
| JOSEPH JENKINS | |
| Defendant. | |

******************************************

## INTRODUCTION

Defendant Joseph Jenkins stands charged by Indictment with one count of transporting child pornography in violation of Title 18, United States Code, Section 2252A(a)(1) and one count of possessing child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B).  On July 9, 2012, defendant Jenkins filed a motion to suppress the electronic evidence seized from him by Canadian law enforcement officials as well as statements made to Canadian law enforcement officers by the defendant.  Doc. No. 25.  The government opposed the motion, and on August 24, 2012, this Court issued a Decision and Order denying the defendant's motion to suppress evidence and statements, and determining that further motions would be allowed only on a showing of good cause.  Doc. No. 34 at 12.

On or about September 7, 2012, the government provided defendant Jenkins with additional documentation it had obtained concerning the criminal charges brought against the defendant in Canada arising from the defendant's possession of child pornography.  *See* Doc. No. 44-1, 44-2 ("Update as of October 18, 2010" and "Prosecutor's Information Sheet").  The "Update" contained a synopsis of defendant Jenkins's failure to appear at an October 18, 2010 court date and the subsequent issuance of a bench warrant by Ontario Superior Court Judge

1

Waugh.  *See* Doc. No. 44-1.  This information had also been included in discovery previously given defendant Jenkins by the government, and the bench warrant and an explanation of the circumstances of its issuance were discussed in the government's response to defendant Jenkins' initial motion to suppress and its attachments.  *See* Doc. No. 27-7, Exhibit G to Government Response to Motion to Suppress (warrant issued by Hon. J.D.G. Waugh).  Attachment 44-2 to the defendant's present motion, the Prosecutor's Information Sheet, contains a summary of the reports made by Canadian Border Services Agents Tristan Garrah, Glen Hache, Melany Boyd, Jarrett Johnston, and Investigator Marie Josee-Vinette during their encounter with defendant Jenkins at the border entry point to Canada.[1]

Independent of any government production, the defendant obtained correspondence from Steven J. Edgley ("Edgley"), a Canadian attorney who represented defendant Jenkins in connection with the Canadian criminal charges.  Doc. No. 41-2.  This correspondence, dated March 3, 2010, is directed to Timothy Buckley, an individual the defendant terms the "Jenkins family attorney," and provides a synopsis of Edgley's communications with defendant Jenkins.  Doc. No. 41 at 3; Doc. No. 41-2.

On October 19, 2012, defendant Jenkins filed a second motion to suppress, this time seeking suppression of evidence of the defendant's failure to appear in connection with the Canadian criminal charges and of the statements made by the defendant to CBSA officers during the border inspection.  Doc. No. 41.  This response follows.

---

[1] This synopsis appears to be based on the "Will Say" Statements submitted by the government as attachments to its response to the defendant's previous motion to suppress and thus made available to the defendant prior to the filing of the present motion.  *See* Doc. No. 27-1-5.

I.    **Evidence of the Defendant's Flight from Canada is Admissible as Probative Evidence of Consciousness of Guilt and to Provide Context for the Criminal Investigation by United States Agents**

Defendant Jenkins seeks suppression of the evidence of his failure to appear on the Canadian criminal charges and the subsequent issuance of the bench warrant for his arrest. His basis for this request is a letter sent by Edgley, his Canadian attorney, to the Jenkins' "family attorney" in the United States. Doc. No. 41-2. To begin with, the probative value of Edgley's letter is questionable. It contains a synopsis rendered by Edgley of client communications not to the defendant directly or even to the defendant's present attorney, but to an individual the defendant describes as the "family attorney." Doc. No. 41 at 3. The substance of the synopsis provided by Edgley is as follows:

> I have indicated to my client that his choices are either to make arrangements to come back and enter a guilty plea in which case he is looking at a minimum one year in jail or he can go to trial in September and plead not guilty. [A sentence is redacted from the letter at this point.] The third option is that he simply would not return to Canada in which case there would be a bench warrant issued for his arrest Canada-wide and if he ever tried to attend Canada again he would be subject to arrest pursuant to that warrant. Also the money he has posted for bail would be forfeit to Her Majesty the Queen. As you and I had discussed, even if he were to choose option #1 and return to Canada and enter a guilty plea, after he served his sentence he would very likely be escorted back to the border and would find it very difficult, if not impossible, to gain re-entry back to Canada in the future.

