UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                    5:11-CR-0602
                                                                      (GTS)
JOSEPH VINCENT JENKINS,

                      Defendant.
_____

APPEARANCES:                                                          OF COUNSEL:

HON. RICHARD S. HARTUNIAN                                             TAMARA THOMSON, ESQ.
  United States Attorney for the N.D.N.Y.                             GWENDOLYN CARROLL, ESQ.
  Counsel for the Government                                          GEOFFREY J.L. BROWN, ESQ.
100 South Clinton Street                                              Assistant United States Attorneys
Syracuse, NY 13261-7198

JOSEPH VINCENT JENKINS
  Defendant, *Pro Se*
Cayuga County Jail
7445 County House Road
Auburn, NY 13021

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court in the above-captioned criminal proceeding, charging Joseph Jenkins ("Defendant") with possessing and transporting child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2251A(a)(1), are the following eight pre-trial motions: (1) Defendant's second motion for omnibus relief (Dkt. No. 41); (2) Defendant's motion for a hearing to discuss pretrial release, the dismissal of the Indictment, and purported discovery issues (Dkt. No. 57); (3) Government's motion for a trial date, for a status conference to discuss purported discovery issues, and for a *Faretta* hearing to discuss Defendant's representation at trial (Dkt. No. 58); (4) Defendant's motion for the production of discovery materials (Dkt. No.

60); (5) Defendant's motion for leave to represent himself so as to "decline having an attorney forced upon me [who will] . . . seiz[e] my assets" (Dkt. No. 63); (6) Government's motion for a *Faretta* hearing (Dkt. No. 64); (7) Defendant's second motion for the production of discovery materials (Dkt. No. 65); and (8) Defendant's motion to dismiss the Indictment (Dkt. No. 67). For the reasons set forth below, the parties' motions are granted in part and denied in part.

**I.      DEFENDANT'S SECOND MOTION FOR OMNIBUS RELIEF**

In his second motion for omnibus relief, Defendant requests two forms of relief: (1) an Order excluding allegations that Defendant fled the jurisdiction of the Superior Court of Ontario at some point between September 17, 2010, and October 18, 2010, "several months" before the Canadian matter was referred to the United States Department of Homeland Security for prosecution; and (2) an Order excluding statements made by Defendant to Canada Border Services Agency ("CBSA") Officer Glen Hache prior to his being informed of his rights, as Defendant was being detained in a customs building.  (Dkt. No. 41.)

Generally, in support of his first request, Defendant asserts the following three arguments: (a) it is misleading to suggest that Defendant was uncooperative in the Canadian judicial process, because he was at the Canadian judicial proceeding on September 13, 2010; (b) in any event, Defendant left Canada after September 17, 2010, only on the advice of his then-counsel Steven Edgely, Esq., who assured him that there would be no repercussions as long as he avoided re-entering Canada; and (c) in any event, Mr. Edgely's advice was so clearly incorrect and outrageous under *Strickland v. Washington* (even though law concerning the possession of pornography are "notoriously lax" in Canada) that the advice constituted ineffective assistance of counsel in violation of Defendant's right under the Sixth Amendment.  (*Id*.)

In addition, in support of his second request, Defendant asserts the following three arguments: (a) Defendant was unquestionably in custody while he was in the customs building; (b) Defendant was unquestionably interrogated while he was in the customs building; and (c) Defendant was not advised until later of the charges against him and his rights under Canadian law, including his rights akin to *Miranda* rights.  (*Id*.)

Generally, in response to Defendant's first request, the Government asserts the following four arguments: (1) evidence of Defendant's flight from Canada is admissible under Fed. R. Evid. 402 as probative of both (a) the context for the criminal investigation by United States agents  pursuant to *U.S. v. Amuso*, 41 F.3d 1251 (2d Cir. 1994), and (b) Defendant's consciousness of guilt pursuant to the four-factor test used in *U.S. v. Russell*, 662 F.3d 831 (7th Cir. 2011), and pursuant to *Amuso*, 41 F.3d 1251; (2) such evidence is not unfairly prejudicial under Fed. R. Evid. 403 and, in any event, an appropriately worded jury instruction can cure any unfair prejudice that may be caused by the admission of evidence of non-appearance or flight, as was used in *U.S. v. Ramirez*, 894 F.2d 565 (2d Cir. 1990), and *Russell*, 662 F.3d 831; (3) Mr. Edgley's letter does not evidence ineffective assistance of counsel by Mr. Edgley because the letter does not demonstrate any recommendation of flight, but simply an overview of the alternative courses of action available to Defendant, with a clear assessment that a failure to appear would be illegal, and indeed, would result in the issuance of an arrest warrant; and (4) in any event, even if the letter did evidence such ineffective assistance of counsel, that fact would not render the evidence unconstitutionally obtained by the United States, so as to warrant preclusion in this proceeding.  (Dkt. No. 47.)

