UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA

vs.                          11-cr-602

JOSEPH VINCENT JENKINS,

                    Defendant.
------------------------------------------x

              Transcript of *Faretta Hearing* held on

May 29, 2013, at the James Hanley Federal Building,

100 South Clinton Street, Syracuse, New York, the

HONORABLE GLENN T. SUDDABY, United States District Judge,

Presiding.


              A P P E A R A N C E S

For Government:      OFFICE OF THE UNITED STATES ATTORNEY
                     P.O. Box 7198
                     100 South Clinton Street
                     Syracuse, New York  13261-7198
                       BY:  GWENDOLYN E. CARROLL, AUSA
                            TAMARA THOMSON, AUSA

For Defendant:       JOSEPH VINCENT JENKINS, Pro Se
                     Cayuga County Jail
                     7445 County House Road
                     Auburn, New York 13021


              *Eileen McDonough, RPR, CRR*
              *Official U.S. Court Reporter*
              *100 S. Clinton Street*
              *Syracuse, New York 13260*
              *(315)234-8546*

1              THE CLERK:  Case number 5:11-cr-602.  Counsel,

2     please note your appearance for the record.  And the

3     defendant, if you would note your appearance after she notes

4     theirs.

5              MS. CARROLL:  Good morning, Your Honor.  Gwen

6     Carroll and Tamara Thomson appearing on behalf of the

7     government.

8              THE COURT:  Good morning.

9              MR. JENKINS:  Joseph Jenkins appearing.

10             THE COURT:  Good morning, Mr. Jenkins.  We're

11    here to accomplish a few things this morning.  First of all,

12    we met some time ago to discuss, Mr. Jenkins, your ability

13    and opportunity and desire to get an attorney and what you

14    wanted to do, and I believe I asked two different counsel to

15    go meet with you.  And I understand that they did, is that

16    correct?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And can you tell me, have you made

19    any decisions about what you're going to do about legal

20    representation?

21             THE DEFENDANT:  I stated before I want to

22    represent myself for the time being.  I've asked for

23    discovery ever since I've been in here and I haven't been

24    able to obtain it through attorneys, and I don't know if the

25    only way to get it is to represent myself or not.

1          THE COURT:  I would say probably not.  Okay?
2    You've been represented by counsel previously and you've made
3    motions and you've requested certain things, and the
4    government has an obligation to turn over certain things that
5    are in their control, possession and control, and you've made
6    motions with regard to that.  I issued some decisions and
7    orders with regard to that.  We'll deal with that shortly as
8    far as what's been turned over and what the government has an
9    obligation to turn over, we'll lay that out for you to
10   understand.

11          But I don't believe that there is going to be
12   any -- I can tell you there isn't going to be any change with
13   regard to what you legally have a right to and what the
14   government legally has a responsibility to turn over to you.
15   Now, you may be able to get some of the things that you want
16   on your own, and certainly that's easier with the assistance
17   of an attorney.  A number of things are easier with the
18   assistance of an attorney.

19          One of the things that I want to emphasize
20   very strongly, and depending on how you answer I'm going to
21   go through an entire list of questions to ensure that you
22   understand how important it is that you be represented by
23   legal counsel.  It's critical with regard to no matter what
24   you decide to do, whether it's to go to trial, to enter a
25   plea; I know you expressed no interest in that.  But

1   regardless of what you decide you want to do in this case, it

2   is critical that you have legal representation.

3           Now, at one of our prior conferences here in

4   this courtroom you indicated to me that your parents were

5   involved in trying to assist you in retaining an attorney.

6   Based on that, this Court reached out to your parents and

7   just to see if they had any success or if they wanted to be

8   involved in this court proceeding where I was going to talk

9   to you about how important it is to have legal

10  representation.  You sent me a letter objecting to that.  And

11  let me make it clear, in no way did this Court order or

12  demand or any way else that your parents be here.  After your

13  letter, as a matter of fact, I had my clerk contact your

14  parents to make it perfectly clear that they did not have to

15  come here; the Court was not requiring them to come here.  I

16  was just reaching out to try and assist you and the court to

17  find out if they had had any success in helping you to retain

18  an attorney.

19          And secondly, based on the fact that you

20  represented they were trying to help you, I thought they

21  would be very interested and want to be involved or at least

22  be present for this particular hearing today for you to make

23  a decision about whether or not you're going to retain legal

24  counsel in going forward.  It was my hope that if you needed

25  to, you might want to have a discussion with them to assist

1   you in making that decision.  Okay?  So I want that to be

2   clear, Mr. Jenkins.  I was in no way ordering your parents to

3   be here.  I hope you understand that.

4               THE DEFENDANT:  That's fine.  They were just

5   out of town and I didn't want them --

6               THE COURT:  I understand.  I understood from

7   your letter.  And we contacted them to make sure that they

8   understood that we weren't requiring them to be here.  And I

9   see I believe in the front row here they are here, and if you

10  get to a point where you want to talk to them, I'm going to

11  encourage the marshals or ask the marshals to allow you to do

12  that.  I'll have them come up inside the bar and sit at that

13  back table and you can turn around and talk to them if that's

14  something you want to do with regard to this legal counsel

15  thing.

