UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                          5:11-CR-0602
                                                                              (GTS)
JOSEPH VINCENT JENKINS,

                        Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

HON. RICHARD S. HARTUNIAN                        TAMARA THOMSON, ESQ.
  United States Attorney for the N.D.N.Y.            GWENDOLYN CARROLL, ESQ.
  Counsel for the Government                            GEOFFREY J.L. BROWN, ESQ.
100 South Clinton Street                                        Assistant United States Attorneys
Syracuse, NY 13261-7198

JOSEPH VINCENT JENKINS
  Defendant, *Pro Se*
Cayuga County Jail
7445 County House Road
Auburn, NY 13021

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

On August 5, 2013, and August 6, 2013, Joseph Vincent Jenkins ("Defendant") filed a "status report" and a "status update" (respectively) in the above-captioned action. (Dkt. Nos. 96, 98.) Those submissions, when considered in the context of Defendant's other conduct and statements in this proceeding, have led the Court to reasonably believe that Defendant may be suffering from a mental disease or defect that renders him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. As a result, the Court concludes that both a competency examination and hearing are appropriate.


I.     **RELEVANT BACKGROUND**

Because this Decision and Order is intended primarily for the review of the parties, the Court will assume the reader's familiarity with the prior appearances, motions, orders and hearings in this proceeding. The Court will merely highlight two hearings that have recently occurred in this action.

On May 29, 2013, the Court held a hearing in this action pursuant to *Faretta v. California*, 422 U.S. 806 (1975), in order to assure itself that Defendant's waiver of his right to counsel is being made knowingly and voluntarily. (Text Minute Entry filed May 29, 2013; Dkt. No. 87 [Official Transcript of *Faretta* Hearing].) At that hearing, the Court (reluctantly) agreed to permit Defendant to defend himself at trial *pro se*; however, it appointed Defendant stand-by counsel for purposes of answering Defendant's questions at trial. (*Id.*)

Moreover, on June 13, 2013, the Court held a hearing to discuss Defendant's *pro se* status and motion for a continuance of the trial date. (Text Minute Entry filed June 13, 2013.) At that hearing, the Court granted Defendant's motion for a continuance, but strongly advised Defendant to locate an attorney immediately, which advice Defendant indicated he would follow. (*Id.*) As a result, the Court directed the Clerk of the Court to (1) provide Defendant with a list of CJA attorneys and (2) contact one attorney in particular (Bill Sullivan) to see if he would go meet with Defendant again. (*Id.*)[1] Moreover, the Court directed Defendant to provide the Court with a status report by July 15, 2013, if he had not been able to find an attorney by that time. (*Id.*) Defendant's status report of August 5, 2013, was in response to that directive. (Dkt. No. 96.)

---

[1] The Clerk's Office provided that list of CJA attorneys to Defendant on June 14, 2013. (Dkt. No. 85.)

## II. GOVERNING LEGAL STANDARD

Section 4241 of Title 18 of the United States Code provides, in pertinent part, that, "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, . . . [t]he court shall . . . order . . . a hearing [to determine the mental competency of the defendant] on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).

Section 4241 of Title 18 of the United States Code further provides, in pertinent part, that, "[p]rior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, . . . ."  18 U.S.C. § 4241(b).

## III. ANALYSIS

### A. Whether Defendant Is Able to Understand the Nature and Consequences of the Proceedings Against Him

In his status report of August 5, 2013, Defendant characterized the prosecution against him as consisting of "games," "nonsense," and "foolishness," and the evidence against him as "phoney computer exams" and "phoney police statements."  (Dkt. No. 96.)

In his status update of August 6, 2013, Defendant characterized the prosecutors and government agents in this proceeding as "scheming idiots," "scheming monkeys" and "clowns" who are "freaking stupid."  (Dkt. No. 98.)

Similarly, in a prior motion for an independent review of the current case (filed on July 12, 2013), Defendant characterized the charges against him as "phony," and the proceeding itself as an "amat[e]ur[] puppet show."  (Dkt. No. 92, at 4.)  He asserted that the government agents

3

are "vigilante[s]," and that the prosecutors are "fools." (*Id*. at 7.) He asserted that the government has "illegally obtained . . . evidence," "conceal[ed] foreign acquired paperwork," "manufacture[d] . . . phony computer exams," has "schem[ed] and conspir[ed] with . . .the Ontario Provincial Police," and is "claim[ing] false jurisdiction" over him. (*Id*. at 1, 5.) He asserted that both the government and the Court are afflicted with "some sort of blind eye syndrome combined with selective hearing," and that they are "setting up some sort of prearranged puppet show." (*Id*. at 1, 3.)

