# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

*****************************************

**UNITED STATES OF AMERICA**

  **v.**

                                    **Criminal Action Number:**
                                    **5:11-CR-00602(GTS)**

**JOSEPH JENKINS,**

    **Defendant.**

---

## TRIAL MEMORANDUM OF THE UNITED STATES

Respectfully submitted,

Dated: January 13, 2014

        RICHARD S. HARTUNIAN
        United States Attorney

    By:   /s/
        Tamara B. Thomson
        Assistant U.S. Attorney
        Bar Roll No. 515310

    By:   /s/
        Gwendolyn Carroll
        Assistant U.S. Attorney
        Bar Roll No. 515777

## I.  STATEMENT OF THE CASE

A.     Jury selection is scheduled to commence at the discretion of United States District Judge

        Glenn T. Suddaby, in Syracuse on February 3, 2014.

B.     Defendant is detained without bail.

C.     A jury trial has not been waived.

D.     The estimated duration of trial is approximately three (3) to four (4) days.

E.     The two-count Indictment charges the defendant with one count of transportation of child

        pornography in violation of Title 18, United States Code, Section 2252A(a)(1), and one

        count of possession of child pornography in violation of Title 18, United States Code,

        Section 2252A(a)(5)(B).   Additionally, the indictment contains a forfeiture allegation

        pursuant to Title 18, United States Code, Section 2428.

## II.  STATEMENT OF FACTS

On May 24, 2009, at approximately 8:50 a.m., Canada Border Services Agency (CBSA)

encountered JOSEPH JENKINS as he applied for admission into Canada at the Port of

Lansdowne, Ontario, Canada from Wellesley Island, New York, in Jefferson County.   JENKINS

was the sole occupant of a 2003 Dodge Ram pickup truck bearing New York license plate

19322JL, which was determined to be registered in his name through checks with the New York

State Department of Motor Vehicles.   The truck was pulling a flat-bed trailer with two ATV's.

CBSA Officers that encountered JENKINS found him to appear nervous and noticed that

he avoided eye contact.   JENKINS was directed to a checkpoint area.   Officers noted that he

appeared apprehensive and noted that he gave evasive answers about his reason for traveling to

Canada.   JENKINS was directed to immigration for a criminal check.   During the criminal

check, the CBSA Officer asked JENKINS his travel plans and asked JENKINS if he had ever

been arrested, charged and/or convicted of an offense.  JENKINS advised that he was travelling to visit his parents, stated he was a self-employed electrician, and indicated that he had never been arrested, charged or convicted of an offense.[1]

JENKINS was deferred for secondary inspection based upon his nervous demeanor, evasive answers, and failure to make eye contact.  Officers suspected that JENKINS was entering Canada with intentions to stay longer than he stated.  JENKINS stated he was the owner of the pickup truck, that he was aware of the contents of the vehicle, and that he packed the vehicle himself.  An inspection of Jenkins truck was conducted.  CBSA Officer Jarret Johnston located a Toshiba Laptop bearing the Serial Number: 78175808W in a box located on the right rear passenger seat.  Officer Johnston asked JENKINS if the laptop was new, and JENKINS stated he had been using the laptop for over a year and that he carried it in the original box as he didn't possess a carrying case.  JENKINS indicated the computer was for personal use.

Officer Johnston opened the Toshiba computer and noticed a file shortcut on the computer desktop.  Id.  When he accessed the file, Officer Johnston observed an image of what appeared to a young female in the nude.  Officer Johnston also observed another video of two young females displaying sexually suggestive behavior and containing nudity.

CBSA Officers also discovered a Compaq laptop, Serial Number: CNF3362GPN; one (1) PNY Attaché 8GB USB thumb drive; one (1) PNY Attaché 4GB USB thumb drive; one (1) PNY Attaché 2GB USB thumb drive; six (6) compact discs; one (1) Belkin Notebook card, Serial Number: 408242909; one (1) Olympus Digital Camera and XD Card, Serial Number: MXD163K57106SSX30421MAD; and one (1) Motorola Cellular phone.   The laptops and

---

[1] At the time, the Officer was unable to check his criminal history as the computer system was down for two hours.  When the system was running again, the record check revealed that Jenkins was convicted of Aggravated Harassment in the second Degree.

electronic media were taken inside.  JENKINS asked the officers his laptops were taken inside. The officers asked JENKINS if he had child pornography on his laptops and JENKINS stated "not to his knowledge" and "I don't think so."  JENKINS was asked if he ever downloaded child pornography onto his laptops or computer devices and he replied "ah, no, I don't think so."

A CBSA Officer examined the PNY Attaché 8GB USB thumb drive and found a video titled: 9yo_vicky_stripping_and_sucking_kiddy_pedo_illegal_underage_preteen.  The video was 01:39 minutes in length and depicted a young prepubescent girl in a tank top and skirt with black stockings that went mid-thigh.  The video depicts the girl removing all of her clothing except for her stockings and then approaching the cameraman and performing oral sex; the video was child pornography.  JENKINS was arrested for possession of Child Pornography, a violation of the criminal code of Canada.  Several other videos of child pornography were observed by an Investigator with the CBSA Criminal Investigation Division that were stored on the PNY Attaché 8GB thumb drive; each of the videos depicted child pornography.

On May 27, 2009, Detective Constable Kip Wohlert of the Ontario Provincial Police's Child Sexual Exploitation Section applied for and was issued a warrant authorizing a search of the aforementioned Toshiba Laptop, Compaq laptop, PNY Attaché 8GB thumb drive, PNY Attaché 4GB thumb drive, PNY Attaché 2GB thumb drive, Olympus Digital Camera, and Verizon Motorola cell phone under the authority of the Province of Ontario, Canada.  Following Wohlert's discovery of additional images of child pornography on the above-listed digital media, JENKINS was charged under the Canadian criminal code with Importing-Distributing Child Pornography and Possession of Child Pornography.  On October, 18, 2010, JENKINS failed to appear for trial in Canada on those charges and a bench warrant was issued for his arrest.

On or about October 21, 2010, Detective Constable Kip Wohlert provided a Homeland Security Investigations (HSI) Special Agent with police and forensic reports associated with the investigation of JENKINS by Ontario Provincial Police.  These reports received by Special Agent Meyer included image files discovered on the Toshiba laptop and PNY Attaché thumb drives that were seized from JENKINS and searched by the Ontario Provincial Police pursuant to the aforementioned search warrant.  Detective Constable Kip Wohlert also advised Special Agent Meyer that a video of child pornography was found in dead space on the Compaq laptop seized from JENKINS.

On April 1, 2011, the Toshiba laptop, Compaq laptop, PNY Attaché 8GB thumb drive, PNY Attaché 4GB thumb drive, PNY Attaché 2GB thumb drive, Olympus Digital Camera and Verizon Motorola cell phone were transferred to the custody of Homeland Security Investigations.  On July 6, 2011, the Honorable George H. Lowe, U.S. Magistrate Judge for the Northern District of New York, signed a search warrant authorizing a search of the aforementioned Toshiba laptop, Compaq laptop, PNY Attaché 8GB thumb drive, PNY Attaché 4GB thumb drive, PNY Attaché 2GB thumb drive, Olympus Digital Camera and XD card, and Verizon Motorola cell phone that had been seized from JENKINS upon his application for admission into Canada from Jefferson County on May 24, 2009.  These items were transferred to HSI Computer Forensic Agent Brian Braisted for forensic analysis.  Agent Braisted examined the electronic media and located approximately 3,881 image and 109 multimedia files of suspected child pornography that were stored on the Toshiba laptop, PNY Attaché 8GB thumb drive and PNY Attaché 4GB thumb drive.  Additionally, Agent Braisted found that the Toshiba laptop had the user account "SID 1003- Joe."  Among other things, Agent Braisted found:

- 3 multimedia files containing child pornography in a folder ("New Folder (2)") located on the desktop of user account "Joe."

- 594 graphic files of child pornography in the system volume information, (which is a hidden system folder containing system restore files, indicating that these files were cached).

- the program CCLeaner, which is used to clean and eliminate file history, internet activity, and other residual data normally maintained by the operating system.

-evidence of thumb drive use

-internet history artifacts showing that the following websites were accessed: http://anonib.com/teensnorules; www.czech-teens.com/ and http://gb.bbs.ws/book.php?book=lolasex.

Agent Braisted examined the Compaq laptop computer and found files with names suggesting child pornography content had previously resided on the computer, but the data was found in unallocated space with no file attributes. The hard drive contained the CCLeaner program that was also found on the Toshiba laptop. The 8-GB thumb drive contained 96 multimedia files and 15 graphic files of child pornography. The 4-GB thumb drive contained 10 multimedia files and 3,250 image files of child pornography. An additional 16 graphic files were located that depicted sadistic or masochistic sexual acts on children. Moreover, a text document was located which was a request for a password to access an Internet site "letitbit.net" which is a members only file hosting site. The top of the text document contained the phrase "LOLITA HOUSE XXX," and a file name referenced in the document, "Sasha_S3" is the file name of a child pornography multimedia file that was found on the 8-GB thumb drive. No evidence of child pornography was located on the 2-GB thumb drive or the Olympus digital camera. Agent Braisted was unable to extract data from the Motorola phone.

On October 6, 2011, following a detention hearing, JENKINS was ordered to the custody

of the United States Marshals pending trial.  On December 21, 2011, a federal grand jury

returned an indictment charging JOSEPH JENKINS with one count of Transporting Child

Pornography and one count of Possession of Child Pornography.

On March 6, 2012, at 9:14 a.m., while in custody at the Cayuga County Jail, JENKINS

made a telephone call to his parents, George and Bonita Jenkins.  The call was recorded and the

following admonishment preceded the call:  "[t]his call may be recorded or monitored."  During

the recorded telephone call, JENKINS, while talking to his mother, stated the following:

| | |
|---|---|
| JENKINS: | The attorney stopped last night. |
| MOTHER: | Oh he did. |
| JENKINS: | So you don't have to call him tomorrow. |
| MOTHER: | Okay, I was going to call him today.  What did he have to offer, anything? |
| JENKINS: | Well he, good news. |
| MOTHER: | Yeah? |
| JENKINS: | Well he thinks. |
| MOTHER: | Okay. |
| JENKINS: | Their case isn't, um. Well, I, I've been telling people all along and nobody chooses to believe me for some reason. |
| MOTHER: | Wait a minute honey, I can't hear yah. |
| JENKINS: | I can't talk any louder so. |
| MOTHER: | Okay, let me just go in the other room and I'll close the door.  I can't hear a thing.  Okay, go ahead. |
| JENKINS: | Um, I, I've been telling people all along that there wasn't 3,800 pictures, it was more like 100. |
| MOTHER: | Yeah. |
| JENKINS: | And nobody chose to believe me. |
| MOTHER: | Okay. |
| JENKINS: | Between five and a hundred.  He doesn't know yet. |
| MOTHER: | You mean they've had the expert there? |
| JENKINS: | He's working on getting the expert.  But that, but that, stupid bitch the prosecutor there she doesn't, she was just grandstanding running her mouth.  There's no where's near that amount of stuff. |
| MOTHER: | Okay. |

## III.    STATEMENT OF THE LAW

**A.    The Substantive Offenses:  Transportation of Child Pornography, Count One**

Count one of the Indictment charge the defendant with transporting child pornography in violation of 18 U.S.C. §2252A(a)(1) and 2256(8)(A).  This section provides, in relevant part, as follows:  [a]ny person who knowingly...transports ...using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography… shall be punished as provided in subsection (b).

In order to convict the defendant of the charge of transportation of child pornography, for count one, the government is required to prove beyond a reasonable doubt the following elements: (1) that on or about May 24, 2009, the defendant knowingly transported a visual depiction; (2) that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce; (3) that the visual depiction was child pornography; (4) that the defendant knew of the sexually explicit nature of the material and that the visual depiction was of an actual minor engaged in sexually explicit conduct.

**B.      The Substantive Offenses: Possession of Child Pornography, Count Two**

Count two of the Indictment charges the defendant with possessing child pornography in violation of 18 U.S.C. §2252A(a)(5)(B) and 2256(8)(A).  This section provides, in relevant part, as follows: [a]ny person who ... knowingly possesses or accesses with intent to view any book, magazine, periodical, file, videotape, computer disk, or any material that contains an image or child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

In order to convict the defendant of the charge of possession of child pornography, for count two, the government is required to prove as beyond a reasonable doubt the following elements: (1) that the defendant knowingly possessed a visual depiction; (2) that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce; (3) that the visual depiction was child pornography and (4) that the defendant knew of the sexually explicit nature of the material and that the visual depiction was of an actual minor engaged in that sexually explicit conduct.

## C.        **Relevant law – Real Minors**

The government has to prove that the child depicted on an image is a real child for such image to constitute child pornography under 18 U.S.C. §2256(8)(A).  To do so, the government will introduce specific image and video files of child pornography that the defendant received and possessed.  The government may also offer extrinsic evidence as to whether children in the image and video files are real children.  However, the jury may make that determination based solely on the images and videos themselves.  This is a question for the jury, and the government is not required to present this evidence in the form of expert testimony.  The jury may rely on other evidence in this case that the defendant knowingly possessed one or more visual depictions of an actual minor engaged in sexual activity.  *See* United States v. Riccardi, 405 F.3d 852 (10th Cir. 2005)(an expert witness is not necessary to establish that the people in the images are minors); United States v. Irving, 432 F.3d 401 (2d Cir. 2005) (no additional evidence beyond video file itself required, but holding limited to cases involving video files); United States v. Becht, 403 F.3d 541, 549 50 (8th Cir. 2005)("We have held that a jury may find that images depict real children based only on a review of the images themselves.... And as the Supreme

Court itself observed in Free Speech Coalition, the hypothesis that virtual images are indistinguishable from real ones is 'somewhat implausible' because '[i]f virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes'"); United States v. Sims, 428 F.3d 945, 956 (10th Cir. 2005)("[O]ur cases since Free Speech Coalition have consistently held that juries can review the images themselves to determine whether real children are depicted"); United States v. Slanina, 359 F.3d 356, 357 (5th Cir. 2005)("the Government was not required to present any additional evidence or expert testimony to meets its burden of proof to show that the images downloaded by Slanina depicted real children, and not virtual children"); United States v. Farrelly, 389 F.3d 649 (6th Cir. 2004)(jury had access to images and could decide whether children depicted in images were real); United States v. Destio, 153 Fed. Appx. 888, 892 93 (3d Cir. 2005)(proving the images involve actual children "may be done by a view of the images themselves, or by non-expert testimony")(unpublished); United States v. Deaton, 328 F.3d 649 (6th Cir. 2004)(jury can determine whether children in pornography are real).

**D.      Relevant law – Interstate and Foreign Nexus**

Each count of the Indictment contain and interstate or foreign nexus element.  In assessing whether the government has satisfied the interstate or foreign commerce element, the jury may consider whether the child pornography or the material used to transport or possess the child pornography, at any time, traveled or moved between any state and another state, or between any country and another country.  The defendant does not have to know that the image traveled in interstate or foreign commerce.  *See* United States v. Gendron, 18 F.3d 955 (1st Cir. 1994)(due process did not require the government to prove that defendant had actual knowledge

of jurisdictional element, i.e., that defendant knew photos or materials used to produce photos had been transported in interstate commerce).

The government may also prove the interstate commerce element by establishing that the materials used to transport or possess the child pornography traveled in interstate or foreign commerce.  For example, the government could prove this element by establishing that the computer and electronic media used to transport and possess the child pornography was manufactured outside of New York State.  *See* United States v. Holston, 343 F.3d 83, 88 91 (2d Cir. 2005).  The jury may consider any manufacturer's markings on the evidence associated with the receipt and possession of the images.  Additionally, it is not necessary for the images of child pornography to have been stored on the computer when such materials traveled in interstate or foreign commerce. [2]  In United States v. Guagliardo, 278 F.3d 868 (9th Cir. 2002), the Court held that an image file copied to a computer disk which was manufactured abroad satisfied the jurisdiction nexus "produced using materials" for possession.  *See also* United States v. Harris, 358 F.3d 221, 222 (2d Cir. 2004)(using materials that moved in interstate commerce to satisfy the interstate element was a permissible exercise of Congress's authority under the commerce clause); and United States v. Holston, 343 F.3d 83 (2d Cir. 2003).

It is sufficient to prove that the images or videos were transported using a means and facility of interstate or foreign commerce, or that they actually had been transported in such commerce.  Here, the Toshiba Laptop and the electronic media were actually transported in foreign commerce, from the United States to Canada.  Moreover, the media on which JENKINS possessed the child pornography was not manufactured in New York, meeting this requirement. The Government will produce the original evidence and display its inscriptions that prove that

---

[2] In the instant matter the images and videos of child pornography were stored on the laptop and two thumb drives when such materials traveled in foreign commerce.

the materials necessarily moved in interstate and foreign commerce.  Fed. R. Evid. 902(7) (Inscriptions, signs, tags and labels which indicate workmanship, control or origin are self-authenticating.) *See also* United States v. Fox, 357 Fed. App'x. 64, 65 (9th Cir. 2009).

Moreover, a manufacturer's point of origin label is not hearsay. [3]  United States v. Alvarez, 972 F.2d 1000, 1004 (9th Cir. 1991).  This was put into practice in a child pornography case where the defendant had been charged with possession of child pornography that was produced using materials that had moved in interstate or foreign commerce.  The government proposed to satisfy the interstate nexus by introducing the computer hard drive on which the child pornography images were found.  The hard drive bore a trade inscription that read "Product of Malaysia," and the court found that the trade inscription was self-authenticating under F.R.Evid. 902(7).  It agreed with Alvarez that the trade inscription was merely a mechanical trace, and therefore shouldn't be precluded as hearsay. This was particularly true, the court held, where "[t]he inscription of origin is required by law and should be highly reliable." United States v. Brown, 2009 WL 2090193 (S.D.Ind. 2009).

## F.    Display of Child Pornography

The government has selected examples of image and video files received and possessed by the defendant relative to each count of the indictment.  It is our intention to publish the images, and short excerpts of the video files to the jury during trial to illustrate certain evidentiary issues.

---

[3]  And even if it were, it would be admissible under Fed. Rule Evid. 807, permitting hearsay evidence when (1) the statement has equivalent circumstantial guarantees of trustworthiness, (2) it is offered on a material fact (3) it is more probative on the point than any other evidence one could obtain through reasonable effort and (4) admitting it will best serve the purposes of the rules and the interests of justice.

The government intends to introduce into evidence each original piece of seized electronic evidence and storage media, and has created separate CDs containing each of the selected sample clips.  We will separately introduce these CDs into evidence before displaying them.  Even were the defendant to stipulate to the nature of these files (which he has not), the government "is entitled to prove its case free from any defendant's option to stipulate the evidence away."  Old Chief v. United States, 519 U.S. 172, 189 (1997).

The probative value of the child pornography exhibits is not substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.  Various appellate courts have consistently held that the government is entitled to introduce evidence and publish to the jury child pornography images.

In United State v. Swell, 457 F.3d. 841 (9th Cir. 2006), the Ninth Circuit overturned a ruling that prevented the government from showing a jury images of child pornography. The Ninth Circuit found that the "probative value of images… allegedly depicting child pornography was not outweighed by the danger of unfair prejudice," under Fed.R.Evid. 403, finding that the "defendant's objection to evidence based on unfair prejudice…generally cannot prevail over the government's choice to offer evidence showing guilt and all the circumstances surrounding the offense." *See also*, United States v. Polouizzi, 564 F.3d 142 (2nd Cir. 2009)(defendant's motion for new trial granted on other grounds); United States v. McCourt, 468 F.3d 1088, 1091 (8th Cir. 2006); United States v. Dodds, 347 F.3d 893 (11th Cir. 2003); United States v. Campos, 221 F.3d 1143 (10th Circ. 2000). *But see*, United States v. Cunningham, 694 F. 3d 372 (3d. Cir.)(reversed conviction due to introduction of child pornography images over defendant's objection when trial court did not view the images prior to conducting Fed. R. Evid. 403 balancing test).

### G.      Forfeiture

The indictment contains a forfeiture allegation.  Should the jury convict the defendant of the substantive offense, the government will be seeking to forfeit defendant's Toshiba laptop, serial number 78175808W, PNY Attache 8GB USB thumb drive, and PNY Attache 4GB USB thumb drive under 18 U.S.C. § 2253(a)(3).  Property forfeitable under that section includes any property, real or personal, that was used or intended to be used to commit or promote the commission of the offense alleged in the indictment.

Rule 32.2 sets forth the procedures governing criminal forfeiture.  After the jury returns a verdict of guilty on the substantive criminal count, the forfeiture determination generally is made by the court, not the jury.  *See* Fed. R. Crim. P. 32.2(b)(1)(A). Under Rule 32.2(b)(4), either party can request a jury determination as to whether the government has established "the requisite nexus between the property and the offense committed by the defendant." To invoke this right, the defendant must make his election known to the court prior to the time the jury begins its deliberation regarding the defendant's guilt or innocence.  Fed. R. Crim. P. 32.2(b)(5)(A). If the defendant fails to make a timely request to have the jury retained, his right to do so is waived.  *See* United States v. Nichols, 429 Fed. Appx. 355, 356 (4th Cir. 2011) (per curiam) ("although a defendant has a right to have a jury decide a forfeiture issue, the defendant must affirmatively assert that right," citing Fed. R. Crim. P. 32.2(b)(5)).

It is no longer necessary for the jury to determine the extent of the defendant's interest in the property – that issue is left for the ancillary proceedings.  Fed. R. Crim. P. 32.2, Advisory Committee Notes.  It is the duty of the jury solely to determine whether the government has established the requisite nexus between the property subject to forfeiture and the offense for which the defendant was found guilty. The government's burden is to establish the forfeitability

of the property by a preponderance of the evidence.  *See* United States v. Martin, 662 F.3d 301,

307 (4th Cir. 2011) ("the government must establish a nexus between the property for which it is

seeking forfeiture and the crime by a preponderance of the evidence"); United States v. Bellomo,

176 F.3d 580, 595 (2d Cir. 1999) (because forfeiture is part of sentencing, and fact-finding at

sentencing is established by a preponderance of the evidence, the preponderance standard applies

to criminal forfeiture); *see also* United States v. Gaskin, 354 F.3d 438, 461-62 (2d Cir. 2004)

(following Bellomo).

 Under this approach, the jury must answer questions in a special verdict form which will

allow the court to make the appropriate finding.  *See* United States v. Amend, 791 F.2d 1120,

1128 (4th Cir. 1986) (affirming the method by which the jury determined forfeitability; the jury

answered questions whether property was acquired through the criminal enterprise, but trial court

entered the order of forfeiture); United States v. L'Hoste, 609 F.2d 796, 813-14 (5th Cir. 1980)

(forfeiture order is mandatory once jury determines essential factual issues required for

forfeiture).  The government submitted a proposed special verdict form for the Court's

convenience.

 Under this approach, where the jury resolves the factual elements necessary for a

forfeiture order to be entered but the court enters the order, the jury is not advised of the

ramifications of its decision – just as a jury is not advised of the ramifications of a verdict of

guilt or innocence.  Thus, bifurcated proceedings are required.  The factual determination may be

based on evidence already in the record and on any additional evidence or information submitted

by the parties.  Fed. R. Crim. P. 32.2(b)(1)(B).  The Rules of Evidence do not apply in the

forfeiture phase of the trial.  *See* United States v. Ali, 619 F.3d 713, 720 (7th Cir. 2010) (because

forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase

of the trial; the evidence need only be "reliable"); <u>United States v. Capoccia</u>, 503 F.3d 103, 109

(2d Cir. 2007) (Rule 32.2(b)(1) allows the court to consider "evidence or information," making it

clear that the court may consider hearsay; this is consistent with forfeiture being part of the

sentencing process where hearsay is admissible). However, given the fact that all the evidence

necessary for the jury to determine whether or not the property is forfeitable will be introduced in

the government's case-in-chief; there should be no need to put on additional testimony in the

bifurcated forfeiture proceedings.  A limited amount of argument may be necessary.

   If either party desires jury findings on the issue of forfeiture, supplemental instructions

will become necessary.  The government submitted supplemental requested jury instructions on

the issue of forfeiture determinations in a separate pleading.

## IV.  EVIDENTIARY ISSUES

**A.      Audio Recordings and Transcripts**

   The government will offer into evidence a portion of an audio recording of a conversation

that occurred on March 6, 2012, at 9:14 a.m., while the defendant was in custody at the Cayuga

County Jail.  The call was recorded and the government intends to present the call, along with a

transcript of the call, to the jury.  The portion of the call the government intends to introduce,

transcribed in fuller detail *supra,* is relevant to his possession and transportation of child

pornography.  The government does not intend to admit the entire call; instead, the government

intends to narrowly admit only the relevant portions and exclude any reference to defendant's

counsel or a defense expert, and to remove any unnecessary inflammatory remarks made by the

defendant that could potentially be overly-prejudicial to the defendant.  Specifically the

government will not admit references to a defense expert as the defendant has made no expert

disclosure to date (and the government expects the defendant will be proceeding to trial without

an expert); references to a defense attorney; and the defendant's use of profanity, describing the prosecutor as a "stupid bitch."  The portion of the call the government intends to play, and provide an accompanying transcript for, is as follows:

| | |
|---|---|
| JENKINS: | Their case isn't, um. Well, I, I've been telling people all along and nobody chooses to believe me for some reason. |
| MOTHER: | Wait a minute honey, I can't hear yah. |
| JENKINS: | I can't talk any louder so. |
| MOTHER: | Okay, let me just go in the other room and I'll close the door.  I can't hear a thing. Okay, go ahead. |
| JENKINS: | Um, I, I've been telling people all along that there wasn't 3,800 pictures, it was more like 100. |
| MOTHER: | Yeah. |
| JENKINS: | And nobody chose to believe me. |
| MOTHER: | Okay. |
| JENKINS: | Between five and a hundred. |

The recorded telephone conversation of the defendant is not hearsay and is admissible as a party-opponent admission under Federal Rule of Evidence 801(d)(2).  *See e.g.* United States v. Meskini, 319 F.3d 88, 93 (2d Cir. 2003); United States v. Inserra, 34 F.3d 83, 93 (2d Cir. 1994)

It is not necessary to have either the operator of the tape recorder, or a witness to the conversation testify where other evidence supports a finding of accuracy.  *See* United States v. Fuentes, 563 F.2d 527, 532 (2d Cir.), cert. denied, 434 U.S. 959, 98 S. Ct. 491, 54 L. Ed. 2d 320 (1977).  The existence of the recordings themselves shows that the machine was capable of picking up sounds, United States v. Moss, 591 F.2d 428, 433 (8th Cir. 1979), and that the operator was competent.  *See* United States v. Bright, 630 F.2d 819 (5th Cir. 1980).  A consensual recording is admissible without calling the informant who participated in it.  As the Second Circuit noted in United States v. Barone: "[t]he government is not required to call as a witness a participant in a recorded conversation in order to authenticate the recording; it may lay the foundation for the recording through the testimony of the technician who actually made it."

*See also* United States v. Fuentes, 563 F.2d 527, 532 (2d Cir.), cert. denied, 434 U.S. 959, 98 S. Ct. 491, 54 L. Ed. 2d 320 (1977).

The government does not have to prove a chain of custody for the admissibility of audio recordings.  In United States v. Steinberg, 551 F.2d 510, 515 (2d Cir. 1977), the Second Circuit ruled that there is no chain of custody requirement for audio recordings:  "[a]ppellant Steinberg urges that the government should have been required to prove the chain of possession of the tape recordings from the time they were made to the time of trial.  No statute or court rule imposes such a burden on the government, and the testimony of [the agent] as to the authenticity and accuracy of the tapes laid a sufficient foundation for their admission."  *See also*, United States v. Amrep Corp., 560 F.2d 539 (2d Cir. 1977).

The use of transcripts to accompany a recording has been specifically approved of by the Second Circuit.  *See* United States v. Carson, 464 F.2d 424 (2d Cir. 1972); United States v. Chiarizio, 525 F.2d 289 (2d Cir. 1975).  The need to identify the speakers is a reason why the jury should be permitted to read a transcript of an audio recording.  United States v. Slake, 627 F.2d 293 (D.C. Cir. 1980).  It is permissible for the jury to have the transcripts of conversations during deliberations.  *See* United States v. Koska, 443 F.2d 1167 (2d Cir. 1971); United States v. Carson, supra.

In United States v. Chiarizio, supra, the court stated that "[i]n cases where the defense and prosecution disagree as to the contents of the tape, the proper procedure is for the jury to receive transcripts of both sides' versions."  525 F.2d at 293.  If the jury so requests, it is within the discretion of the trial judge to permit the jury to rehear the tapes and to utilize the transcripts while the tapes are being replayed during deliberation.  *See* United States v. Alfonso, 552 F.2d

605 (5th Cir. 1977); United States v. Turner, *supra*; United States v. Cioffi, 493 F.2d 1111 (2d Cir. 1974).

The recorded conversation of the defendant is admissible and relevant.  The telephone call establishes that the defendant knowingly possessed and transported the computer and thumb drives, with knowledge that images of child pornography were on the electronic media.  Its probative value exceeds the prejudicial effect, especially with the relevant portions being carefully reduced to only the most relevant passages[4].  The passage is the most probative evidence of the defendant's knowledge that images of child pornography were located on his electronic media.  While he disputes the number of images, he implicitly admits that there were images on the media.  His first statement is that there "wasn't 3,800 pictures, it was more like 100."  His second statement is that there were "between five and a hundred" images.  Even the defendant's disagreement with the number of pictures on his electronic media is probative and relevant.  As noted above, the Toshiba laptop and the Compaq laptop had the CCLeaner program installed, which is file wiping software designed to eliminate the file history, internet activity, and residual data that would be normally maintained by the computer's operating system.  The defendant's confidence about the number of images on the computer is based upon his knowledge that the wiping software is installed.  Any prejudice to the defendant is outweighed by the probative value, and has been limited by only admitting the narrow passages suggested.

---

[4]  The rule of completeness, set forth in Federal Rule of Evidence 106 is applicable where one party seeks to introduce a misleadingly tailored snippet of a statement that creates a misleading impression by being taken out of context.  It is entirely proper, however, to admit segments of a statement without including everything, and adverse parties are not entitled to offer additional statements just because they are there and the proponent has not offered them.  *See* United States v. Collicott, 92 F.3d 973, 983 (9th Cir 1996).  Fed. R. Evid. 106 does not render admissible evidence which is otherwise inadmissible under the hearsay rules.  Id.  The portion proposed excludes the extraneous references to counsel and experts and excludes inflammatory remarks made by the defendant; it does not create a misleading impression of the context of the conversation.

The government respectfully requests a pre-trial ruling on this issue.

## B.    Expert Testimony

The government will call to testify Special Agent Brian Braisted from Homeland Security Investigations (formerly Immigrations and Customs Enforcement).   Specifically, he will testify regarding his forensic analysis of the defendant's two laptop computers, three thumb drives, his camera and phone.   The government has provided the defendant with a curriculum vitae for SA Braisted.

The government has previously provided notice to the defendant that the government considers Special Agent Braisted an expert witness and intends to call him as an expert to testify regarding the forensic examination of the electronic media recovered from the defendant.

Rule 702 of the Federal Rules of Evidence states that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A trial judge has broad discretion to admit or excuse expert testimony under this Rule. United States v. Aminy, 15 F.3d 258, 261 (2d Cir. 1994); United States v. Tutino, 883 F.2d 1125, 1134 (2d Cir. 1989); United States v. Diaz, 878 F.2d 608, 616 (2d Cir. 1989).  A judge's determination to admit such evidence will be overturned only if "manifestly erroneous" or an "abuse of discretion."  General Electric Co. v. Joiner, 522 U. S. 136, 142 (1997); United States v. Tutino, 883 F.2d at 1134; United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985).

## C.    Chain of Custody

An uninterrupted chain of custody is not a prerequisite to admissibility of an exhibit. United States v. Olson, 846 F.2d 1103, 1116 (7th Cir. 1988).  "Gaps in the chain go to the weight of the evidence, not its admissibility".  *Id.  See also,* United States v. Hon, 904 F.2d 803, 809-810 (2d Cir. 1990); United States v. Roberson, 897 F.2d 1092, 1096, reh'g denied, 907 F.2d 1145 (11th Cir. 1990) (en banc); United States v. Castro, 889 F.2d 562, 568-569 (5th Cir. 1989); and United States v. Lott, 854 F.2d 244, 250 (7th Cir. 1988).  "If the trial judge is satisfied that in reasonable probability the evidence has not been altered in any material respect, he may permit its introduction".  United States v. Olson, 846 F.2d at 1116, (quoting United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980)).

Federal Rule of Evidence 901(a) provides that: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.  Proof of the connection of an exhibit to the defendant may be made by circumstantial evidence. United States v. Mendel, 746 F.2d 155, 167 (2d Cir. 1984); United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir. 1982); United States v. Natale, 526 F.2d 1160, 1173 (2d Cir. 1975). *See United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir. 1983).  "[T]he prosecution need only prove a rational basis from which to conclude that the exhibit did in fact belong to the [defendant]."  United States v. Mendel, 746 F.2d at 167; United States v. Natale, 526 F.2d at 1173.  "The ultimate question is whether the authentication testimony is sufficiently complete so as to convince the court of the improbability that the original item had been exchanged with another or otherwise tampered with."  United States v. Mendel, 746 F.2d at 167; United States v. Howard-Arias, 679 F.2d at 366; United States v. Grant, 967 F.2d 81, 83 (2d Cir. 1992).

**D.     Evidence of Internet History, Data Found in Unallocated Space on the Compaq Laptop, and a Text Document Located on the 4GB PNY Thumb Drive**

The government plans to introduce evidence that during the forensic examination of the computer, internet artifacts establish that the following websites were accessed using the Toshiba Laptop:  http://anonib.com/teensnorules; www.czech-teens.com/ and http://gb.bbs.ws/book.php?book=lolasex.   The forensic examiner will provide testimony of his knowledge of the term "lolasex" as a term used to search for child pornography, and that the person accessing the website http://gb.bbs.ws/book.php?book=lolasex from the Toshiba laptop was searching for child pornography content.  This evidence is relevant and intrinsic to the charged offenses, and is therefore admissible under Federal Rule of Evidence 402 as it diminishes any proposed defense of innocent possession.

The government plans to introduce evidence that during the forensic examination of the Compaq laptop computer and the Toshiba laptop computer the program CCLeaner, a file-wiping software program, was installed.  Further, the government intends to introduce testimony through Special Agent Braisted that the searches of child pornography terms "pthc" [5] and "preteen" returned evidence that files with names suggesting child pornography had previously resided on the computer.  The data regarding the searches was found in unallocated space, with no file attributes.  Again, this evidence is relevant and intrinsic to the charged offenses, and is therefore admissible, as it diminishes any proposed defense of innocent possession.

Finally, the government plans to introduce evidence that a text document was found on the 4 GB thumb drive that appeared to be a request for a password to access an internet site titled "letitbit.net."  The site appears to be a members-only file hosting site which allows a user to upload and exchange files for free.  The top of the text document contains the phrase "LOLITA

---

[5] The acronym "pthc" stands for preteen hard core and is a term commonly used to search for child pornography.

HOUSE XXX," and a file name referenced in the document ("Sasha_S3") is the file name of a multimedia file found on the 8 GB thumb drive.

**E.      Summary Charts Are Admissible At Trial**

Federal Rule of Evidence 1006 authorizes the presentation of charts or summaries of voluminous writings which cannot conveniently be examined in court.  In this case the government may introduce charts which summarize significant forensic findings from the examination of the defendant's electronic media, which will be established through testimony and evidence during the trial.  Such summary charts would be properly admitted at trial.  *See, e.g.,* Fagiola v. National Gypsum Co., 906 F.2d 53, 57 (2d Cir. 1990) (admission of summaries of records avoids forcing jury to examine voluminous underlying documentation); United States v. Goldberg, 401 F.2d 644, 647 (2d Cir. 1968), cert. denied, 393 U.S. 1099, 394 U.S. 932 (1969)(upheld admission of charts summarizing voluminous business records and testimony of government witnesses); United States v. Williams, 952 F.2d 1504, 1518-1519 (6th Cir. 1991) (charts compiling information from telephone records, surveillance, and tape recordings of conversations between the defendant and others to create a chronology of significant events were admissible, in the discretion of the trial court).

Pursuant to Rule 1006, the government has or will produce the records which are summarized in the charts to defense counsel before trial and will produce these documents in court, at the Court's request.  The summary charts may be admitted into evidence without the admission of the underlying documents.   Herman v. Davis Acoustical Corp., 21 F.Supp.2d 130, 135 (N.D.N.Y. 1998); U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp., 95 F.3d 153, 163 (2d Cir. 1996)(summaries may admitted into evidence without the original documents on which the summaries are based).  The summaries are properly

authenticated by a showing that they fairly represent and summarize the evidence on which they are based.

## F.      Business Records: FRE 803(6)

At trial, the government intends to offer in our case-in-chief the New York State Department of Motor Vehicles Abstract of Registration report.  This exhibit is listed on the government's exhibit list and has been disclosed to the defendant.  The government submits that this exhibit is admissible pursuant to Federal Rules of Evidence sections 803(6) and 803(8) because they are public records and reports of regularly conducted activity.  Further, the exhibit is accompanied by a written declaration of the custodian of records, (or other qualified persons,) certifying that the records comply with Rules 803 (6) and 902(11).

## G.      Evidence of Flight as Consciousness of Guilt

On October, 18, 2010, JENKINS failed to appear for trial in Canada and a bench warrant was issued for his arrest.  The government intends to introduce testimony in its case-in-chief that the defendant failed to appear for his trial and that a bench warrant was issued for his arrest.

Evidence of flight is admissible as relevant pursuant to Fed.R.Evid. 402, both to provide context for the events giving rise to the criminal charges and as evidence of consciousness of guilt.  In the present case, the defendant's failure to appear in connection with the Canadian criminal charges arising from his alleged possession of child pornography is an essential component of the investigation in the United States.  The present case was referred for domestic prosecution only after the defendant fled from Canada and failed to appear in Ontario Superior Court.  In order to explain the relationship between the Canadian investigation, which began at a border checkpoint, and the investigation giving rise to the present prosecution, the government must present evidence of the defendant's flight from Canada, which resulted in the referral of the

case to the United States.   Evidence of the defendant's non-appearance is also relevant to establish his consciousness of his guilt, provided that the government establishes a sufficient factual predicate to support this inference. [6]   Moreover, an appropriately worded jury instruction can cure any unfair prejudice that may be caused by the admission of evidence of non-appearance or flight.

## V. <u>CONCLUSION</u>

The government respectfully submits this trial memorandum, and reserves its right to submit further briefing as may become necessary.

---

[6] The defendant filed a motion to suppress evidence of the defendant's flight and the bench warrant issued in Canada.  *See* Dkt. 41, page 5-7.   The government responded in opposition. *See* Dkt. 47, page 3-9.  The government relies upon its previous filing that establishes that the evidence of defendant's flight from Canada is admissible as probative evidence of consciousness of guilt and to provide context for the criminal investigation by the United States.  *Id.*