UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                          5:11-CR-602

JOSEPH VINCENT JENKINS,

                         Defendant.
-------------------------------------------x

         Transcript of a Final Pretrial Conference

held on January 21, 2014, at the James Hanley

Federal Building, 100 South Clinton Street,

Syracuse, New York, the HONORABLE GLENN T. SUDDABY,

United States District Judge, Presiding.


                    A P P E A R A N C E S

For The Government: UNITED STATES ATTORNEY'S OFFICE
                    P.O. Box 7198
                    100 South Clinton Street
                    Syracuse, New York  13261-7198
                      BY:  TAMARA THOMSON, ESQ.
                           GWENDOLYN CARROLL, ESQ.


For Defendant:      AARON GOLDSMITH, ESQ.
(Via Telephone)     Attorney at Law
                    225 Broadway
                    Suite 715
                    New York, New York  10007




            *Jodi L. Hibbard, RPR, CSR, CRR*
         *Official United States Court Reporter*
                *100 South Clinton Street*
               *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1          (In Chambers, Mr. Goldsmith present via

2             telephone, 11:15 a.m.)

3          THE CLERK:  Mr. Goldstein -- Goldsmith, I'm sorry.

4          MR. GOLDSMITH:  That's okay.

5          THE CLERK:  I'm here with the Judge and Tamara

6    Thomson and the court reporter.

7          MS. THOMSON:  Hello.

8          MR. GOLDSMITH:  Good morning, everyone.

9          THE COURT:  Good morning, how are you today?

10         MR. GOLDSMITH:  Doing all right, got one of those

11   rare days where we got the snowstorm but I think you guys are

12   clear.

13         THE COURT:  Yeah, that's very rare, but trust me, I

14   think you'd rather be where you are based on the

15   temperatures.

16         MR. GOLDSMITH:  We're already at 20, we're supposed

17   to be at 10 the next few days.

18         THE COURT:  I was driving in this morning, my car

19   said 1.

20         MR. GOLDSMITH:  I think we'd all rather be in

21   Florida.

22         THE COURT:  Yeah.  Well, maybe we'll move this

23   case, what do you think?  All right, we'll move down there.

24   Okay.  I just have a list we need to go through, make sure

25   that we're all set to proceed with the trial in an

1      expeditious manner and we'll do that.  So the first thing I'd

2      like to cover, are there any outstanding discovery issues,

3      has all the documentation been exchanged, all that sort of

4      stuff?  I'll start with the prosecution and then we'll hear

5      from you, Mr. Goldsmith.

6              MS. THOMSON:  From our end, we're all set.  We were

7      asked to show the evidence to the defendant and we've offered

8      a couple different dates, I don't know where we stand with

9      that but the evidence is available for inspection and we're

10     ready to go.

11             THE COURT:  Okay.  Mr. Goldsmith?

12             MR. GOLDSMITH:  Yeah, that's correct, I've notified

13     that I just did want to see the originals and I think we'll

14     be able to arrange that certainly if not beforehand, then

15     I'll try to get up there, you know, during jury selection

16     just to take a quick preview, but I'm not concerned about

17     getting that done and I don't think it will be an impediment

18     in any way to our proceeding.

19             MS. THOMSON:  Just for clarification, and I asked

20     for this clarification in an e-mail, is it that you wish to

21     see, to view the original evidence or did you --

22             MR. GOLDSMITH:  Yeah.

23             MS. THOMSON:  Okay, so you wish to view it.  With

24     regard to looking at any of the electronic evidence, anything

25     that you want to look at is available for you but we would

4

1    work off of the image because we don't touch the original, we

2    work off of the image that was done.  So I just want to make

3    sure you understood that.

4              MR. GOLDSMITH:  Yeah, I do.

5              MS. THOMSON:  Okay, great.

6              THE COURT:  Very well.  Then the next thing we want

7    to talk about is the length of the trial and I'll start again

8    with the government as far as number of witnesses and what

9    you anticipate and, you know, length of time to put your case

10   in.

11             MS. THOMSON:  I don't believe there's going to be

12   any stipulations, so we will have a couple of extra

13   witnesses, they should be very brief, I think we're at about

14   17, tops.

15             THE COURT:  Seventeen witnesses.  And any experts

16   included in that?

17             MS. THOMSON:  We do have one expert that we've

18   given notice of, that is Brian Braisted, he's the American

19   agent who did the forensic examination of the computer.  I

20   will let the court know to the extent that it should become

21   an issue, Kip Wohlert is the Canadian forensic examiner for

22   this evidence, we have not noticed him as an expert because

23   we don't expect him to provide expert testimony.  His

24   testimony, his expertise would be as it relates to Canadian

25   law, he will testify about the actual examination that he

1    did, but we're not seeking any expert opinion from him.

2              THE COURT:  Okay.  So how many days do you

3    anticipate in your case?

4              MS. THOMSON:  I don't believe it will be more than

5    four.

6              THE COURT:  Four days.  Okay.  Mr. Goldsmith?

7              MR. GOLDSMITH:  Yeah, I have -- I've provided

8    notice of the two potential character witnesses I may have.

9    I have no expert witnesses, if the defendant chooses to

10   testify, I think even with character witnesses, if we decide

11   to use that, maybe half day.

12             THE COURT:  Half a day?  Okay, so we can get it

13   done in a week which is good.  Any issues with regard to --

14   we've already talked about the evidence being available.  Any

15   other issues with regard to exchange of documents, exhibits,

16   diagrams, anything like that that we need to be concerned

17   with?

18             MS. THOMSON:  Nothing.

19             THE COURT:  Nothing, okay.  Mr. Goldsmith.

20             MR. GOLDSMITH:  The only thing that I have, your

21   Honor, is I requested by e-mail the government's witness list

22   because I wasn't able to access it by ECF.  That's not

23   necessarily an issue concerning discovery or documentation

24   but I would like to have it.

25             MS. THOMSON:  We can do that, that's no problem.

1              THE COURT:  Okay.  All right.

2              THE CLERK:  I can check why, he should have access

3      to that, too.

4              THE COURT:  Okay.  The next thing is stipulations

5      and I've just heard the government say they don't anticipate

6      any stipulations.  I would encourage such things as

7      foundation witnesses and it's a little, you know, I

8      appreciate the fact that it's a criminal case and, you know,

9      Mr. Jenkins may want to be trying to preserve as much of his

10     appellate rights as possible and put the government to their

11     task, but Mr. Goldsmith, wherever you can, and you have the

12     consent of your client, where you feel it's appropriate to

13     save us time when there's real, really no need that you see

14     to challenge foundational type issues, I encourage you to

15     talk with the government, the Assistant United States

16     Attorneys and see if there's any places where you think you

17     can save us some time.  But obviously that's up to you and

18     your client, but I do encourage you to take a look at that

19     stuff and see if there's anyplace that you can --

20             MR. GOLDSMITH:  Yes, your Honor, I'll certainly be

21     mindful of that.  Ms. Thomson and I have previously discussed

22     those issues relative to this case before, and while I

23     certainly want the court to understand that I appreciate the

24     judicial economy of making stipulations, I do so generally

25     when they're appropriate, I think in a case like this,

1  foundational witnesses relative to Mr. Jenkins and his

2  desires are probably not going to end up in a stipulation,

3  but I will of course keep an open dialogue with the

4  government as we progress throughout the case and see if we

5  can help along the duration.

6          THE COURT:  Understood.  And appreciate whatever

7  efforts you can do because it just, you know, saves us all

8  time if you know that there isn't really any real issue or

9  appropriate challenge to that type of evidence, it saves the

10 jury time, saves everybody time, so okay.  Any questions

11 about exhibits and how they should be marked and tabbed in a

12 binder, one for the court and one for the clerk, and, you

13 know, providing one to opposing counsel, that, that's

14 expected to be done and be delivered the day we start jury

15 selection.  Any issues with that?

16         MS. THOMSON:  The only issue, your Honor, is as

17 some of our exhibits involve child pornography, at the end of

18 the day we would just ask that the exhibits, you know, stay

19 with either the government or the court, so they don't leave

20 the courtroom.

21         THE COURT:  Okay.

22         MS. CARROLL:  I think the other thing, your Honor,

23 is that we're anticipating doing jury binders so that we

24 don't have to publish the images on the display screens so

25 we'll also have 14 binders for the jury.

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

8

1          THE COURT:  Okay.  Okay.  Well, just as long as

2  whatever you have prepared for the jury, as long as there's

3  an understanding that nothing will be displayed until they're

4  admitted and they should be available for review by defense

5  counsel prior to getting to that point in the trial when

6  you're anticipating that testimony, whether you do it the

7  first day, I know the first day can be very busy but, you

8  know, at the end of the first day or the second day, whenever

9  it is, before we get to that point, to make sure

10 Mr. Goldsmith has an opportunity to review those binders so

11 he has seen what will be provided to the jury or published to

12 the jury, okay?

13         MS. THOMSON:  Your Honor, we do have a couple of

14 videos and it's my understanding in other trials, the

15 equipment has been able to be set up so that the portion that

16 would normally be seen by the folks who are watching the

17 trial can be taken out and so we would darken the screens,

18 the attorney screens and darken the screen that the gallery

19 would see and so we will attempt to do the same for this

20 trial, coming up of course with a methodology for the

21 defendant to be able to, to view it but perhaps not at the

22 angle where those in the gallery can see the video.

23         THE COURT:  Okay.  And I anticipate that one of

24 your tech people are going to be working with you?

25         MS. THOMSON:  Yes.

1          THE COURT:  Mr. Kittleson?

2          MS. THOMSON:  We're anticipating Mr. Kittleson.

3          THE CLERK:  Because I have no idea how to do that.

4     I can block it out from the jury but I can't block it out

5     from the gallery.

6          THE COURT:  And Mr. Goldsmith, you know, obviously

7     we will make appropriate accommodations so that you and your

8     client can be viewing anything that is being shown to the

9     jury at any time, so we'll just -- I'll ask you to be, to

10    make yourself available and we'll seek your input on how

11    we're going to do that so we can make sure that you have

12    access without the public, anybody that might be attending

13    the trial viewing this material, okay?

14         MR. GOLDSMITH:  Very good, your Honor, and I'll

15    just take one step back to the jury binders, I have no

16    objection to a jury binder system, and I certainly appreciate

17    the government's request of the evidence not leaving the

18    court in the evening, but just as a means of preparation, if

19    needed, if I could find some opportunity, either U.S.

20    Attorney's office or in the court to be able to review any

21    evidence of the following day if I think I need to.

22         THE COURT:  Yeah, that's certainly a reasonable

23    request, and I'm sure that accommodation can be made.

24         MS. THOMSON:  It will be.

25         THE COURT:  You know, that's not an issue.

1          MR. GOLDSMITH:  Thank you.

2          THE COURT:  All right.  There's no evidence to

3   anticipate of prior convictions or anything like that?

4          MS. THOMSON:  The only thing that could come up is

5   the defendant when he went to the criminal check which would

6   be his first real checkpoint after driving through the lane,

7   he encountered Melany Boyd and Melany Boyd asked the

8   defendant if he had ever had any arrests, any convictions and

9   he indicated he did not.  The computer was down at that

10  point, and at some point a couple of hours later the computer

11  came back up and it did reveal that the defendant did have an

12  arrest for aggravated harassment in the second degree.  So

13  we're not going to attempt to elicit that specific fact, that

14  was a factor in their encounter with the defendant in

15  believing that he was being deceptive, so we'll be careful

16  about that, but that is a factor.

17         THE COURT:  Well, Mr. Goldsmith, you want to be

18  heard?

19         MR. GOLDSMITH:  Yes, your Honor.  I think it's

20  probably most reasonable that if, you know, in terms of

21  circumstances like this, it be treated like 404(b) material

22  or prior conviction, certainly would go to credibility, not

23  going to be able to argue that but I think it's probably

24  reasonable balance that the court preclude that information

25  unless Mr. Jenkins were to testify in which case then his

1   credibility would be an appropriate issue for the government

2   to explore.

3               THE COURT:  There's a number of different ways I

4   can handle it and it will depend on how the evidence is going

5   in, whether Mr. Jenkins decides to testify, whether you, as

6   you've indicated, you know, anticipate possibly calling some

7   character witnesses, all those things play in, obviously, but

8   certainly if there's any cross-examination or question about

9   why Mr. Jenkins may have been held for secondary or further

10  questioning, that kind of stuff, possibly not, you know, I

11  would do the balancing act and maybe limit what the arrest

12  was but the fact that he may have provided inaccurate

13  information regarding prior involvement with law enforcement,

14  you know, would be something that would be relevant, and I

15  may allow, or I would allow them to get into depending on how

16  this testimony comes out and what the cross-examination is.

17  So if, just so that everybody is advised of that and aware of

18  that, that's the way I would proceed and I'll hear you at the

19  time and I'll do what I believe is the appropriate balancing

20  that I'm required to do in this area.  Okay.

21              MR. GOLDSMITH:  Very well.

22              THE COURT:  All right.  Okay.  And everybody

23  understands the preparation of trial briefs, that they should

24  be prepared and provided.  Is there anything that the

25  government would like to address or any issues that you think

1    we need to address as far as the expeditious proceedings of

2    this trial and the way we're going to move through things?

3    Are there any issues that you see that we need to be aware of

4    or that we should address?

5          MS. THOMSON:  We pretty much spelled out the issues

6    as we see them in the trial brief.  One of the issues would

7    be the audio recording of the defendant in jail where he's

8    talking about the existence of child pornography on the media

9    being less than the government indicates so we intend to

10   introduce that evidence, we've put that in the trial brief.

11   We also intend to introduce evidence of the defendant's

12   internet history, data that was found in unallocated space on

13   the other computer that he's not charged with but it does

14   relate to child pornography, it's in our trial brief so we

15   tried to let the court know those issues.

16          We previously litigated flight as consciousness of

17   guilt as our intention to put into evidence the fact that he

18   didn't show up in Canada.  I think it helps the jury

19   understand why we're here and how the case came to be here.

20   And that was previously opposed and made the subject of

21   motion, I believe it was docket 41, I put it in my trial

22   brief, it is our intention to elicit that type of testimony.

23          THE COURT:  Okay, Mr. Goldsmith, you want to be

24   heard?

25          MR. GOLDSMITH:  Yes, your Honor.  I don't

1    particularly think that it's necessary for a narrative under

2    what sounds to be described as more of like a 404(b) or

3    background narrative application by the government, I don't

4    think that it is particularly probative on his possession or

5    trafficking of alleged child pornography which are the two

6    counts in the indictment.  If the government is confident in

7    the evidence that it has, I think that the discussion of a

8    Canadian -- of him allegedly evading Canadian authorities is

9    simply going to be more prejudicial than it's probative.  If

10   the government has its case, it can simply rest on the

11   evidence of him traveling at the border and what the

12   forensics they believe are going to show.  I think that any

13   evidence that they have discussing evasion is going to

14   lengthen the case unnecessarily as well.

15              THE COURT:  Well, I'm not going to anticipate what

16   that testimony may be other than what the government's

17   advised me but, you know, certainly these cases shouldn't be

18   and can't be tried in a vacuum where information such as this

19   is not highly prejudicial to the defendant and certainly

20   isn't going to be any secret that, you know, all, how this

21   all happened, you know, U.S.-Canadian border, so again, I'll

22   hear you, you know, I'll expect you to make whatever

23   objections you want as the testimony is coming in or prior to

24   the testimony's coming in.  I don't want to prejudge anything

25   at this point until I've heard it, and I'll give you, you

1    know, my ruling at that time.  So we'll deal with it as we

2    get to it.  So the important thing is that you're, you know,

3    you're aware of it, you've been advised and everybody will be

4    prepared to make their arguments, okay?

5          MR. GOLDSMITH:  Thank you, your Honor.  While we're

6    on the topic, I did file electronically yesterday at the

7    request of my client a request for a so-ordered subpoena for

8    his Canadian counsel that is only appropriate if the

9    government pursues this area of evasion.  As a proffer to the

10   government and the court, simply his barrister in Canada

11   would -- sent him a couple letters describing the warrant

12   issued without any exigency whatsoever for him to reappear in

13   Canada and simply discussed really the return of bail to the

14   barrister to pay off his legal fees.  I recognize the

15   jurisdictional difficulty.

16         THE COURT:  I'm glad you do, because that's the

17   biggest hurdle you have.  I mean you can attempt to get this

18   individual to appear voluntarily, but certainly I'm not going

19   to sign something that has no legal force or effect.  And

20   which it does not.  In Canada.

21         MR. GOLDSMITH:  Right.

22         THE COURT:  You can sign your subpoena and send it

23   up there, if he chooses to, you know, make himself available

24   and come into the jurisdiction to testify, that's completely

25   up to him, but otherwise, there's all sorts of procedures

1   that need to be followed, to attempt to get a witness from

2   another country.  There's MLAT procedures and there's

3   treaties and there's all sorts of stuff that, you know, I

4   just can't help you with.  That's something that needs to be

5   done well in advance and, you know, in anticipation, so I

6   would -- and it sounds like you're aware, Mr. Goldsmith,

7   unless this person wants to be cooperative and make himself

8   available, there's really nothing I can do to assist you.

9           MR. GOLDSMITH:  And what I will do just so that

10  everyone is in the loop, I will notify the government and the

11  court if I make any headway with this voluntary production of

12  that witness.  If I'm able to make any headway with it, I

13  will provide copies of the relevant correspondence to the

14  government immediately, but I'm going to wait to do that work

15  to prevent unnecessary and extra work on behalf of the court

16  and the government unless or until I know I've got somebody

17  who's willing to cooperate.

18          THE COURT:  Government want to be heard?  No, okay.

19  Mr. Goldsmith, sounds perfectly appropriate to me, and

20  that's -- we'll proceed on that basis.

21          MR. GOLDSMITH:  Very good.

22          THE COURT:  Okay.  Jury selection, any questions,

23  requests, anything?  I'll start with the government, as far

24  as, I mean, I anticipate a standard round method of jury

25  selection, nothing out of the ordinary, unless there's

1    something that I'm unaware of that you want to make me aware

2    of.

3                    MS. CARROLL:  Do you allow back strikes, your

4    Honor?

5                    THE COURT:  No.

6                    THE CLERK:  Are you limiting per round?

7                    THE COURT:  What do you mean limiting per round?

8                    THE CLERK:  Doing 4-3-3, 4-2-2, then the fourth

9    round there's nothing left?

10                   THE COURT:  Well, I'll hear you, requests with

11   regard to that?

12                   MS. THOMSON:  Can we think on it?

13                   THE COURT:  Yeah.

14                   MS. THOMSON:  Let you know?

15                   THE COURT:  Let me know, I'm flexible.  I don't

16   want to waste time, though, I want to be as expeditious as

17   possible in picking this jury but I'll listen to you before

18   we get started.  Mr. Goldsmith, anything?

19                   MR. GOLDSMITH:  I have no particular request, I

20   provided my proposed voir dire.  Just being unfamiliar with

21   your Honor's court just for a quick description of how you

22   run it because certainly district courts throughout the

23   country, you run things a bit differently, I want to be

24   prepared.

25                   THE COURT:  Yeah.  What I'll do is at the start of

1    jury selection, I'll ask you to, as well as the government

2    attorneys, to introduce yourself to the jury, give you an

3    opportunity to talk to them a little bit about, you know,

4    where you're from, what your practice is, that sort of thing,

5    how long you've been practicing, and I'll do the majority of

6    the questioning if not all.  I will hear you if there's

7    issues that I haven't covered that you feel should be covered

8    or if you want to do some questioning.  I would just say

9    this, that I really don't like to waste time, and if

10   you're -- if you have an area that you think is kind of

11   unique that you feel is most appropriate for you to ask some

12   questions, I'll hear you, but I wouldn't anticipate that

13   you're going to be doing a lot of questioning.  If I allow

14   it, it will be limited.  And other than that, I don't know if

15   you have other questions that you want to ask.

16           MR. GOLDSMITH:  Are there -- certain districts have

17   like an electronic preprinted juror sort of a demographic

18   questionnaire that will be published to counsel, does the

19   Northern District adopt that policy?

20           THE COURT:  We do.  The juror questionnaires will

21   be provided to you at the start of jury selection, so that

22   you have them in front of you, and you're expected to, you

23   know, turn them back into the courtroom deputy as soon as

24   we're done with them, as we move through jury selection, so

25   that's the process that we follow.  You'll have that

1    information.

2            MR. GOLDSMITH:  Very good.

3            THE CLERK:  I also ordered extra jurors in this

4    case in anticipation of maybe going through a few.

5            THE COURT:  Okay.  And we'll do the regular round

6    method, you know, moving through it, let you pick, I'm not --

7    as I've indicated, I won't allow back strikes so you should

8    use your perempts in that round.  So that once we have a

9    juror sworn, they're sworn and they're going to be there.

10   Okay?

11           MR. GOLDSMITH:  Very good.

12           THE COURT:  All right.  Oh, I'll give you an idea

13   of the way I conduct my trials, trial schedule.  The first

14   day jurors usually aren't available until 9:30, but I will

15   take the bench at 9:00, just so that if there's any

16   last-minute issues we need to cover on the record, we can do

17   that.  And depending on how long that takes, you know, we'll

18   either have a jury before we're done or they'll be available

19   to us shortly thereafter and we'll start with jury selection

20   as soon as that jury's ready to come downstairs, usually

21   about 9:30.  And the daily schedule is, we'll always start at

22   9:00, and we'll take an hour for lunch, you know, I look to

23   break around noon.  If there's a witness on that we can

24   finish in 10, 15 minutes or 20 minutes, we'll finish that

25   witness and may not break till 12:20, 12:30, whenever it is.

1    Whenever we break we'll have an hour from the time we break

2    for lunch and then for the afternoon, I usually try to get

3    the jury out of the courtroom by around 4:30.  And again, the

4    same thing applies, if there's a witness that we can finish

5    up and we have to go till quarter of 5 or whatever, we'll do

6    that but you should understand that about, you know, 3:30,

7    4:00, I'm starting to understand where we are witness wise,

8    how much longer, don't want to waste time, we're going to

9    work right up to 4:30, and we'll go longer if necessary but I

10   look to excuse the jurors and get them on the road by 4:30.

11   Regular, you know, morning break, afternoon break, and of

12   course if the jurors, I feel like they need a break or they

13   need to stand up and move around, we might take one just to

14   keep them alert, but generally, morning break, afternoon

15   break, and with those time parameters, starting at 9 and

16   finishing at 4:30 with an hour for lunch.  Okay?

17          MR. GOLDSMITH:  Okay.

18          THE COURT:  Mr. Goldsmith, the government has

19   mentioned that they're going to have their courtroom

20   technology person available to assist them in doing what they

21   need to do video wise and evidence presentation.  Do you

22   anticipate any courtroom technology that you're going to

23   need?

24          MR. GOLDSMITH:  I do not anticipate any courtroom

25   technology at this point, and I'm sure that if I need a

1    little extra help referring to one of their exhibits, they'll

2    help me pull it up.

3           THE COURT:  Yeah, the government's always been very

4    good and they have -- well, if they have Mr. Kittleson, he's

5    great, I've had him in other trials and very accommodating as

6    far as making sure that whatever they've used on their direct

7    is available to you and he'll assist you in getting up

8    whatever you need, so -- but I didn't know if there was

9    anything that evidentiary wise that you had that you say, you

10   know, I'm going to need this or this, some other piece of

11   equipment to present, but it doesn't sound like that.

12          MR. GOLDSMITH:  No, your Honor, and to the ends of

13   technology, will the court require that I have an order from

14   the court permitting me to bring my laptop in?

15          THE COURT:  You can bring your laptop in, you don't

16   need an order for you to do that.  You can bring it in and

17   there's, you can check with -- Lori will show you how to,

18   there is a method to hook it up, right?

19          THE CLERK:  If he wants to display something.

20          THE COURT:  If you want to display something, but

21   other than that, you can have it at counsel's table and have

22   access to it to use it.

23          THE CLERK:  But we don't have internet access, just

24   so you know.

25          MR. GOLDSMITH:  I guess that's appropriate.

1          THE COURT:  Okay.

2          MR. GOLDSMITH:  Okay.  Your Honor, I did have one

3  final issue.  My client did want me to revisit filing a

4  motion regarding impropriety of the treaty and the joint

5  investigation, more specifically, transfer of the case from

6  the Canadian authorities to the United States authorities.  I

7  believe the motion had been filed previously by him on pro se

8  basis if not with the prior counsel, I wanted to verify that

9  with the court before I even sought leave to file.

10          THE COURT:  Um, I believe -- it's been awhile since

11  I've looked at this stuff, but I think we've addressed it at

12  least once, maybe more than once.

13          MR. GOLDSMITH:  Yeah.

14          THE COURT:  So that, you know, whatever the ruling

15  is, there isn't going to be any change, let's put it that

16  way.

17          MR. GOLDSMITH:  Okay, very good.

18          THE COURT:  It's very clear in the court's view as

19  to what those issues are and that it's been addressed and

20  it's been addressed appropriately, so unless there's some new

21  evidence or some new wrinkle, Mr. Goldsmith, I would say, you

22  know, I wouldn't waste your time, I would focus on the issues

23  at trial that you need to focus on.  And again, if there's

24  some new wrinkle or something different that the court hasn't

25  seen, fine, but if it's the same old motion or same issue,

1    that's been addressed, I'd say, you know, don't waste your

2    time.

3              MR. GOLDSMITH:  Very good.

4              THE COURT:  Okay.  Anything else?

5              MS. CARROLL:  Your Honor, the only other thing is

6    the issue of forfeiture which the government discussed

7    briefly in its trial memo.  As the court and Mr. Goldsmith

8    are aware, the forfeiture allegation names the digital media

9    that the defendant is alleged to have possessed child

10   pornography using.  Mr. Goldsmith, I don't know if you have a

11   position regarding whether you want, if there's a conviction,

12   if you want the jury to hear the forfeiture issue or if your

13   client, in the event of conviction, will be willing to have

14   that be a bench determination, but that might be something

15   that would save some judicial resources if we can agree on

16   judicial determination rather than jury determination on the

17   forfeitability of the property.

18             MR. GOLDSMITH:  Well, my position is that I

19   actually, a little over a year ago was trying a case in

20   District Court in Southern Ohio when several rulings had come

21   out in circuits around the country on this issue and we sort

22   of briefed it all out and made a determination that a jury

23   finding on the special verdict was required unless

24   specifically waived by a defendant, so what I've done in

25   other trials is just gone forward with the special finding by

1    the jury, only because I -- while it certainly takes a little

2    bit more time, my experience is that they are very swift,

3    there's really typically only one witness that's relevant to

4    it, and that testimony is accomplished very quickly and if

5    under those circumstances the jury has already found a

6    finding of guilt, they are pretty quick to make a

7    determination as to any forfeiture.

8                MS. CARROLL:  Okay.

9                THE COURT:  Has there been submissions with regard

10   to this?

11               MS. CARROLL:  There's reference in the trial memo

12   to the fact that, yes, a waiver by the defendant is required

13   or a jury determination so I --

14               THE COURT:  Sounds like you're not going to get a

15   waiver.

16               MS. CARROLL:  Sounds like there's not going to be a

17   waiver, that was really my question.

18               THE COURT:  Okay.  So that's -- you know what you

19   have to do.  Okay.  Anything else?

20               MR. GOLDSMITH:  Just on a personal note, your

21   Honor, I note in the court's decision for the motion that I

22   filed for the suppression of evidence seized at the border

23   that it was certainly not my intent to be unduly litigious

24   and repetitive in the litigation.  My particular reading,

25   apparently I read it wrong, was that there was leave to

1    refile the motion, certainly wouldn't want to, not being a

2    regular attorney before the court, have the court believe

3    that I was just sort of litigating for the sake of

4    litigating.

5             THE COURT:  I appreciate your comment on that, and

6    we're all set, we're just going to move ahead.

7             MR. GOLDSMITH:  Very good.

8             THE COURT:  Okay.  All right.  Stay warm, travel

9    safe, and we'll see you soon.

10            MR. GOLDSMITH:  Very good.

11            THE COURT:  Okay, thank you.

12            MS. THOMSON:  Thank you.

13                 (Proceedings Adjourned, 11:45 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal Official

4    Realtime Court Reporter, in and for the United States

5    District Court for the Northern District of New York, DO

6    HEREBY CERTIFY that pursuant to Section 753, Title 28, United

7    States Code, that the foregoing is a true and correct

8    transcript of the stenographically reported proceedings held

9    in the above-entitled matter and that the transcript page

10   format is in conformance with the regulations of the Judicial

11   Conference of the United States.

12

13                   Dated this 23rd day of May, 2014.

14

15

16                   /S/ JODI L. HIBBARD
                     _____

17                   JODI L. HIBBARD, RPR, CRR, CSR
                     Official U.S. Court Reporter
18

19

20

21

22

23

24

25

                   JODI L. HIBBARD, RPR, CRR, CSR
                           (315) 234-8547