Doc. No. 41-2. In the present motion, the defendant refers to Edgley's explanation of his client's options in this letter as an "illegal and outrageous act" by the defendant's Canadian counsel amounting to a "recommendation" that the defendant take "the option of fleeing the jurisdiction." Def. Motion at 4. As a preliminary matter, the government submits that the Edgley letter does not demonstrate any recommendation of flight on the part of the defendant's Canadian counsel, but simply an overview of the alternative courses of action available to Jenkins, with a clear

assessment that a failure to appear would be illegal, and indeed, would result in the issuance of an arrest warrant. That said, the parties' differing interpretations of the letter and of the substance of Edgley's guidance should not bear on the suppression issue. As discussed below, the weight to be accorded the supposed recommendation by Edgley can and should be left to the assessment of the jury.

Defendant Jenkins seems to be arguing that because his failure to appear in Canada was based on the advice of counsel, and because the advice of counsel was supposedly that the defendant commit an unlawful act, he was denied effective assistance of counsel. Defendant Jenkins asserts that this due process violation renders the evidence unconstitutionally obtained.[2] However, as the Second Circuit has recognized, the analysis for the admissibility of evidence of flight is one of relevance requiring that the district court weight of the evidence's prejudicial and probative value pursuant to Fed.R.Evid. 403. *See United States v. Amuso*, 21 F.3d 1251, 1258 (2d Cir. 1994); *United States v. Ramirez*, 894 F.2d 565, 571 (2d Cir. 1990); *United States v. Castro*, 813 F.2d 571, 578 (2d Cir.), *cert. denied*, 484 U.S. 844 (1987); *United States v. Wilson*, 399 Fed.Appx. 675, 676-677 (2d Cir. 2010).

Evidence of flight is admissible as relevant pursuant to Fed.R.Evid. 402, both to provide context for the events giving rise to the criminal charges and as evidence of consciousness of guilt. In *United States v. Amuso*, 21 F.3d at 1258, the Second Circuit held that the district court properly admitted evidence of a defendant's flight from New York during a pending criminal investigation. The Court observed that "[e]vidence that does not directly establish an element of an offense may be relevant to show 'the circumstances surrounding the events or to furnish an

---

[2] This argument seems to conflate the method by which the United States obtained the evidence of flight, in this case, through disclosure of the bench warrant by Canadian law enforcement officials, and the cause of the defendant's flight. The defendant does not cite any support for the argument that the United States obtained the evidence through unconstitutional means.

explanation of the understanding or intent with which certain acts were performed.' " *Amuso*, 21 F.3d at 1258 (citing *United States v. Simmons*, 923 F.2d 934, 948 (2d Cir.) (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir.), *cert. denied*, 488 U.S. 821 (1988)), *cert. denied*, 500 U.S. 919 (1991). The Court concluded that the evidence was properly admitted because "[t]he fact of Amuso's flight was necessary to the jury's complete understanding of how Amuso conducted his business while he was a fugitive." *Id.*

In the present case, the defendant's failure to appear in connection with the Canadian criminal charges arising from his alleged possession of child pornography is an essential component of the investigation in the United States. As the affidavit submitted by Special Agent Chad Willard as at attachment 27-8 to the government's response to the defendant's initial motion to suppress indicates, the present case was referred for domestic prosecution only after the defendant fled from Canada and failed to appear in Ontario Superior Court. *See* Doc. No. 27-8 at ¶4 ("On or about October 21, 2010, Detective Constable Kip Wohlert provided Homeland Security Investigations Special Agent Matthew Meyer with Ontario Provincial Police reports and forensic reports associated with the investigation of Jenkins. Because Jenkins had become a fugitive from the Canadian prosecution, Detective Constable Wohlert referred the investigation to Homeland Security Investigation agents for further action."). In order to explain the relationship between the Canadian investigation, which began at a border checkpoint, and the investigation giving rise to the present prosecution, the government must present evidence of the defendant's flight from Canada, which resulted in the referral of the case to the United States.

Evidence of the defendant's non-appearance is also relevant to establish his consciousness of his guilt, provided that the government establishes a sufficient factual predicate to support this inference. "Before a district court may instruct the jury regarding flight it must

determine that the evidence is relevant, and there must be a factual predicate in the record from which a reasonable jury can make the required inferences that give flight evidence its probative value. . . . The requisite factual predicate ensures that the evidence is probative in a legal sense and protects the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior. The trial court's ability to exclude flight evidence as unduly prejudicial, even when a proper factual predicate exists, affords the defendant additional protection." *Amuso*, 21 F.3d at 1260. The Seventh Circuit has explained this "factual predicate" requirement for the admission of evidence of flight to demonstrate consciousness of guilt as follows:

> Beginning with our decision in [*United States v.* ]*Jackson*, [572 F.2d 636, 641 (7th Cir.1978)], we have said that the probative value of flight as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. We have also indicated that the chronology of events, and in particular the passage of time between the commission of a crime or the defendant being accused of a crime and his purported flight, is a material consideration in our assessment of both the probative worth of flight evidence and, in turn, the propriety of a flight instruction. *Jackson*, 572 F.2d at 640–41. Where a defendant flees in the immediate aftermath of a crime or shortly after he is accused of committing the crime, the inference that he is fleeing to escape capture and prosecution is strong. By contrast, if a substantial amount of time passes before a defendant takes action that the government characterizes as flight, the inference that the defendant is in fact attempting to evade prosecution becomes more tenuous. Id. at 641 (quoting Myers ). We have added, however, that "the importance of the immediacy factor is greatly diminished, if not rendered irrelevant, when there is evidence that the defendant knows that he is accused of and sought for the commission of the crime charged." *United States v. Ajijola*, 584 F.3d 763, 765–66 (7th Cir.2009) (quoting *Jackson*, 572 F.2d at 641).

*United States v. Russell*, 662 F.3d 831, 850 -851 (7th Cir. 2011) (some internal citations omitted).

The first, second, and third, and fourth factors of the *Russell* test are readily satisfied here. The defendant's "behavior," in this case, his non-appearance in court, should be construed as flight because he was clearly aware of his obligation under Canadian law to appear in Court. The defendant's flight does evidence consciousness of guilt of the crime charged in the present case. As the Edgley letter makes clear, the defendant was presented with the option to appear in Court and enter a plea of not guilty and then proceed to trial on charges virtually identical to those in the present case. The defendant chose not to exercise his option to stand trial, although it was presented to him by counsel, but rather to perform an act explicitly deemed unlawful by his Canadian attorney, who informed him that his failure to appear would result in the issuance of an arrest warrant. The defendant was aware that he had the chance to maintain his innocence, and rather than do so, he failed to return to the jurisdiction, knowing there would be criminal consequences to that action.

So too, the chronology factor of the analysis falls within *Russell*'s provision that "when there is evidence that the defendant knows that he is accused of and sought for the commission of the crime charged," the immediacy of the defendant's flight from a jurisdiction no longer factors in to the evaluation. 662 F.3d at 851. As Edgley's letter makes clear, defendant Jenkins was well aware that he was under an obligation to appear in Canadian criminal court in connection with child pornography charges and was also aware that his failure to do so would result in the issuance of a bench warrant. This evidence is more than sufficient to establish a factual predicate indicating the defendant's consciousness of his guilt.

In *Amuso*, the Court held that the evidence of the defendant's flight was properly admitted to demonstrate consciousness of guilt, observing that "[i]nsofar as the government argued in summation that Amuso's flight showed his consciousness of guilt with respect to the Windows charges, Amuso cannot contend seriously that this course was inappropriate. Amuso does not dispute that he fled the jurisdiction upon learning of the Windows charges; instead, he argues that the evidence at trial was inconsistent with an inference that his flight was prompted by consciousness of guilt. Thus, he argues that any marginal probative value of such evidence to the government was outweighed by its potential prejudice." 21 F.3d at 1258. Amuso's prejudice argument is similar to that made by defendant Jenkins. Although defendant Jenkins attempts to couch the argument for suppression in constitutional terms, the substance of his argument is it was not consciousness of guilt that caused him to flee, but rather, advice of counsel, and as such, the prejudicial effect of the evidence outweighs its probative value. As the Second Circuit explained in *Amuso*, "[t]he fact that a defendant's flight is subject to varying interpretations does not lead inevitably to the conclusion that the district court abused its discretion in admitting flight evidence. Where the evidence passes the threshold inquiry of relevance, '[t]he accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation.' While trial judges should be aware of the limitations of flight as circumstantial evidence of guilt, the threshold decision on whether to admit such evidence in a particular case falls within the judge's sound discretion, and will be disturbed only when that discretion is abused." As in *Amuso*, defendant Jenkins is free to bring in evidence of alternative explanations for his non-appearance, including evidence that he was acting on advice of counsel. The fact that an alternative explanation may exist does not in itself render the evidence inadmissible.

Further, an appropriately worded jury instruction can cure any unfair prejudice that may be caused by the admission of evidence of non-appearance or flight.  In *United States v. Ramirez*, 894 F.2d at 571, the Second Circuit upheld a jury charge on the issue of flight that "cautioned the jury that flight in and of itself is insufficient to establish guilt, that flight may have explanations other than a consciousness of guilt, and that flight should not be presumed to have occurred since that is a determination of fact left to the jury," finding that the charge was "sufficiently balanced . . . to enable the jury to consider the issue fairly."  *Id.* (citing *United States v. Castro*, 813 F.2d 571, 578 (2d Cir.), *cert. denied*, 484 U.S. 844 (1987)).  Similarly, in *Russell*, the Seventh Circuit upheld the district court's instruction to the jury that "[t]he intentional flight by a defendant immediately after he is accused of a crime that has been committed ... is a fact which, if proved, may be considered by the jury in light of all the other evidence in the case in determining guilt or innocence," even where the defendant argued that alternative inferences could be made from the defendant's travel to Mexico after a meeting with prosecutors in the United States Attorney's Office.  *Russell*, 662 F.3d at 850.

Because a sufficient factual predicate between the defendant's non-appearance and his consciousness of guilt may be readily established, because evidence of the non-appearance is necessary to explain adequately the investigation into the defendant's conduct, and because the evidence's probative value outweighs any potential unfair prejudice, the government respectfully requests that the defendant's motion to suppress the evidence of his non-appearance be **denied**.

**II.    Defendant Jenkins Fails to Cite Any New Basis Warranting Suppression of his Statements to CBSA Officers**

Defendant Jenkins seeks suppression of statements made to CBSA Office Glen Hache, specifically, the defendant's statements that "not to his knowledge" did he have anything on his laptop that would be considered child pornography, that he "didn't think" that his laptop

9

contained child pornography, and finally, that he did not think that had he ever downloaded child pornography onto the laptop contained in his vehicle. *See* Def. Memo of Law at 4.

Defendant Jenkins cites his "isolation" in a foreign country and the "inherently coercive" nature of his detainment in Canada during the border inspection as grounds for suppressing his statements to CBSA officers. Def. Memo of Law at 7-9. The government respectfully submits that none of these grounds, including the absence of *Miranda* warnings, derive from newly obtained evidence or information. *See* Doc. No. 27-2, Statement of CBSA Officer Glen Hache, Doc. No. 27-2 at 8 (describing the defendant's statements and the circumstances under which they were made). Pursuant to this Court's Decision and Order, only on a showing of "good cause" may the defendant raise new motions. Doc. No. 34 ("ORDERED that Defendant's motion for leave to file any other motion that may become necessary (Dkt. No. 25) is DENIED without prejudice for refiling in this action upon a showing of good cause."). Although the government understands that the defendant only recently obtained the correspondence from the defendant's Canadian counsel, the defendant has had access to all of the information concerning the defendant's statements since before the close of the briefing of the defendant's initial motion to suppress. *See* Doc. No. 27-1-5 (Will Say Statements of CBSA Officers Garrah, Hache, Boyd, Johnston and Investigator Marie Josee-Vinette describing border inspection).

Even if the defendant did have good cause for failing to raise previously the issue of voluntariness, he has still failed to establish that any statements he made were involuntary. At the time the statements at issue were made, the defendant was subject to an inspection at a border entry point and the questions posed were within the purview of permissible questioning during a routine border stop. *See* Statement of CBSA Officer Glen Hache, Doc. No. 27-2 ("That HACHE told him the examination of the laptops may be part of the examination of the vehicle as per the

Custom's Act."); *see* Gov't Memo of Law at Doc. No. 27 (citing *United States v. Kiam*, 432 F.3d 524, 529-31 (3d Cir. 2006) (Miranda warnings not required for immigration questioning even if criminal conduct is suspected because the questions are relevant to the admissibility of the individual into the country); *United States v. Gupta*, 183 F.3d 615, 617-18 (Miranda warnings not required during routine border questioning); *United States v. Hudson*, 210 F.3d 1184, 1191-92 (10th Cir. 2000) (Miranda warnings not required though Border Patrol agent had probable cause to arrest suspects because agent asked only routine border stop questions)); Decision and Order, Doc. No. 34 at 9 ("the Court answers this question [of whether defendant was entitled to suppression of his statements] in the negative for all of the reasons stated in the Government's memorandum of law. (Dkt. No. 27 at 15-16.)").

In *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir.1988)(*en banc*), the Fifth Circuit established a four factor test for evaluating the voluntariness of statements made during questioning at a border checkpoint:

> First, the trailer was only a short distance from the bus. Second, the conduct of the agents remained subject to the public scrutiny to the extent that the bus driver was actually present in the trailer drinking coffee. The agents did not completely isolate the women in an interrogation room. Third, the number of agents did not increase. Only five people were present in the trailer—the bus driver, the two women and the two agents. Changing the locus of the questioning to the trailer had the advantage of eliminating the potentially embarrassing presence of other bus passengers. With Agent Santana preoccupied with completing a baggage receipt form for the bus driver, it was unlikely that the agents might team up to overbear Bengivenga's will. Finally, a reasonable person in Bengivenga's position would have understood that so long as the bus driver remained in the trailer the bus would not depart and if everything checked out she would shortly rejoin the other passengers on the bus.

*Id.* at 599–600.  Here, defendant Jenkins was not taken to an interrogation room or to a holding cell at the time he made his statements.  As CBSA Office Hache indicates in his Will Say

11

Statement, "HACHE asked to speak with Jenkins outside. Jenkins immediately followed HACHE outside and asked why the officers took his laptop inside [the superintendent's office, where the laptop inspection took place]." Doc. No. 27-2 at 3. The questioning took place in the open, outside of the superintendent's office, and was therefore "subject to the public scrutiny." The number of agents who questioned defendant Jenkins did not increase beyond the number involved in the earlier inspection. Doc. No. 41-3 at 2; Doc. No. 27-2 at 3. Finally, based on the circumstances of the questioning, defendant Jenkins would reasonably have understood that "if everything checked out, [he] would shortly" be allowed to proceed through the inspection point. *Bengivenga*, 845 F.2d at 599-600. Office Hache answered defendant Jenkins' question regarding the search of his laptop at a separate location candidly and directly, explaining that the laptops were being inspected inside the superintendent's office pursuant to a Customs Act inspection, that the officers were looking for possible child pornography and that the video clip initially observed by officers during the vehicle inspection had necessitated the subsequent Customs Act inspection. Doc. No. 27-2 at 3. Further, Jenkins vehicle remained stationed at the secondary inspection point. As with the bus in *Bengivenga*, Jenkins would reasonably have believed that assuming "everything checked out" with his laptops, he would have been free to return to his vehicle and pass through the checkpoint.

  Although the defendant has submitted an affidavit in connection with his suppression motion, there are no material differences between the defendant's account of the stop and the accounts given by the CBSA officers in attachments 1-5 to the government's response to the first motion to suppress. Doc. No. 27-1-5. The defendant states that he was detained in a secondary inspection area, that he was not told that he had the right to refuse to answer the CBSA officer's questions. Doc. No. 41-4. This is identical to the information contained in the CBSA officers'

12

affidavits, but, as discussed above, these circumstances do not suffice to demonstrate that the defendant's statements were made in response to coercive interrogation.

In *United v. Price*, 599 F.2d 494, 503 (2d Cir. 1979), the Second Circuit discussed the "totality of the circumstances" test for a determination of the voluntariness of a defendant's actions, holding that "it is appropriate to take into account both the characteristics of the accused (such as youth, education and intelligence) and the details of the interrogation (such as duration and location)." In the present case, defendant Jenkins is a college educated adult. The duration of the questioning was brief and, as in *United States v. Kiam*, 432 F.3d at 529-31, was directly related to the admissibility of the individual into the country. Both Officer Boyd and Garrah's Will Say Statements indicate that the secondary inspection did not begin until 09:00. Doc. No. 27-1 (Garrah: "That at approximately 09:00, he began a secondary examination of a Blue Dodge Pickup plated: 19322JL NEW YORK. VIN: 1D7HU18D73S24487"); Doc. No. 27-3 (Boyd: "That at approximately 0900 she was present in the Immigration office and was approached by Joseph Vincent JENKINS who presented his American Passport #104901419 and a CBSA referral slip."). At 09:15, 15 minutes after the defendant entered the immigration office, Officer Hache took the defendant outside of the office and spoke to him. Doc. No. 27-2 (Hache: "That at approximately 09:15 HACHE asked to speak to JENKINS outside."). The questioning lasted 10 minutes. *See* Doc. No. 27-2 (Hache: "That at approximately 09:25 HACHE went back inside the traffic office, to the superintendent's office where GARRAH and JOHNSTON were conducting a thorough examination of the laptops."); *see also United States v. Emanuel*, 440 Fed.Appx. 881, 884 (11th Cir. 2011) (upholding district court's admission of defendant's statements as voluntary where the defendant "was not threatened, coerced, restrained, handcuffed, patted down, required to answer questions, physically intimidated, or promised

leniency. Although the officers were armed, they never removed their weapons from the holsters."). There is no indication in either the defendant's affidavit or the statements of the CBSA officers that they used any coercive measures to elicit Jenkins extremely brief statements.

### III. Conclusion

For the reasons stated above, the government respectfully requests that the defendant's motion to suppress evidence and statements be **DENIED**.

Dated: October 28, 2012                                            Respectfully submitted,

                                                                   RICHARD S. HARTUNIAN
                                                                   United States Attorney

                                                        By:        */s/ Gwendolyn E. Carroll*
                                                                   Gwendolyn E. Carroll
                                                                   Assistant United States Attorney
                                                                   Bar Roll No. 515777

CC (*via* ECF):       Jeffrey Parry, Esq.
                      Counsel for Defendant

                      Tamara Thomson
                      Assistant United States Attorney