3

In addition, in response to Defendant's second request, the Government asserts the following four arguments: (1) the grounds offered by Defendant in support of this request are his purported "isolation" in a foreign country, the purportedly "inherently coercive" nature of his detainment in Canada during the border inspection, and the absence of *Miranda* warnings; (2) none of these three grounds is new, in comparison to the grounds offered by Defendant in support of his first such request, because (a) Defendant had access to all of the information giving rise to those grounds since before the close of the briefing of the Defendant's first request, and (b) there are no material differences between Defendant's account of the stop in his affidavit in support of his second request and the accounts of the stop given by the CBSA officers in Attachments 1 through 5 of the Government's response to Defendant's first request; (3) because none of these three grounds are new, Defendant's second request is in violation of the Court's Order of August 24, 2012, which provided, in part, that Defendant may not renew this request except on a showing of good cause; and (4) in any event, even if these three grounds are new, they do not justify suppression, because they do not establish that either (a) any of the questions asked of Defendant at a secondary inspection area during a routine border stop were impermissible or (b) any of the statements he made in response to those question was involuntary under the totality of circumstances (e.g., Defendant's college education and adult age, the constant number of agents involved, the brief duration of the questioning, the fact that the questioning occurred outside of an interrogation room or a holding cell, and the fact that Defendant was advised that he would be free to go if "everything checked out" regarding the search of his laptop, etc.). (*Id.*)

The Court notes that, following completion of the briefing on Defendant's motion, Defendant was relieved of Court-appointed counsel (due to his ability to pay for counsel) and declared an intent to represent himself at trial. (Dkt. Nos. 48, 63, 66.) Out of special solicitude to Defendant, the Court has considered his second motion for omnibus relief as still-pending before the Court, despite the aforementioned occurrences.

After carefully considering the matter, the Court denies Defendant's second motion for omnibus relief for each of the alternative reasons stated by the Government in its opposition memorandum of law. (Dkt. No. 47.) The Court would add only two brief points. First, according to Defendant's own argument, the allegedly defective advice of Mr. Edgely was given "several months" before the current proceeding began. That fact further supports the conclusion that the allegedly substandard quality of advice by Mr. Edgely does not somehow render the evidence inadmissible in this proceeding pursuant to the Sixth Amendment. Second, in addition to relying on the suppression-of-statement cases cited by the Government on pages 11 through 13 of their opposition memorandum of law, the Court relies on the cases cited by the Court in Part III.B. of its Decision and Order of August 24, 2012. (Dkt. No. 34.)

For all of these reasons, Defendant's second motion for omnibus relief is denied.

## II. DEFENDANT'S MOTION FOR A HEARING TO DISCUSS PRETRIAL RELEASE, THE DISMISSAL OF THE INDICTMENT, AND PURPORTED DISCOVERY ISSUES

Defendant's next motion requests a hearing to discuss pretrial release, the dismissal of the Indictment, and purported discovery issues. (Dkt. No. 57.) To the extent this motion requests a hearing to discuss pretrial release and the dismissal of the Indictment, that motion is denied as clearly unsupported by a showing of cause: Defendant does not even attempt to articulate the

specific grounds in support of those two requests, much less provide any legal support for the requests. However, to the extent Defendant's next motion requests a hearing to discuss purported discovery issues, that motion is granted in part: rather than hold an evidentiary hearing regarding discovery, the Court shall hold a conference regarding discovery. The conference shall be held after the *Faretta* hearing scheduled on May 29, 2013.

While Defendant's motion does not specify the discovery material requested, it references a letter he sent to the Government on January 22, 2013. (*Id*.) Generally, that letter requested the following four types of material: (1) "paperwork and reports that detective Wohlerg (OPP) provided to DHS agent Meyers on October 21, 2010, that was used to obtain an [A]merican search warrant"; (2) "[c]omplete analysis by DHS"; (3) a "[w]ritten response as to all of the people DHS interviewed upon investigating me"; and (4) "Border Cross records/information" from May 26, 2009, and September 13, 2010. (Dkt. No. 53.)

The Court acknowledges that, in response to Defendant's discovery argument, the Government certifies that it has complied with, and will continue to comply with, all of its discovery obligations. (Dkt. No. 56.) More specifically, the Government incorporates the arguments that it made in a letter brief it filed on July 6, 2012, in which it argued, inter alia, as follows: (1) on October 21, 2011, Defendant's counsel was provided with the Government's first disclosure (which included, but was not limited to, all of the Department of Homeland Security reports then in the possession of the Government, the arrest warrant signed by U.S. Magistrate Judge Andrew T. Baxter, the search warrant signed by U.S. Magistrate Judge George H. Lowe, the warrant application and affidavit, the examination report of Brian Braisted, the custody receipts for seized property and evidence, the arrest warrant from Canada dated October 18,

2010, the CBSA evidence seizure receipt, the search warrant from Canada, the property report from Canada, and the forensic examination report from Canada); (2) on that same date, defense counsel was given access to the images and videos of child pornography in question for inspection, as well as the case agent, Chad Willard, the forensic examiner, Brian, for questioning; (3) on October 28, 2011, the Government disclosed to defense counsel the National Center for Missing and Exploited Children's report; (4) on March 15, 2012, the Government transported Defendant to the U.S. Attorney's Office to review the evidence against him; (5) on that same date, two additional forensic examination reports, dated March 14, 2012, were provided to defense counsel; (6) on June 28, 2012, the Government disclosed a CD of audio-recorded telephone calls made by Defendant while in custody; (7) on July 3, 2012, the Government had an additional meeting with defense counsel to review the images and videos (again) and audio-recordings of Defendant; (8) later that day, the Government provided defense counsel with a list of file titles for the images and videos in question; and (9) on July 6, 2012, Defendant was given the opportunity to be transported to the U.S. Attorney's Office to give Defendant a second opportunity to review the evidence against him. (Dkt. No. 24.)

However, the Government itself appears to join in Defendant's request the scheduling of a conference to discuss, inter alia, the discovery issues that Defendant asserts exist. (Dkt. Nos. 56, 59.) While this Court does not agree with Defendant that an evidentiary hearing is necessary at this time, the Court does find that a conference is necessary to discuss any outstanding discovery issues.

The Court will add only one point. Attached to his motion to represent himself (discussed below in Part V of this Decision and Order), and also attached to his second motion

for the production of discovery (discussed below in Part of this Decision and Order), is a letter from Defendant to the Government dated April 28, 2013, in which Defendant also appears to request "Transcripts from Canadian Court Proceedings." (Dkt. No. 63, at 6-7; Dkt. No. 65, at 11-12.) As a result, this purported discovery issue shall also be addressed at the above-described conference on May 29, 2013.

### III. GOVERNMENT'S MOTION FOR A TRIAL DATE, FOR A STATUS CONFERENCE REGARDING DISCOVERY, AND FOR A *FARETTA* HEARING

To the extent that the Government requests a trial date, that motion is granted. It has been the pendency of various motions addressed in this Decision and Order that has stayed the running of the Speedy Trial Clock, and thus postponed the setting of a trial date in this action. Upon the Court's issuance of this Decision and Order deciding those motions, the Court shall set a trial date.

To the extent that the Government requests a status conference regarding discovery, the Court has already granted that request above, in Part II of this Decision and Order. As a result, this motion is granted.

Finally, to the extent that the Government requests a *Faretta* hearing, the Court has already determined that such a hearing should be held. (*See* Text Notice dated May 2, 2013.) The Court made that determination for the reasons stated by the Government in this motion (Dkt. No. 58, at 3-5), as well as the reasons stated by the Government in a renewed request for a *Faretta* hearing (*see generally* Dkt. No. 64). Nothing in Defendant's opposition changes the Court's determination. (Dkt. No. 65, at 3-8; Dkt. No. 66.) Indeed, Defendant's recent *pro se* submissions to this Court have convinced the Court even more than a *Faretta* colloquy is necessary. As a result, this motion is granted.

## IV.  DEFENDANT'S MOTION FOR THE PRODUCTION OF DISCOVERY

In his renewed motion for the production of discovery, Defendant does not appear to seek any material other than what was described in his motion for a hearing to discuss discovery issues, discussed above in Part II of this Decision and Order.  (*Compare* Dkt. No. 60 *with* Dkt. No. 57.)  As a result, Defendant's motion is denied without prejudice: the Court shall address any outstanding discovery issues during a conference to be held after the *Faretta* hearing scheduled on May 29, 2013.

## V.  DEFENDANT'S MOTION TO REPRESENT HIMSELF

Defendant's next motion requests leave to represent himself so as to "decline having an attorney forced upon me [who will] . . . seiz[e] my assets." (Dkt. No. 63.)  Because a *Faretta* hearing has yet to be held, this motion is denied without prejudice.  The Court advises Defendant that, should the Court find him to be knowingly and voluntarily waiving his right to be represented at trial, the Court will nonetheless appoint him standby counsel, to assist him at trial in the event he requests assistance.  This standard procedure has proven to benefit other *pro se* criminal Defendants in the past.

## VI.  GOVERNMENT'S RENEWED MOTION FOR A *FARETTA* HEARING

As explained above in Part III of this Decision and Order, the Court has already determined that it is appropriate to hold a *Faretta* hearing under the circumstances.  As a result, this motion is granted.

**VII.     DEFENDANT'S SECOND MOTION FOR THE PRODUCTION OF DISCOVERY MATERIALS**

Defendant's second motion for the production of discovery material appears redundant of his two earlier requests for discovery. (*Compare* Dkt. No. 65 *with* Dkt. No. 57 *and* Dkt. No. 63, at 6-7.) As a result, this motions is granted in part: the Court shall address any outstanding discovery issues during a conference to be held after the *Faretta* hearing scheduled on May 29, 2013.

**VII.     DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

Generally, liberally construed, Defendant's last motion argues that dismissal of his Indictment is warranted essentially for six reasons, each of which the Court rejects. (Dkt. No. 67.)

First, argues Defendant, the law enforcement authorities of Canada violated Defendant's right to be free from unreasonable searches and seizures under the Fourth Amendment by wrongfully searching and seizing 15 items (specifically, two computers, three USB sticks, six compact dics, a wireless notebook card, a digital camera, a digital camera picture card, and a cell phone) on or about May 24, 2009. (*Id*.) This argument has already been considered, and rejected, by the Court, in its Decision and Order of August 24, 2012. (*Compare* Dkt. No. 25 *with* Dkt. No. 34.) Defendant has not even attempted to offer grounds for reconsideration of that Decision and Order.

Second, argues Defendant, the law enforcement authorities of Canada and/or the United States (including Canadian Detective Constable Kip Wohlert and United States Homeland Security Investigations Special Agent Chad Willard) violated Defendant's right to due process under the Fifth Amendment and/or right to a fair trial under the Sixth Amendment by failing to

comply with proper chain-of-custody procedures regarding the aforementioned 15 items, and indeed losing nine of those 15 items, between May 24, 2009, and approximately April 1, 2011. (*Id*.)  In addition to failing to sufficiently establish that the nine referenced items were in fact lost, Defendant has failed to sufficiently establish such facts as the bad faith of any of the persons responsible for that loss, the status of all of those persons as agents of the United States, and the exculpatory value of the evidence.

Third, argues Defendant, the law enforcement authorities of Canada (including Detective Wohlert) and the law enforcement authorities of the United States (including Special Agent Chad Willard and his fellow-special agent, Matthew Meyer) violated Defendant's right to due process and to be free from double jeopardy under the Fifth Amendment and/or right to a fair trial under the Sixth Amendment by wrongful turning over evidence to, and receiving evidence from, foreign authorities on or about October 21, 2010, because Wohlert was required to retain the evidence until the Canadian trial was completed (and that trial has been adjourned without date and remains on the Canadian court's docket as trial ready). (*Id*.)  In addition to failing to sufficiently establish that the referenced Canadian proceeding is still pending, Defendant has failed to establish that either a violation of Canadian court procedure or the cooperation of Canadian authorities in the current proceeding warrants dismissal of the current proceeding.  The Court notes that the Double Jeopardy Clause of the Fifth Amendment is not violated where separate sovereigns (such as the United States and Canada) initiate sequential prosecutions.[1]

---

[1] *See United States v. Richardson*, 580 F.2d 946, 947 (9th Cir. 1978) ("[P]rosecution by a foreign sovereign does not preclude the United States from bringing criminal charges."); *United States v. Rashed*, 83 F. Supp. 2d 96, 100 (D. D.C. 1999) ("The dual sovereignty doctrine emerged from the common law conception of crime as an offense against the sovereignty of the government. . . .  As such, when an individual by a single act violates the laws of two sovereigns,

Fourth, argues Defendant, there is insufficient evidence to convict, or even indict, Defendant because (1) the Canadian authorities' half-complete forensic examination of his two computers (of September 13, 2010) showed no child pornography accessible on those computers, (2) the Canadian authorities' fully complete forensic examination of his computers (of October 21, 2010) has never been provided to him, and (3) in any event, the Canadian authorities' half-complete report, which was some 20 pages in length, was more extensive than the reported prepared by the United States authorities, which was only five pages in length. (*Id*.) Even if supported by the record, which it is not, this argument would not constitute a ground on which to dismiss the Indictment against Defendant.[2]

Fifth, argues Defendant, the law enforcement authorities of Canada and/or the United States violated Defendant's right to due process under the Fifth Amendment and/or right to a fair trial under the Sixth Amendment by (1) conspiring to hide the United States' involvement in a joint investigation before approximately October 21, 2010, and then (2) conspiring to improperly shift jurisdiction of his criminal prosecution from Canada to the United States, rather than

---

he has committed two offenses, for each of which he is justly punishable.") (internal quotations marks and citation omitted); *United States v. Jurado-Rodriguez*, 907 F. Supp. 568, 579 (E.D.N.Y. 1995) ("Under the dual sovereignties theory, the United States is not bound by its internal law to recognize a previous conviction by another state for United States double jeopardy purposes.").

[2]  *See United States v. Calandra*, 414 U.S. 338, 345 (1974) ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate . . . evidence.'"); *United States v. Casamento*, 887 F.2d 1141, 1183 (2d Cir.1989) (holding that facially valid indictment "may not be challenged on the ground that it is based on inadequate evidence"); *United States v. Ortiz*, 666 F. Supp.2d 399, 406 (S.D.N.Y. 2009) ("The Court cannot, however, dismiss a facially valid indictment based on insufficient evidence."); *United States v. Butler*, 351 F. Supp.2d 121, 126 (S.D.N.Y.2004) (Lynch, J.) ("[I]t is hornbook law that a federal defendant may not challenge a facially-valid indictment ... on the ground that it is based on insufficient evidence.").

require Canadian authorities to extradite Defendant from the United States, where he was entitled to asylum.  (*Id*.)  Defendant has not shown how the cooperation between Canadian and United States law enforcement authorities, even if confidential in nature, violates the United States Constitution.  While such an act may impact the extraterritorial application of the Fourth Amendment, Defendant has not demonstrated that a Fourth Amendment violation occurred, as the Court has previously explained.

Sixth, argues Defendant, the law enforcement authorities of Canada and/or the United States violated Defendant's rights under the Speedy Trial Act, because the Speedy Trial clock should have started running on or about May 24, 2009.  (*Id*.)  As explained by the Court in its Text Order of April 22, 2013, the Speedy Trial clock has not yet expired in this action.

For all of these reasons, the Court denies Defendant's motion to dismiss the Indictment.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's second motion for omnibus relief (Dkt. No. 41) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for a hearing to discuss pretrial release, the dismissal of the Indictment, and purported discovery issues (Dkt. No. 57) is **DENIED in part** and **GRANTED in part**; and it is further

**ORDERED** that the Government's motion for a trial date, for a status conference to discuss purported discovery issues, and for a *Faretta* hearing to discuss Defendant's representation at trial (Dkt. No. 58) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for production of discovery materials (Dkt. No. 60) is **DENIED without prejudice**; and it is further

**ORDERED** that Defendant's motion for leave to represent himself (Dkt. No. 63) is **<u>DENIED</u> without prejudice**; and it is further

**ORDERED** that the Government's motion for a *Faretta* hearing (Dkt. No. 64) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's second motion for the production of discovery material (Dkt. No. 65) is **<u>DENIED</u> without prejudice**; and it is further

**ORDERED** that Defendant's motion to dismiss the Indictment (Dkt. No. 67) is **<u>DENIED</u>**; and it is further

**ORDERED** that, upon the filing of this Decision and Order, the Clerk of the Court shall set a trial date in this action; and it is further

**ORDERED** that the parties shall appear before the undersigned for a conference to discuss any discovery issues, to be held after the *Faretta* hearing scheduled on May 29, 2013.

Dated: May 21, 2013
       Syracuse, New York

*/s/ Glenn T. Suddaby*
Hon. Glenn T. Suddaby
U.S. District Judge