16              So, when you say to me you think you want to

17  represent yourself at this point, tell me what you mean by

18  that.

19              THE DEFENDANT:  I can't find a lawyer that

20  wants to do what I want them to do.  And I've been through

21  this, I went through it for a year and a half with Jeff

22  Parry.  I said there is certain things that I need for my

23  case.  Look, it's right here on the paper, they have this,

24  this and this, I want it.  Well, yeah, we'll get it, we'll do

25  this.  Well, nothing is happening, it's gone on for a year

1    and a half.

2              So, I mean there is -- this case is four years

3    old and there is a lot of things that happened prior to this,

4    I know the U.S. Government doesn't seem to want to get into,

5    but they're very essential to my defense.  The facts have not

6    come out yet what has really happened in this Canada case

7    that led to what's going on here, and I want to make sure

8    that one way or another it comes out.

9              And the government jumped into the middle of a

10   Canadian proceeding and took evidence.  And there was already

11   testimony on file as to what happened, there has been reports

12   issued.  The Canadian proceedings were not finished.  The

13   Canadian proceedings did not produce a complete forensic exam

14   on the computer.  This is all on record.  I'm assuming that

15   the forensic exams they have are not going to prove because

16   they weren't any completed ones.  And it's all on record and

17   that's why I'm requesting this discovery.

18             THE COURT:  Well, Mr. Jenkins, as I've

19   indicated there are certain things you're entitled to under

20   the law and certain things that you're not, that the

21   government has no obligation and requirement to provide to

22   you if they don't have custody and control of those

23   particular items.  Regardless of the fact that you think that

24   they're working with the Canadian government, they may have

25   some cooperation to some extent, but their legal obligations

1    only go so far.  And certainly legal counsel, somebody who's

2    trained in the law, can advise you to that.

3                 Now, whether you take their advice or not is

4    another issue, and whether you want to accept or not what the

5    law says in this country with regard to what you're entitled

6    to, that's another issue too.  But, certainly, you're better

7    off with legal representation and being able to discuss with

8    someone what your legal rights are so that you have an

9    appreciation and understanding about what you can get through

10   a discovery demand from the government and what you may get

11   on your own if you want to try and get it.

12                 And, certainly, it's difficult for you to try

13   and get things on your own when you're in jail.  So, legal

14   counsel is of great assistance in that area.  But please

15   understand that they need to understand and appreciate the

16   things they can demand from the government, from the U.S.

17   Attorney's Office, and what they are obligated to provide and

18   what you may be able to get on your own are two different

19   things.  If you were involved in the Canadian proceedings,

20   which obviously you were, you're a party to it, therefore,

21   your rights with regard to requesting things, I don't know

22   Canadian law, but maybe you have more of a right to ask for

23   that stuff than somebody else.

24                 THE DEFENDANT:  See, that's the thing.  The

25   last year and a half with Jeff Parry, Jeff Parry got stuff

1   from Canada and it's been confirmed but he didn't want to

2   share it with me.  And I mean, obviously, I can't get it by

3   myself.  It just hasn't worked out with an attorney so far.

4                    THE COURT:  Well, Mr. Jenkins, you need an

5   attorney.  I mean, there are certain things you need to

6   understand, and at this point I'm going to go through a list

7   of things that I'm required to cover with you so that I know

8   that you have an appreciation of how important it is to be

9   represented.  Okay?  So bear with me, I'm going to go through

10  this.

11                   First of all, how old are you?

12                   THE DEFENDANT:  Forty-three.

13                   THE COURT:  Forty-three.  You obviously can

14  read and write; you've submitted all sorts of motions and

15  things like that.  No problem with doing that?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  You have no difficulty

18  understanding the English language.  The Court can make the

19  assessments of that from your appearances before me.  How far

20  did you go in school?

21                   THE DEFENDANT:  I have two years of college

22  and I took some extra courses after that.

23                   THE COURT:  So, you're a high school graduate

24  and you have some college education?

25                   THE DEFENDANT:  Yes.

1                    THE COURT:  Okay.  Are you married?

2                    THE DEFENDANT:  No.

3                    THE COURT:  Divorced?

4                    THE DEFENDANT:  No.

5                    THE COURT:  Do you have any children?

6                    THE DEFENDANT:  No.

7                    THE COURT:  Your parents are here today, is

8    that correct?

9                    THE DEFENDANT:  Yes.

10                    THE COURT:  And you have regular contact with

11    your parents?

12                    THE DEFENDANT:  Yes.

13                    THE COURT:  Any siblings?

14                    THE DEFENDANT:  A sister.

15                    THE COURT:  Do you have regular contact with

16    your sister?

17                    THE DEFENDANT:  No.

18                    THE COURT:  What's your employment history?

19    Have you worked since leaving school?

20                    THE DEFENDANT:  I've worked since I was 12

21    years old, mostly self-employed.

22                    THE COURT:  Doing what type of work?

23                    THE DEFENDANT:  Construction type work.

24                    THE COURT:  And when you say construction?

25                    THE DEFENDANT:  Mostly, I was --

1          THE COURT:  What type of construction?

2          THE DEFENDANT:  Mostly electrical work.

3          THE COURT:  Electrical work.  So residential

4  or commercial?

5          THE DEFENDANT:  Residential, commercial and

6  industrial.

7          THE COURT:  Okay.  And were you required to

8  have any licenses or certifications to do that work?

9          THE DEFENDANT:  No.  I went to school for a

10  year.

11          THE COURT:  But a lot of times if you're going

12  to do electrical work, there is certain certifications that

13  are required.  You didn't have any of that?

14          THE DEFENDANT:  No.  That's only in the big

15  cities, don't have that in the small towns.

16          THE COURT:  Where were you doing this kind of

17  work?

18          THE DEFENDANT:  Geneva, Canandaigua, Waterloo,

19  Seneca Falls.

20          THE COURT:  Okay.  Have you ever been treated

21  for any sort of mental illness?

22          THE DEFENDANT:  No.

23          THE COURT:  Have you -- do you have a history

24  of drug and alcohol use?

25          THE DEFENDANT:  No.

1          THE COURT:  Are you currently taking any

2    medications?

3          THE DEFENDANT:  No.

4          THE COURT:  Nothing?

5          THE DEFENDANT:  Just an allergy pill.

6          THE COURT:  Allergy pill, okay.  Has anyone

7    advised you not to use a lawyer?  Have you talked to anybody

8    and somebody's given you advice, either in jail or someplace

9    else, and they said you don't need a lawyer?

10          THE DEFENDANT:  No.  It's my own decision.

11          THE COURT:  No one has threatened you about

12    use of a lawyer or not using a lawyer?

13          THE DEFENDANT:  No.

14          THE COURT:  And you understand that you have a

15    Sixth Amendment right under the United States Constitution to

16    be represented by a lawyer at trial and at every other stage

17    of these proceedings?  Do you understand that?

18          THE DEFENDANT:  Yes.  Yes.

19          THE COURT:  And do you understand these

20    charges that have been filed against you?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Tell me what you've been charged

23    with.

24          THE DEFENDANT:  Um, transporting, transporting

25    child pornography into Canada.

1          THE COURT:  And there is another charge.
2  What's that one?

3          THE DEFENDANT:  Possession.

4          THE COURT:  Possession of child pornography.
5  Okay.  And during the time that you were represented by a
6  lawyer in this case, did you discuss these charges with your
7  attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And you can assure me you
10  understand what these charges are?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you have any questions about
13  the charges, what the charges are?

14          THE DEFENDANT:  Well, I have a lot of
15  questions how it ended up in the United States, but not to
16  the charges themselves, no.

17          THE COURT:  What I'm going to do now is I'm
18  going to have the government advise you of the potential
19  penalties of these charges.  I want to make sure that you
20  understand, I want it on the record that you understand what
21  you're looking at as far as potential penalties.

22          Ms. Thomson, if you could go ahead.

23          MS. THOMSON:  Yes, Your Honor.  For the first
24  count, that's the transportation of child pornography, the
25  term of incarceration would be not less than five years, not

1   more than twenty years, so there is a mandatory minimum of

2   five years incarceration.   Term of supervised release would

3   be five years to life.   Maximum fine would be $250,000.   A

4   special assessment of $100.   And as a result of conviction in

5   this case, the defendant would be required to register as a

6   sex offender, would be subject to prosecution under 18 U.S.C.

7   Section 2250.   There will be also consequences typical to a

8   felony conviction, include but are not limited to the loss of

9   the right to vote and to bear arms.

10              With regard to the second count, that is the

11  possession of child pornography, the term of incarceration

12  would be not more than ten years, also supervised release

13  term of five years to life, same fine, $250,000 max, special

14  assessment of $100.

15              THE COURT:   Thank you, Ms. Thomson.

16  Mr. Jenkins, do you have any question about those potential

17  penalties that you're facing?

18              THE DEFENDANT:   No.

19              THE COURT:   And do you understand that if

20  you're convicted on these charges, you will have a permanent

21  criminal record?   Do you understand that?

22              THE DEFENDANT:   Yes.

23              THE COURT:   And you don't have any questions

24  about any of those potential penalties?

25              THE DEFENDANT:   No.

1          THE COURT:  Now, I want to talk to you about

2    some of the advantages of being represented by a lawyer.  And

3    certainly an attorney's legal knowledge and experience is

4    incredibly helpful and useful, despite what you've indicated

5    your experience with Mr. Parry is, pretrial getting ready for

6    trial and knowing what the issues are, what the legal issues

7    are, what they need to address, what witnesses they may need

8    to call or not call, what things they need to request from

9    the government, the ability to secure potentially favorable

10   evidence and how that evidence can be introduced in a court

11   of law.  All those things pretrial are critical.

12          Now, with regard to advantages of being

13   represented by a lawyer at trial, and this is where I really

14   emphasize that the legal training and the experience of

15   courtroom procedures, rules of evidence, law of evidence and

16   a number of other things, the incredible disadvantage that

17   you will be at without legal representation.

18          First of all, a lawyer has the experience and

19   knowledge of this entire process.  He or she would be able to

20   argue for your side during the whole trial and present the

21   best legal arguments possible on your behalf for your

22   defense.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And since a jury qualification and

25   selection are governed by numerous legal procedures, a lawyer

1    with knowledge and experience in selecting a jury and going

2    through the jury selection process is also critical.  Do you

3    understand that?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  There are rules and procedures

6    with regard to that.  A lawyer can call witnesses for you,

7    question those witnesses, cross-examine witnesses against you

8    and present evidence on your behalf.  Do you understand that?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  A lawyer can advise you on whether

11   you should testify or not and help you and assist you with

12   that decision, advise you of what you have a right not to say

13   and advise you on things that you may want to say in front of

14   a jury and this Court.  Do you understand that?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  A lawyer has studied the rules of

17   evidence, knows what evidence can or cannot come into your

18   trial.  Do you understand that?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  A lawyer may be able to provide

21   assistance in ensuring that a jury is given complete and

22   accurate jury instructions by the Court and may make

23   effective closing arguments on your behalf and may prevent

24   improper argument by the government.  Do you understand that?

25                   THE DEFENDANT:  Yes.

1          THE COURT:  And a lawyer may ensure that any

2    errors committed during the trial are properly preserved for

3    appellate review later by a higher court, which takes an

4    appreciation and understanding of the law.  Do you understand

5    that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  Do you have any questions

8    about those potential advantages regarding the trial and

9    having a lawyer represent you?  Anything I can answer for

10   you?

11         THE DEFENDANT:  No, not really.

12         THE COURT:  All right.  Now, I'm going to go

13   through a list of things with regard to the advantages of

14   having a lawyer represent you post trial.  If you are

15   convicted, a lawyer's assistance may be useful in preparing

16   for sentencing, ensuring that favorable facts are brought to

17   the attention of the Court, ensuring that the Court is

18   advised of all legally available favorable dispositions and

19   ensuring that the sentence is lawfully imposed.  Do you

20   understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  An attorney's legal knowledge and

23   experience may be useful in filing appeals and in seeking

24   release on bail pending an appeal.  Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Do you have any questions about

2    these potential advantages of having an attorney with regard

3    to that stage of the proceedings?

4          THE DEFENDANT:  No.

5          THE COURT:  Now, I'm going to list for you as

6    best I can dangers and disadvantages of self representation.

7    And let me say to you before I start this section, that a

8    long time ago when I was a young lawyer I heard a judge

9    talking to an attorney who was charged criminally, and he

10   said to this attorney in advising him how important it was,

11   even though he had legal training, to have a different

12   attorney represent him on the criminal charges that he had

13   pending against him is because a person gets emotionally

14   involved when you're charged with something, when these

15   accusations are made, and it's hard to very difficult, even

16   if you have legal training, to separate that emotion of your

17   personal involvement with what you have to do as a

18   professional and as an attorney in understanding the law and

19   making clear judgments about what the appropriate thing to

20   do.  And the judge looked at this attorney and said, only a

21   fool wouldn't have an attorney represent him, and you would

22   have a fool for a client if you tried to represent yourself.

23   And I thought that was incredibly good advice, and I'm trying

24   to make a point to you here as I go through this list of

25   dangers and disadvantages.

1                 You would be proceeding alone in a complex

2       area where experience and professional training are greatly

3       desired.  Do you understand that?

4                 THE DEFENDANT:  Yes.

5                 THE COURT:  A lawyer might be aware of

6       possible defenses to charges against you that you may not

7       understand or appreciate.  Do you understand that?

8                 THE DEFENDANT:  Yes.

9                 THE COURT:  You will not get any special

10      treatment from this Court just because you are representing

11      yourself.  Do you understand that?

12                THE DEFENDANT:  Yes.

13                THE COURT:  You will not be entitled to a

14      continuance simply because you wish to represent yourself.

15      Do you understand that?

16                THE DEFENDANT:  Yes.

17                THE COURT:  You will also be limited to the

18      legal resources that are available to you while you're in

19      custody which puts you at an incredible disadvantage.  You

20      will not be entitled to any additional library privileges

21      just because you are representing yourself, and a lawyer has

22      fewer restrictions in researching your defense, obviously.

23      Do you understand that?

24                THE DEFENDANT:  Yes.

25                THE COURT:  And you are not required to

1    possess the legal knowledge or skills of an attorney in order

2    to represent yourself; however, you will be required to abide

3    by the rules of criminal law, the rules of this courtroom

4    procedure.  And these laws took lawyers years to learn and

5    abide by.  And if you demonstrate an unwillingness to abide

6    by these rules, I may terminate your self representation.  Do

7    you understand that?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  In other words, you don't know

10   these rules, and if you're fumbling around and you can't

11   follow them and you're impeding the progress of the trial,

12   then I may terminate your ability to represent yourself.

13                    If you are disruptive in the courtroom, I can

14   terminate your self representation and have you removed from

15   the courtroom, in which case the trial would continue without

16   your presence.  Do you understand that?

17                    THE DEFENDANT:  Yes.

18                    THE COURT:  Your access to an Assistant United

19   States Attorney who is prosecuting this case will be severely

20   reduced as compared to a lawyer who could easily contact the

21   Assistant U.S. Attorney and discuss this case with them and

22   request certain information, which would be very difficult

23   for you to do.  Do you understand that?

24                    THE DEFENDANT:  Yes.

25                    THE COURT:  In addition, the government will

not go easier on or give you any special treatment because
you are representing yourself.  The government will present
its case against you as experienced lawyers and will provide
you no special consideration as a result of you representing
yourself.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And finally, if you are convicted,
you cannot claim on appeal that your own lack of legal
knowledge or skill constitutes a basis for a new trial.  In
other words, you cannot claim that you received ineffective
assistance of counsel based on your own representation.  Do
you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Can I answer any questions for
you?

THE DEFENDANT:  How am I not entitled to a law
library or anything like that?

THE COURT:  You're not entitled to any greater
access than you already have just because you're representing
yourself.

THE DEFENDANT:  County, all I'm entitled to is
county?

THE COURT:  All you're entitled to is what's
there and what they have for you.

THE DEFENDANT:  Whatever.

1              THE COURT:  Again, Mr. Jenkins, nobody can

2    tell me or you right now what the outcome of this case is

3    going to be, but it is critically important that you have

4    appropriate legal representation to help you through this.

5    And I'm going to ask you again, and I'll give you an

6    opportunity at this point to have your parents come and sit

7    at that back table and for you to discuss this with them.

8    But I'm urging you, sir, to go ahead and get a lawyer.  And

9    again I've indicated if you have difficulty in finding one,

10   which you've indicated that you have, I will send lawyers to

11   see you, a couple more.  If you didn't like the two that went

12   to see you, they're both very good and qualified attorneys to

13   discuss this with, but you got to listen to them and work

14   with them, and I'm sure they'll listen to you.  And they can

15   explain to you reasons why or why not you can get certain

16   discovery, may be able to assist you as a party to this case

17   that you're concerned about in Canada in getting certain

18   things because you are a party or you were a party to that

19   case.  So, again, it's critically important that you have

20   some legal counsel.

21              Would you like your parents to come sit at

22   that table so that you can talk to them?

23              THE DEFENDANT:  All right.

24              THE COURT:  Folks, come on up, sit at that

25   back table.  I'm going to have your son turn around and talk

1   to you across that back table.  Go ahead, Mr. Jenkins, turn

2   your chair around, slide it up to that table so you can talk

3   to your parents.

4               (Discussion held off the record.)

5               THE COURT:  Mr. Jenkins, I think you

6   completely understand how strongly I feel and believe how

7   important it is for your best interest to be represented by

8   an attorney.  And you've had an opportunity to consider this

9   and talk with your parents.  How do you want to proceed, sir?

10               THE DEFENDANT:  I will proceed by myself for

11   the time being.

12               THE COURT:  Okay.  Well, then what I'm going

13   to do, Mr. Jenkins, is I'm going to appoint stand-by trial

14   counsel, which means I'm going to appoint counsel, and he or

15   she will be available to you if you have questions in the

16   course of the proceedings, because what we're going to do

17   right now is we're going to talk about the discovery

18   obligations of the government.  I'm going to hear from the

19   government as to what they provided and I'll hear from you as

20   to what you think is still outstanding and then we're going

21   to schedule a trial date.  This matter needs to be tried.  As

22   you've indicated, it's an old case and it needs to be moved

23   forward.

24               All these motions and appeals to the Second

25   Circuit and dismissing your one counsel and the rest of it

1   has taken a considerable amount of time away from getting

2   this matter resolved, so we're going to proceed and we're

3   going to get it resolved.  And I will appoint stand-by trial

4   counsel for you.  But you need to understand that it will be

5   your responsibility for the organization and the content of

6   presenting your case and you will have the entire

7   responsibility for your own defense.  This attorney will be

8   made available to answer questions as we proceed to trial,

9   they'll be in the courtroom so that I know that there is

10  someone you can consult with, so if you're not doing things

11  appropriately or properly, you'll have someone to ask a

12  question how am I supposed to proceed in this manner and do

13  this or do that.  But you're responsible for your own defense

14  and the entire content and presentation of that defense.

15  This attorney is just there to consult you.  You understand

16  that?

17              THE DEFENDANT:  Yes.

18              THE COURT:  And you're sure that this is what

19  you want to do?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Okay, sir.  Then that's what we're

22  going to do.

23              Ms. Carroll, with regard to the discovery, you

24  provided some information to the Court, a letter, and I'm

25  assuming you provided a copy of that to Mr. Jenkins.

1    Anything that you would like to indicate with regard to your

2    discovery responsibilities and what you've done to this

3    point?

4              MS. CARROLL:  Your Honor, before the hearing

5    began today, the government did, as you indicated, give a

6    Bates stamped copy of all the disclosures that have been made

7    to date, including three additional disclosures pursuant to

8    the defendant's request.  Those additional disclosures

9    include records of the defendant's border crossing activity,

10   a map of Lansdowne, Ontario, and a summary of a forensic

11   examination not conducted by any United States official, but

12   a summary that was created in connection with the Canadian

13   investigation that was produced by a Canadian law enforcement

14   agent.

15             Those are the only additional documents that

16   have been included in this discovery.  The only omissions

17   from this discovery are financial records that have been

18   previously disclosed to the defendant but that are not

19   pertinent to the present prosecution.

20             The government would just again reiterate on

21   the record that it has given two opportunities to the

22   defendant for the defendant to make an in-person review of

23   the government's discovery disclosures.  That first meeting

24   was March 15, 2012.  At that meeting Jeff Parry was present.

25   At that point he was representing the defendant.  The

defendant essentially shut down during that meeting and refused to review discovery.  The government then extended a second offer to the defendant to make an in-person review of the government's discovery.  That offer was made in July.  At that point the meeting was schedule, Jeff Parry was present at the meeting, and the defendant refused to come out of his cell.

So, the government has made extensive efforts to present all the discovery it has available and under which it has an obligation to disclose.  The only disclosures that the defendant has not yet received are those that are pursuant to the Jencks Act, which the government does not have a present obligation to disclose.  Should the material that the government has in its possession that is covered by Jencks, should the government be under that obligation at the time of trial, it will make those disclosures.  The government has reviewed exhaustively all the inventory discovery it has given and provided a Bates stamped inventory to the defendant today, and it has prepared that inventory and has provided it to the Court if the Court decides it is necessary.  It is a more exhaustive inventory than the one that is currently on file with the court, and the government is happy to provide any additional documentation that the Court thinks is necessary or the government is obligated to disclose.

1          THE COURT:  Why don't you provide me with a

2  new copy of what you provided to Mr. Jenkins today so I have

3  them, because we're going to go to trial in a very short

4  period of time with regard to this case.  And I want to make

5  sure that Mr. Jenkins gets his Speedy Trial.  Anything else?

6          MS. CARROLL:  No.

7          THE COURT:  Mr. Jenkins, do you want to be

8  heard?

9          THE DEFENDANT:  I don't want to take the time

10  to go through all that right at this second.

11          THE COURT:  Doesn't sound like there is much

12  new there anyway, most of it has already been provided to

13  you.

14          THE DEFENDANT:  I want to refer to my

15  April 28th letter request for discovery.  I believe it was

16  sent twice.  The Canadian forensic reports are turned over,

17  should have been called a C4P disclosure package, and it

18  should have had category reports, XML files, and a final

19  report.  I want to make sure I have those.

20          THE COURT:  Ms. Carroll, I'm going to let you

21  respond to each one of those, okay.

22          MS. CARROLL:  And so Mr. Jenkins is aware, he

23  should have received or maybe has not yet gotten its way

24  through the prison mail system, but the government has gone

25  through that April 28th letter and identified each of the

1    categories he seeks disclosure of and has responded to them.

2    But the C4P disclosure packet, I'm going to read from the

3    government's previous response to Mr. Jenkins:  As the above

4    inventory indicates, the government has previously disclosed

5    all warrant documentation and forensic examinations conducted

6    by the Canadians that are currently in its possession.  Those

7    disclosures were made on October 21, 2011, and again further

8    Canadian documents were disclosed on July 23rd, 2012.  To the

9    extent the defendant seeks any items from the Canadian

10   investigation that are not currently in the possession of the

11   government, the government maintains that it has no

12   obligation to seek disclosure or to obtain possession of

13   documents that are produced or created by people who are not

14   members of the prosecution team.  The Canadian investigation,

15   the Canadian prosecution was completely discrete and separate

16   from the present prosecution, and so the government has

17   actually exceeded its discovery obligations obtaining the

18   forensic examination conducted by the Canadians.

19              THE COURT:  Mr. Jenkins.

20              THE DEFENDANT:  First of all, anything that

21   was turned over to Mr. Parry was irrelevant because Mr. Parry

22   didn't share things with me.

23              THE COURT:  Well, Mr. Jenkins, Mr. Parry,

24   while he was representing you, I have no idea what he

25   obtained for you and what he didn't obtain for you, but what

1   I'm going to do, I'm going to have my clerk contact him today

2   and indicate if he has anything in his possession that he

3   obtained through discovery demands or otherwise through his

4   efforts in representing you, that it be sent to you

5   immediately in the jail and we'll get that done.

6              THE DEFENDANT:  I have as part of the original

7   Canadian paperwork, again I can't really go through that

8   right now, but are the category reports in here?

9              THE COURT:  Again, she's just answered your

10  question, Mr. Jenkins.  Any reports that they have in their

11  control that they're responsible for she's indicated they've

12  turned over.  Whether that report is there or not, I don't

13  know, and that may matter to you, you check it.  If it's not

14  there, that means they as officers of this court have

15  indicated to me they don't have possession or control over.

16  Okay?  That's what that means.  And they don't have any

17  obligation to seek it out from the Canadian government.

18             THE DEFENDANT:  Well, it said the Canadian

19  forensic reports were turned over to DHS the day after the

20  warrant was for my arrest.

21             THE COURT:  Again, if they have it, they have

22  a responsibility to give it to you, and she's indicated that

23  they've done that.

24             THE DEFENDANT:  But I have a list of what it

25  was supposed to be.  So, I mean, I just don't want to get

1    back there and not have it and have to have this discussion

2    again.

3                THE COURT:  Mr. Jenkins, understand something.

4    We're not going to have this discussion again.  We're going

5    through this to make sure that you have the discovery

6    materials and you understand that what the government has

7    represented that they have, they've turned over to you.

8    Okay?  And if there is some discovery violation where they

9    have something and they haven't turned it over, I'll deal

10   with that at trial.  But at this point they have indicated

11   that everything they have in their control with regard to

12   that Canadian investigation, they've given to you.  That's

13   their representation.  Okay?  So, if something's not there,

14   they're telling you they don't have it.

15               THE DEFENDANT:  All right.

16               THE COURT:  And they're telling me that as

17   well.

18               THE DEFENDANT:  And the DHS, the analysis

19   files, do we have those?

20               THE COURT:  Ms. Carroll?

21               MS. CARROLL:  Your Honor, as the government

22   indicated in its filing on May 27th, there have been two

23   forensic analyses conducted in connection with this

24   investigation.  The forensic examination reports have been

25   disclosed to the defendant, both the first report and the

1    second supplemental report.

2                    THE DEFENDANT:  That was insufficient.

3                    THE COURT:  Mr. Jenkins, you've got your

4    answer, sir.  You may feel it's insufficient, but I'm telling

5    them and they know what their discovery obligations are and

6    what they represented both on paper and in court here today

7    is sufficient.  So go ahead, what's your next issue?

8                    THE DEFENDANT:  Well, it says -- it says in

9    the back under examination of the report that analysis files

10   and spread sheets are available and will be kept at the

11   Buffalo ICE, DHS, whatever, that's what I need.

12                   THE COURT:  Ms. Carroll, are you aware of

13   these items?

14                   MS. CARROLL:  Any analysis files or spread

15   sheets that would contain digital images, Your Honor, the

16   government is not able to disclose.  The government will

17   certainly inquire further if there is any supporting

18   documentation connected with these reports.  The government

19   has so inquired.  It's the government's view that anything

20   that is connected to the reports the government has.  We will

21   ask again and if it turns out that there are spread sheets

22   that the government is not aware of now, we will certainly

23   disclose those to the defendant.  But as of now, everything

24   that has been turned over to the government, everything that

25   was created by the government, the government is in

1  possession of.

2            THE COURT:  I'm going to ask you to make one

3  more call or inquiry of DHS in Buffalo, and see if you don't

4  already have it and hasn't already been provided, do they

5  have it.

6            MS. CARROLL:  We will do that, Your Honor.

7            THE COURT:  Thank you.  What else,

8  Mr. Jenkins?  And please understand that we're going to

9  schedule a trial date here very shortly.

10            THE DEFENDANT:  A list of people that were

11  interviewed when I was investigated by DHS.

12            THE COURT:  Counsel, has that been provided?

13            MS. CARROLL:  Your Honor, all the DHS reports

14  of activity in this case have been turned over to the

15  defendant.  The DHS reports should detail any investigative

16  steps taken.

17            THE COURT:  What else?

18            THE DEFENDANT:  She said the border crossing

19  records were there.

20            THE COURT:  She indicated earlier those are

21  there.  That's new information that's been obtained and it's

22  been provided to you.

23            THE DEFENDANT:  And I need the transcripts

24  from the court proceedings.

25            THE COURT:  Counsel, do you care to respond?

1               MS. CARROLL:  Your Honor, the government will

2    in all likelihood will have to invoke a mutual legal

3    assistance treaty in order to obtain those transcripts.  The

4    government is doing its best to see about the transcripts.

5    It's the government's understanding that the defendant's

6    parents have already obtained those transcripts, which the

7    government learned when its agents attempted to contact the

8    Canadian court to obtain the transcripts.  It's the

9    government's position those are public records.  The

10   defendant is, in fact, in a better position to obtain those

11   transcripts because he was a party to the Canadian action.

12              And last, but not least, the government

13   actually has no obligation whatsoever to invoke a legal

14   assistance treaty to obtain those transcripts.  With that

15   said, the government is doing its best and if the government

16   is able to get the transcripts, it will do so.

17              THE COURT:  Mr. Jenkins, do you hear that

18   response?

19              THE DEFENDANT:  Yes.

20              THE COURT:  And specifically before you look

21   back to your parents, at least your father was shaking his

22   head no, that he didn't have any transcripts, but you can ask

23   them about that.  But please understand what I was indicating

24   earlier, that some of these things in the Canadian

25   proceeding, that you may be able to obtain them easier,

1    that's specifically what I was talking about.  I saw that

2    request.  The government isn't under an obligation to get

3    those transcripts for you.

4                    THE DEFENDANT:  Well, the government went up

5    there and got what they wanted, the forms and whatever else.

6    I mean, I wouldn't think it would be a big deal to call.

7                    THE COURT:  She's indicated it is kind of a

8    big deal and they've asked, and they may get them and they

9    may not get them.  But you're just as capable of getting

10   those documents, probably more capable because you are a

11   party at requesting those transcripts, and the government has

12   no obligation to jump through the hoops and ask for and pay

13   for transcripts that you want.  So, if they're public

14   documents in Canada that are part of a proceeding that you

15   were part of, go ahead and request them and get them.

16                    THE DEFENDANT:  Okay.  And as a matter of

17   evidence missing, physical evidence missing.  When is the

18   government going to have all of these items together?

19                    THE COURT:  I don't know what you're referring

20   to.  Ms. Carroll?

21                    THE DEFENDANT:  The Canadians seized 15 items,

22   they only provided six or seven.

23                    MS. CARROLL:  Your Honor, the government has

24   previously disclosed on multiple occasions all of the

25   evidence receipts and inventory receipts and property

1    receipts, all of those reflect any items that were retained

2    by the Canadians.  It's the government's understanding that

3    anything obtained by the Canadians was probably retained

4    because it contained contraband.

5                    The inventory list reflected two of the items.

6    I believe it's a wireless card and a USB port were actually

7    turned back over to the defendant.  But anything the

8    government has, the government has disclosed the existence

9    of.

10                   THE COURT:  Mr. Jenkins, did you hear that

11   response?

12                   THE DEFENDANT:  Yes.  It's not acceptable.

13                   THE COURT:  Well, it's acceptable to the

14   Court.  They're not responsible for things they don't have

15   possession of.  They have possession of it, they've indicated

16   that it's been turned over or it's available to you, that's

17   the situation.

18                   THE DEFENDANT:  Well, they seized 15 items.

19                   THE COURT:  Who seized 15 items?

20                   THE DEFENDANT:  The Canadians.

21                   THE COURT:  And did you just hear her response

22   about what they have control of and what's available to you?

23   Did you hear that response?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  Okay.  I know you don't like the

1    response, but it's sufficient with regard to their discovery

2    responsibilities in this court.

3                    THE DEFENDANT:  Well, I mean, it seems like if

4    you want to take over the Canadian's case, you should provide

5    all the evidence and the background on the case.  I mean, I

6    don't get where they can just pick and choose what they want

7    to use out of the original proceedings.

8                    THE COURT:  Mr. Jenkins, they have a

9    responsibility, discovery responsibility for things that they

10   have control over.  If there are other things that the

11   Canadians may have custody and control of, you can go ahead

12   and try and get it yourself.

13                   THE DEFENDANT:  They seized them and I've

14   never seen them.  I haven't gotten anything back.

15                   THE COURT:  Well, sir, you've gotten your

16   response and you've gotten a ruling from this Court with

17   regard to this.  As far as this Court's concerned at this

18   point in time, unless I get different information, the

19   government has complied with their discovery obligations to

20   you, sir, in this area.  So, what's your next question?

21                   THE DEFENDANT:  So, we're going to take this

22   up on appeal, I take it?

23                   THE COURT:  You can take anything up on appeal

24   you would like, sir.

25                   THE DEFENDANT:  I'm asking for all of the

1    evidence to be provided from the Canadian proceedings.

2                    THE COURT:  Again, you have the answer of the

3    government and a ruling from this Court that they have

4    fulfilled their discovery obligation with regard to evidence

5    that they have custody and control over.  End of story.

6    What's next?

7                    THE DEFENDANT:  I guess that's it.

8                    THE COURT:  Okay, sir.  Now we're going to

9    talk about a trial date.  What's the date that we have

10   proposed here?

11                   THE CLERK:  July 8th.

12                   THE COURT:  I'm going to set a July 8th trial

13   date.  The final pretrial conference is going to be scheduled

14   for July 1st at 11 a.m. here in this courtroom.  Pretrial

15   submissions are due on June 17th, 2013.  So, any pretrial

16   submissions that you want, Mr. Jenkins, they need to be

17   submitted to this Court by June 17th, 2013.

18                   You will be advised of -- the Court will find

19   and you will be advised of stand-by counsel for trial

20   purposes.  They will be here on the first day of trial, which

21   is scheduled for July 8th.  Anything further from the

22   government?

23                   MS. CARROLL:  Your Honor, the only thing is

24   that one of the government witnesses is eight months pregnant

25   and she may or may not be in a position to travel on

1  July 1st.  She's just not exactly sure what her position will

2  be, but the government will keep the Court apprised if

3  anything changes and if she will for any reason be

4  unavailable for trial.

5                    THE COURT:  How critical is this witness?  Who

6  is it?

7                    MS. CARROLL:  She's one of the Canadian

8  investigators who performed the initial interview.

9                    THE COURT:  Okay.  Keep me apprised if there

10  is something that we need to do to adjust, we'll try and do

11  that.  But as of right now we have a firm trial date of

12  July 8th, final pretrial July 1st at 11 a.m., pretrial

13  submissions due on June 17th, 2013.

14                    Mr. Jenkins, any questions or anything

15  further?

16                    THE DEFENDANT:  No.

17                    THE COURT:  Okay, sir.  We'll see you on

18  July 1st.

19                    THE CLERK:  Court is adjourned.

20                         *              *              *

21

22

23

24

25

C E R T I F I C A T I O N


            I, EILEEN MCDONOUGH, RPR, CRR, Official Court

Reporter in and for the United States District Court,

Northern District of New York, DO HEREBY CERTIFY that I

attended the foregoing proceedings, took stenographic notes

of the same, and that the foregoing is a true and correct

transcript thereof.

_____

EILEEN MCDONOUGH, RPR, CRR
Official U.S. Court Reporter