During his *Faretta* hearing, Defendant stated that he has "a lot of questions [about] how [the charges] ended up in the United States . . . ." (Dkt. No. 87, at 12.) More specifically, Defendant indicated that he believes his best defense is premised, in large part, on his argument that "the [United States] government [improperly] jumped into the middle of a Canadian proceeding and [improperly] took evidence," including an "[in]complete forensic exam [of] the computer." (*Id*. at 7.) Defendant indicated that he believes that, if he can prove this fact, the fact will compel a verdict in his favor (despite the fact that the events giving rise to this prosecution apparently occurred on the border between Canada and the United States, the fact that Defendant apparently left Canada jurisdiction during the proceeding there, the fact that Canadian authorities may have cooperated with United States authorities, and the fact that United States authorities may have conducted one or more subsequent forensic examinations of Defendant's electronic devices).

Based on all of these facts–as well as an assessment of Defendant's demeanor during appearances in Court, and the nature of the nine *pro se* motions he has filed thus far in this proceeding (*see, infra*, Part II of this Decision and Order)–the Court finds that there is reasonable cause to believe that Defendant is unable to fully appreciate the serious and legitimate nature of the proceedings against him, and that this inability may be caused by a mental disease or defect.

### B.     Whether Defendant Is Able to Assist Properly in His Own Defense

Over the course of this proceeding, Defendant has filed nine motions *pro se*. (Dkt. Nos. 57, 60, 65, 67, 74, 76, 86, 92, 93.)  Almost all of these motions–which were in many ways redundant and/or premised on the above-described defense–were denied as without cause and/or as frivolous.  (Dkt. Nos. 68, 77, 84, 99.)  Moreover, these motions have had the effect of delaying the trial in this action, a fact of which Defendant has complained.  In this way, Defendant has exhibited an inability to effectively represent himself.

Moreover, during his *Faretta* hearing, Defendant stated that, if he retains an attorney, he wants that attorney to assert the above-described defense (i.e., that "the [United States] government [improperly] jumped into the middle of a Canadian proceeding and took evidence," including an "[in]complete forensic exam [of] the computer").  (Dkt. No. 87, at 7.)  The problem, he stated, is that "I can't find a lawyer that wants to do what I want them to do. . . . It just hasn't worked out with an attorney so far."  (*Id*. at 5.)  (The Court notes that, at that point in this proceeding, Defendant had had the opportunity to speak to at least three attorneys regarding his defense: Jeffrey Parry, Michael Spano, and William Sullivan.  *See generally* Docket Sheet.)

Granted, at a subsequent hearing (prompted by a problem posed by Defendant's *pro se* status), Defendant indicated he would follow the Court's advice to locate an attorney immediately.  (Text Minute Entry filed June 13, 2013.)  However, approximately two to three weeks later (at the end of June or the beginning of July), the undersigned's Courtroom Deputy was informed, by an attorney who had again gone to visit Defendant in jail (William Sullivan), that the attorney had been informed by a guard that Defendant would not come meet him because he was going to "take a shower."

5

Moreover, in his status report of August 5, 2013, Defendant informed the Court that "I have not found an attorney and have stopped looking for one. . . . I will fight my own battles." (Dkt. No. 96.)  Simply stated, Defendant has demonstrated such an unreasonable adherence to a defense theory, and/or denial of his current circumstances, as to render him unable to consult with an attorney.

Based on all of these facts, the Court finds that there is reasonable cause to believe that Defendant is unable to assist properly in his own defense, and that this inability may be caused by a mental disease or defect.  As a result, the Court concludes that both a competency examination and hearing are appropriate.

**ACCORDINGLY**, it is

**ORDERED** that Defendant is committed to the custody of the United States Attorney General for a psychiatric or psychological examination to determine Defendant's current mental competency **pursuant to 18 U.S.C. §§ 4241 and 4247**;[2] and it is further

**ORDERED** that, unless impracticable, the examination shall be conducted at a suitable facility closest to the Court; and it is further

**ORDERED** that, unless an extension is requested and granted, the commitment of such custody shall be for a reasonable period not to exceed **THIRTY (30) DAYS**; and it is further

**ORDERED** that the any law enforcement officials having custody of Defendant during the time period in question, including but not limited to the Cayuga County Jail, New York State

---

[2]  **The Court requests that, upon the completion of the psychiatric or psychological examination, the examiner prepare and submit to the Court a psychiatric or psychological report in accordance with 18 U.S.C. § 4247(c), providing copies of the report to Government counsel and Defendant, whose names and addresses are listed on the first page of this Order.**

Department of Correctional Services, United States Marshall Service, and/or Federal Bureau of Prisons shall take any steps necessary to make Defendant available for the psychiatric or psychological examination; and it is further

    **ORDERED** that the Clerk of the Court shall serve a copy of this Order on Government counsel, and Defendant.

Dated: August 7, 2013
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge