VOLUME I (EXCERPT)
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                           5:11-CR-602

JOSEPH VINCENT JENKINS,

                    Defendant.

-------------------------------------------x

     Transcript of a Jury Trial held on February 3,

2014, at the James Hanley Federal Building, 100

South Clinton Street, Syracuse, New York, the

HONORABLE GLENN T. SUDDABY, United States District

Judge, Presiding.


            A P P E A R A N C E S

For The Government: UNITED STATES ATTORNEY'S OFFICE
                    P.O. Box 7198
                    100 South Clinton Street
                    Syracuse, New York  13261-7198
                      BY:  TAMARA THOMSON, ESQ.
                           GWENDOLYN CARROLL, ESQ.


For Defendant:      AARON M. GOLDSMITH, ESQ.
                    Attorney at Law
                    225 Broadway
                    Suite 715
                    New York, New York  10007



             *Jodi L. Hibbard, RPR, CSR, CRR*
           *Official United States Court Reporter*
                *100 South Clinton Street*
              *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1          (Jury Selection was conducted and the jury was

2              duly sworn.)

3          THE CLERK:  Thank you, you may be seated.

4          THE COURT:  Okay.  First order of business, I'm

5    going to give you a break, I'm going to have Bruce, our court

6    security officer, show you back into that jury room, that's

7    where you're going to be reporting every day, you can keep

8    your things there, that's going to be your home away from

9    home this week.

10         Trial schedule.  Here's what I do.  I start every

11   day at 9:00.  We'll endeavor to start on time.  Sometimes

12   there might be a short delay if we have some legal argument

13   with the attorneys before you come out here but we are going

14   to ask you to be in that jury room to start at 9:00 in the

15   morning.  And there is always some sort of breakfast food in

16   there, not always going to promise you it's the most healthy

17   thing, doughnuts, bagels, muffins, all that kind of stuff but

18   it's there for you if you want it.  And I go every day until

19   4:30, I try and get you out of here by 4:30 so that, you

20   know, you can beat some of the rush hour traffic, get out of

21   downtown and it's still getting dark kind of early so I try

22   to get you out of here a little bit early.  One caveat.  That

23   is, if we have a witness on the stand that these attorneys

24   tell me, Judge, if you spend five, ten minutes more, we can

25   finish this witness up and they don't have to come back

1    tomorrow morning, I'm probably going to do that, all right.

2    But have in mind that I'm looking to break at 4:30 or shortly

3    thereafter.  There will be a morning break, an afternoon

4    break.

5            You always, please, let the court security officer

6    know, let the court staff know if you need a break, just let

7    us know, give us a high sign, something, we'll give you a

8    break, okay.  If you need to stand up and stretch, there's

9    going to be times when the attorneys are up here talking to

10   me at the bench the way they have today, that's a time, feel

11   free to stand up and stretch.  I want you to be comfortable

12   in this courtroom.  Your tax dollars pay for it, okay, this

13   is your courthouse, this is your courtroom, I want you to be

14   comfortable.  There's obviously rules that we follow like no

15   food in here, you can bring bottles of water in which we will

16   provide for you, and I'll give you some other preliminary

17   instructions in a few minutes, but first of all, we're going

18   to take a break, let you do that.  If you have any things in

19   the back, please collect them and take them into the jury

20   room with you if you don't have them with you.

21           And please, as I admonished earlier today, don't

22   talk about this case at all, with anybody.  If anybody

23   approaches you and tries to talk to you about this case, I

24   need to know about it immediately.  Now, that doesn't mean

25   that you can't talk with your fellow jurors, I encourage you

1    to be friendly, talk about anything under the sun that you

2    want to talk about except for this case, okay.  We'll move it

3    right along.  So we're going to take a break, bring you out

4    here, I'm going to give you a preliminary charge on the law

5    and then we're going to have these attorneys give their

6    opening statements on this criminal case.  And once we're

7    done with those opening statements, we'll see what time it is

8    and decide whether we want to call any witnesses today or if

9    it's time to send you home, okay, with that 4:30 rule.  All

10   right.  Any questions?  All right.  We'll take about a

11   five-minute break.  Go ahead.

12                    (Jury Excused, 3:27 p.m.)

13             THE COURT:  Mr. Jenkins, the same thing, if you

14   ever need a break or something, please just let Mr. Goldsmith

15   know.  The only difference is that if we're going to move

16   you, we have to do it with the jury out of the room, so I

17   just, and if you need to just get to him, let me know, he can

18   ask to take a break, I'll get the jury out of the room and

19   let you go use the facilities whenever you need to, okay?

20             THE DEFENDANT:  All right.

21             THE COURT:  All right.

22                  (Court in recess, 3:29 p.m. to 3:41 p.m.)

23                  (Open Court, Jury Out.)

24             THE COURT:  Is the government ready?  We're going

25   to bring this jury in, I'm going to do a preliminary

1    instruction, and then we will go on to opening statements.

2    Defense counsel all set?

3              MR. GOLDSMITH:  Ready.

4              THE COURT:  Okay.  And it doesn't look like --

5    we'll see what time it is, but I don't know that it makes any

6    sense to try to start a witness, but we'll see, okay.  Please

7    bring them in.

8                   (Jury Present.)

9              THE COURT:  Please be seated.  We're missing

10   somebody.  Looks like it's fine except for one juror.  There

11   we go, we found them.

12             Okay.  The record should reflect we have the ladies

13   and gentlemen of the jury, government and defense counsel and

14   the defendant.  One more housekeeping issue.  As I indicated,

15   you can bring water in here, nothing else, but when you come

16   into the courtroom, you're going to notice that everybody's

17   standing up in the courtroom, okay.  You come in and sit

18   right down.  The reason they're standing, it's an old

19   tradition and it's a very nice one that I agree with firmly,

20   they stand in honor of your service, the fact that you're

21   here performing a service as citizens of this country, so

22   when a jury comes into a courtroom, the litigants and

23   attorneys all stand until you're here and seated.  So come

24   right in and sit right down, okay.  Sometimes I have jurors

25   come in the courtroom and say, am I supposed to be standing

1        or sitting?  Come right in and sit down, okay, that's what

2        that's about.

3                Now first thing we're going to do is preliminary

4        instructions for this criminal case.  Before we begin the

5        trial, I'd like to tell you about what will be happening.  I

6        want to describe how the trial will proceed and be conducted

7        and explain what we'll be doing, that is the lawyers, the

8        court, and even you.  At the end of the trial we'll give you

9        more detailed guidance on how you are to go about reaching

10       your decision, I'll explain to you how the trial will proceed

11       and give you an overview of the claims.

12               In this case, the defendant is charged with two

13       felony counts for violating 18 U.S.C. Section 2252 and 2256,

14       transportation of child pornography and possession of child

15       pornography.  I will give you detailed instructions on the

16       law at the end of the case on those, those instructions will

17       control your deliberations and decision.  But in order to

18       help you follow the evidence, I will now give you a brief

19       summary of the elements of the offense that the government

20       must prove to make its case.

21               Generally, to prove the defendant guilty of

22       transportation of child pornography, the government must

23       prove each of the four following elements beyond a reasonable

24       doubt:  First, that the defendant knowingly transported a

25       visual depiction as that term will later be defined; and two,

1    that that visual depiction was transported in or affecting

2    interstate or foreign commerce, or as the visual depiction

3    was produced using materials that had been transported in or

4    affecting interstate commerce; three, that that visual

5    depiction was child pornography as that term will later be

6    defined for you; and four, that the defendant knew of the

7    sexually explicit nature of the material and that the visual

8    depiction was of an actual minor engaged in that sexually

9    explicit conduct.

10              Generally to prove that the defendant is guilty of

11   possession of child pornography, the government must prove

12   each of the following four elements beyond a reasonable

13   doubt.  This is the second count.  First of all, the first

14   element, that the defendant knowingly possessed a visual

15   depiction as that term will later be defined; two, that that

16   visual depiction was transported in or affecting interstate

17   or foreign commerce; or usual depiction, the usual depiction

18   was produced using materials that had been transported in or

19   affecting interstate or foreign commerce; and three, that the

20   visual depiction was child pornography as that term will

21   later be defined; and fourth, excuse me, that the defendant

22   knew of the sexually explicit nature of the material, and

23   that the visual depiction was of an actual minor engaged in

24   that sexually explicit conduct.

25              In addition, the government seeks pursuant to 18

1    U.S.C. Section 2253(a)(3), the criminal forfeiture of three

2    items of the defendant's personal property that were

3    allegedly used or intended to be used in the course of

4    committing the previously described offenses.  Those three

5    items are a Toshiba laptop computer, an 8-gigabyte USB thumb

6    drive and a 4-gigabyte USB thumb drive.  The government's

7    burden of proof with regard to the criminal forfeiture of

8    these three items is by a preponderance of the evidence.  And

9    I'll explain the different burdens that you must follow.

10           What's the duty of the jury?  It will be your duty

11   to find from the evidence what the facts are.  You and you

12   alone are the judges of the facts.  You will then have to

13   apply those facts to the law as the court will give it to

14   you.  You must follow the law whether you agree with it or

15   not.  Nothing the court may say or do during the course of

16   the trial is intended to indicate or should be taken by you

17   as indicating what your verdict should be.  That is solely in

18   your province.

19           Now evidence, what's evidence?  Evidence from which

20   you will find the facts will consist of the testimony of

21   witnesses, documents, or other things received into the

22   record as exhibits, and any facts the lawyers agree or

23   stipulate to, or that the court may instruct you to find.

24   Certain things are not evidence and must not be considered by

25   you and I will list them for you now.  Statements, arguments,

1    and questions by the lawyers are not evidence.  Objections to

2    questions are not evidence.  Lawyers have an obligation to

3    their clients to make an objection when they believe evidence

4    being offered is improper under the Rules of Evidence.  You

5    should not be influenced by the objection or by the court's

6    ruling on it.  If the objection is sustained, that means the

7    witness does not have to answer the question.  In that case,

8    you must disregard the question and any response that was

9    given to that question.  If the objection is overruled, that

10   means the witness will then be required to answer the

11   question.  In that case you should treat the answer like any

12   other.

13        If you are instructed that some item of evidence is

14   received for a limited purpose only, you must follow that

15   instruction.  Testimony that the court has excluded or told

16   you to disregard is not evidence and must not be considered.

17   Anything you have seen or heard outside the courtroom is not

18   evidence and must be disregarded.  You are to decide the case

19   on the evidence presented here in this courtroom, and in this

20   courtroom alone.

21        There are two kinds of evidence, direct and

22   circumstantial evidence.  Direct evidence is direct proof of

23   a fact such as testimony of an eyewitness.  Circumstantial

24   evidence is proof of facts that which you -- from which you

25   may infer or conclude other facts exist.  I will give you

1    further instruction on these as well as other matters at the

2    end of the case but have in mind that you may consider both

3    kinds of evidence.

4              It will be up to you to decide which witnesses to

5    believe, which witnesses not to believe, and how much of any

6    witness' testimony to accept or reject.  I will give you some

7    guidelines for determining the credibility of witnesses at

8    the end of the case.

9              Now direct and circumstantial evidence.  I'm going

10   to talk a little bit more about this because it's important

11   that you understand first of all that you can accept both

12   kinds of evidence.  One is not given more weight than

13   another.  But the difference is direct evidence is evidence

14   of an eyewitness so to speak, somebody who was present, saw,

15   heard, smelled, can give some direct testimony about some

16   observation that they made by their senses.  They saw it,

17   they heard it, they smelled it, something, okay.  And

18   circumstantial evidence is a little different.  It's facts

19   inferred from facts that lead to a logical conclusion.

20             Here's an example.  The weather's warmed up.  The

21   snow on your front lawn may have melted, you look out there,

22   you see the brown somewhat dark grass or whatever might be on

23   your front lawn.  You look out there tonight, that's the

24   situation, you go to bed.  You wake up in the morning, you

25   look out on your lawn and it's covered with white fluffy

1    stuff, which is supposed to happen over the next couple days

2    as a matter of fact.  Now, you did not see it snow because

3    you were in bed sleeping.  But circumstantially, you can

4    infer at some time during the night when you were sleeping,

5    it snowed.  A logical conclusion based on what you've seen in

6    your life's experiences, okay, circumstantial evidence.

7            Now let's take it a step further.  Let's say you

8    have a paper boy, if they exist anymore, and they deliver

9    your paper in the morning in your door at like 6:00 in the

10   morning.  You're up at 5:30, quarter to 6, check your door,

11   no paper.  You look out, you look out across your lawn,

12   there's fresh snow, there's no footprints, there's no

13   footprints up your walk to your front door, no paper.  So

14   circumstantially you say, I guess the paper boy hasn't come

15   yet.  You go back to your door at 6:30, you open it, there's

16   a paper.  You look out across your lawn, footprints across

17   your lawn right up to your front walk to your front door, so

18   circumstantially, based on the two things, you didn't see

19   anybody deliver that paper but you know based on what you've

20   seen from the footprints, the fact that the paper's in the

21   door, that somebody delivered that paper.

22           You may not know who it was unless you have some

23   further evidence like your, you know, paper boy is of a

24   certain size, may wear certain type of boots where you could

25   compare the footprints in the snow to his boots, maybe a

1  neighbor says I saw the paper boy down the street from your

2  house just a few minutes later and you put all those facts

3  together and circumstantially you can infer that it was a

4  particular individual, maybe your paper boy that delivered

5  your paper.  Okay.  So you get what I mean, that's the idea

6  of circumstantial evidence, facts that lead you to some

7  logical conclusion, okay, based on your life's experiences.

8          Now, let's talk about rules of a criminal case.  As

9  you know this is a criminal case.  There are three basic

10  rules about a criminal case that you must keep in mind.

11          First, the defendant is presumed innocent until

12  proven guilty.  The indictment against the defendant brought

13  by the government is only an accusation, nothing more.  It is

14  not proof of guilt or anything else.  The defendant therefore

15  starts out with a clean slate.

16          Second, the burden of proof is on the government

17  until the very end of the case.  The defendant has no burden

18  to prove his or her innocence or to present any evidence or

19  to testify.  Since the defendant has a right to remain

20  silent, the law prohibits you from arriving at your verdict

21  by considering that the defendant may not have testified.  No

22  inference for or against in any way, okay.

23          Third, the government must prove the defendant's

24  guilt beyond a reasonable doubt.  Now what do I mean by

25  beyond a reasonable doubt?  It is not some vague,

1    speculative, imaginary or inconceivable doubt.  Nor is it a

2    doubt based upon emotion, sympathy, prejudice, or upon some

3    of you -- what some of you may consider to be an unpleasant

4    duty.  The government is not required to prove a defendant

5    guilty beyond every conceivable or every possible doubt.  But

6    you should review all the evidence as you remember it, sift

7    out what you believe, discuss it, analyze it, compare your

8    views of the evidence with that of your fellow jurors and if

9    that process produces in your mind some belief or conviction

10   that you would be willing to accept without further

11   hesitation if it was a matter of importance to you, then you

12   may say that you have been convinced beyond a reasonable

13   doubt.  On the other hand, if going through that same process

14   in your mind, your mind is wavering, or you are so uncertain

15   that you would hesitate before acting if it were an important

16   matter of your own, then you have not been convinced beyond a

17   reasonable doubt and your verdict must be not guilty.  I will

18   give you further instructions on this point of law later, but

19   bear in mind that in this respect, a criminal case is

20   different than a civil case, different type of burden and the

21   burden always remains with the government.

22           Let's talk about the course of the trial.  In a few

23   minutes we're going to begin this trial.  First, the

24   government will make an opening statement which is simply an

25   outline to help you understand the evidence as it comes in.

1      Next, defendant's attorney may, but does not have to, make an

2      opening statement.  Opening statements are neither evidence

3      nor argument.  Now I say he may but does not have to because,

4      once again, defendant has no burden, he can sit there and do

5      nothing.  It's up to him and his attorney to decide whether

6      they want to do opening statements, whether they want to

7      examine witnesses, or you know, whatever they want to do is

8      totally within a defendant's right to decide.  The government

9      will then present its witnesses and counsel for the defendant

10     may cross-examine them.  Following the government's case, the

11     defendant may, if he decides to, present witnesses or

12     evidence and those witnesses, the government may

13     cross-examine.  After all the evidence is in, the attorneys

14     will present their closing arguments to summarize and

15     interpret the evidence for you, and the court will instruct

16     you on the law.  After that, you will retire to deliberate

17     and render a verdict.

18          What's the conduct of a jury?  Our law requires

19     jurors to follow certain instructions in order to help assure

20     a just and fair trial.  I will now give you those

21     instructions.  Do not converse either among yourselves or

22     with anyone else about anything related to the case.  You may

23     tell the people with whom you live and your employer that you

24     are jurors and give them the information about when you will

25     be required to be in court, but you may not talk with them or

1    anyone else about anything related to this case.

2              Do not at any time during the trial request,

3    accept, agree to accept or discuss with any person the

4    receipt or acceptance of any payment or benefit in return for

5    supplying any information concerning this trial.  You must

6    promptly report directly to me any incident within your

7    knowledge involving an attempt by any person to improperly

8    influence you or any other member of this jury.

9              Do not visit or view the premises or place where

10   the charged crime was allegedly committed or any other

11   premise or place involved in this case.  You must not use

12   internet maps or Google Earth or any other program or device

13   to search for or view any location discussed in the

14   testimony.  Do not read, view, or listen to any accounts or

15   discussions of the case reported by newspapers, television,

16   radio, the internet, or other news media.  Excuse me.  Do not

17   attempt to research any fact, issue, or law related to this

18   case whether by discussion with others, by research in a

19   library or on the internet or by any other source.

20             In this age of instant electronic communication and

21   research, I want to emphasize that in addition to not

22   conversing face-to-face with anyone about the case, you must

23   not communicate with anyone about the case by any other

24   means, including by telephone, text message, e-mail, internet

25   chat, chat rooms, blogs, social websites, such as Facebook,

1    MySpace or Twitter.  You must not provide any information

2    about the case to anyone by any means whatsoever.  And that

3    includes the posting of information about the case or what

4    you are doing in the case on any device or internet site

5    including blog, chat rooms, social websites, and any other

6    means.  You must also not Google or otherwise search for any

7    information about the case or the law which applies to the

8    case, or the people involved in the case, including the

9    defendant, the witnesses, the lawyers, or even me, the judge.

10   You can do any and all of that after the case is over, but

11   not during this case.

12           Now ladies and gentlemen, I want you to understand

13   why these rules are so important.  First of all, our law does

14   not permit jurors to converse with anyone else about the case

15   or permit anyone to talk to them about the case, excuse me,

16   because only jurors are authorized to render a verdict and

17   only you have been found to be fair and impartial and only

18   you have promised to be fair.  No one else has been so

19   qualified.  Our law does not permit jurors to converse among

20   themselves about the case until the court tells them to begin

21   deliberations because premature discussion can lead to

22   premature final decisions.  We want to avoid that.  Our law

23   also does not permit you to visit a place discussed in the

24   testimony.  First of all, you cannot always be sure that the

25   place is in the same condition as it was on the day in

1    question; second, even if it were in the same condition, once

2    you go to a place discussed in the testimony to evaluate the

3    evidence in light of what you see, you become a witness, not

4    a juror.  As a witness you may now have an erroneous view of

5    the scene that may not be subject to correction by either

6    party and that is just not fair.

7           Finally, our law requires that you not read or

8    listen to any news accounts of the case and that you not

9    attempt to research any fact, issue, or law related to the

10   case because your decision must be based solely on the

11   testimony and other evidence presented in this courtroom.  It

12   would not be fair to the parties for you to base your

13   decision on some reporter's view or opinion or upon

14   information you acquire outside of this courtroom.

15          Now these rules are designed to help guarantee a

16   fair trial and our law accordingly sets forth serious

17   consequences if the rules are not followed.  I trust you

18   understand and appreciate the importance of following these

19   rules in accordance with your oath and promise, I know you

20   will do so.

21          Finally, do not form any opinion until all the

22   evidence is in.  Keep an open mind until you start your

23   deliberations at the end of the case.

24          If you wish, you may take notes, but if you do,

25   please leave them in the jury room when you leave at night.

1    And remember, they are for your own personal use, they are

2    not to be given or read to anyone else and if you do take

3    notes, please do not let those note taking, that note taking

4    distract you from what the witnesses have to say or how they,

5    the witnesses may answer questions.  Notes are not entitled

6    to any greater weight than the memory or impression of each

7    juror as to what the testimony may have been.  Whether you

8    take notes or not, each of you must form and express your own

9    opinion as to the facts of the case.  If you do not take

10    notes, you should rely upon your own memory of what was said

11    and not be overly influenced by the notes of other jurors.

12            Now, excuse me, note taking.  Relatively new thing,

13    we never, when I was trying cases, jurors were never allowed

14    to keep notes.  And there were some good reasons for it, I'm

15    going to tell you about those.  First of all, we have a court

16    reporter, a professional whose responsibility is to take down

17    each and every thing that's said in this courtroom and going

18    to make sure people talk one at a time for that very purpose.

19    We're a court of record, and if we have a question about some

20    aspect of testimony, we can always have it read back.  We can

21    have Jodi go and find it for us, and she'll read it back for

22    us, okay.

23            Secondly, it is very important when you're watching

24    a witness testify, that you not only hear what they say, but

25    you watch how they testify.  People's demeanor is important.

1    When you're trying to decide, even if it's a couple of kids

2    who may have broken something in your house, and you're

3    asking them questions about what happened, it's not only what

4    they say, it's how they say it that's important, right, and

5    it's making a determination of what happened and who did

6    what.  That's how we decide things.  So people's demeanor,

7    the way they answer questions, their reactions on the witness

8    stand are important and we don't want note taking to

9    interfere with you making those observations, because that's

10   how we make decisions about who is telling us the truth,

11   okay.

12            Now, so why do we allow note taking?  Because in

13   recent years I think the courts have recognized that some

14   people just remember things better if they have a notepad and

15   they jot things down.  A lot of people just listen that way,

16   and are able to retain things that way.  If you're one of

17   those people, that's fine.  But just understand, don't let it

18   interfere with you observing the witnesses well and

19   understand that they'll be kept here in the jury room at

20   night, they're not to leave this courthouse, they're court

21   exhibits which will stay here and will be locked up at night

22   and they're for your own personal use only.

23            And I would say this.  We don't expect this to be a

24   long trial.  If there was a trial that was going on for

25   weeks, then maybe note taking becomes more important for you,

1    because there's going to be a long list of multiple witnesses

2    just to keep track in your own head, but if you're one of

3    those people who feel more comfortable listening and paying

4    attention and hearing what's being said by having a notepad

5    to jot down, feel free to do it.  Okay.  That's your choice.

6    Any questions?  About your role or what we're going to be

7    doing?  Okay.  We're going to proceed now with opening

8    remarks and we're going to start with the government.

9    Ms. Thomson, when you're ready.

10           MS. THOMSON:  Thank you, your Honor.  On May 24,

11   2009, Joseph Jenkins entered Canada from Jefferson County.

12   He had with him a Toshiba laptop and two thumb drives and on

13   that laptop and on those thumb drives together were a total

14   of 30 -- over 3800 images of child pornography, and over a

15   hundred videos of child pornography.  His laptop.  His thumb

16   drives.  His collection that he was taking with him on his

17   trip to Canada.

18           Good afternoon.  As you may recall earlier, my name

19   is Tamara Thomson and together with Gwen Carroll, we

20   represent the United States of America.  And it is our

21   pleasure to present this case to you.  Sitting at trial table

22   is Chad Willard, he's a special agent with Homeland Security.

23   Also his pleasure to bring this case before this jury.

24           At Alexandria Bay, there begins the border to

25   Canada at the Port of Lansdowne and at that border point,

1   there is a border checkpoint, and when we were talking in

2   voir dire, I believe most of you actually indicated that you

3   had crossed a border so you have some familiarity with a

4   border checkpoint.

5          Now the purpose of those border checkpoints are to

6   inspect people and things that go into Canada.  And so

7   Canadian Border Service Agency officers look to see what's

8   coming in and who's coming in, and the purpose is they want

9   to make sure that for the people, they don't allow anyone in

10  who's unauthorized and for the goods, they don't allow any

11  goods that are unauthorized or illegal or may be subject to

12  taxation.  So as a result, they have a border checkpoint.

13  That border checkpoint at the Port of Lansdowne begins with a

14  primary inspection.  On May 24, 2009, morning hours, at

15  primary inspection lane number 5, was Border Services Officer

16  Pedro Sousa-Dias and you'll hear testimony from him that that

17  morning he was working inspection lane number 5 and at

18  approximately 9 a.m., a Navy 2003 Dodge pickup truck carrying

19  a trailer that had on its bed two ATV vehicles in tow came

20  into his lane and he encountered the defendant Joseph

21  Jenkins.

22         Now the defendant was the only one in that vehicle.

23  He was the driver, sole occupant of the truck.  And so when

24  he identified himself as Joseph Jenkins, Officer Sousa-Dias

25  did what you do at a border checkpoint and he asked some

1    questions.  When he asked those questions, he noticed,

2    because it's his job to do, to pay attention to the people

3    and the things that are coming into Canada, he noticed that

4    the defendant appeared to be nervous.  He noticed that the

5    defendant was avoiding eye contact.  And as a result, he

6    decided that he should defer him into immigration to have a

7    check to make sure everything was okay.  So the defendant was

8    directed to go inside to immigration for a criminal check, to

9    make sure that he was permitted to enter Canada.

10           And when he went inside, he encountered Melany Boyd

11   who at that time was another border services officer who was

12   at the immigration counter in the secondary building.  Joseph

13   Jenkins presented her with his passport and the slip that he

14   received from Officer Sousa-Dias for the in -- for the

15   secondary, and she began her interview, again basic

16   questions, basic questions that these officers do routinely.

17   She asked him his citizenship, he indicated he was a United

18   States citizen, she asked him the purpose of his trip, he

19   indicated he was going to visit his parents who had a cottage

20   in Quebec and were summer residents there.  Asked how long he

21   was going to stay, he indicated one week.  And they asked --

22   Officer Boyd asked him what his occupation was and he

23   indicated he was a self-employed electrician.  You'll hear

24   testimony from Officer Melany Boyd, when she was asking him

25   these questions and trying to get this information from

1    Mr. Jenkins, that he appeared nervous, that he was evasive

2    with his answers and he also wasn't making eye contact.  She

3    also made an observation that the defendant, when he pulled

4    into that secondary area, was driving the truck with a

5    trailer attached and she noticed that he had a lot of

6    personal belongings.

7              Now given his answers about his purpose for the

8    trip and how long he was going to stay, and knowing that she

9    heard him say he was a self-employed electrician, she thought

10   that perhaps he intended to stay in Canada for longer and she

11   decided it would be prudent for a vehicle examination because

12   of those factors.  His behaviors plus all of the things that

13   he was bringing into Canada.  And so she directed him for a

14   vehicle examination.

15             Now three officers came to perform that vehicle

16   examination.  These are also border services officers and

17   you'll hear testimony from these officers, Officers Tristan

18   Garrah, Jarret Johnston, and Glen Hache, and their job was to

19   conduct a vehicle inspection.  And in the course of doing

20   that job, they also had an opportunity to talk to the

21   defendant.  And when one of the officers did talk to Joseph

22   Jenkins, he stated he was the owner of the truck, he was

23   aware of what was inside it, and that he had in fact packed

24   it himself, and so the vehicle inspection began.

25             Toshiba laptop was located in the rear passenger's

1    seat, and he was asked about that laptop and the defendant

2    indicated that the laptop was new, that he had had it for

3    over a year, he used it for personal use and he had it stored

4    in a box and he indicated that he had it in the box because

5    he didn't possess a carrying case for it.  So Officer

6    Johnston, with the authority to do so, opened up that Toshiba

7    laptop and when he opened it up, he clicked on a file

8    shortcut, you'll hear testimony about what that is, clicked

9    on that file shortcut, and what he saw gave him some pause.

10   He saw a video of a young female and she wasn't wearing any

11   clothing.  He viewed another video, gave him more pause for

12   concern and he realized that perhaps out in this open area

13   wasn't appropriate to really see this stuff where the public

14   could see and he thought it was appropriate for further

15   examination to be done because what was on that computer may

16   be prohibited.  And so he brought that laptop inside the

17   building for further inspection.  And while he was viewing

18   those items, other officers also viewed items on that laptop

19   and they also had been doing the search of Mr. Jenkins'

20   truck, and while doing the search they recovered other items

21   that became significant.  Those items included another

22   laptop, three thumb drives, testimony that those thumb drives

23   included a thumb drive with a storage capacity of 2

24   gigabytes, 4 gigabytes, and 8 gigabytes.  Recovered some

25   compact disks, a Belkin notebook card, an Olympus camera and

1    Motorola cellular phone.  Those were the items that were

2    recovered from the truck and they were brought inside, again,

3    for further examination.

4            Now at this point, defendant asked why his laptops

5    were being brought inside.  And the officers asked

6    Mr. Jenkins if he had child pornography on his computer, and

7    he stated, not to my knowledge.  I don't think so.  He was

8    asked, have you ever downloaded child pornography?  And again

9    his response was, no, I don't think so.

10           Now inside that building an examination was

11   conducted of an 8-gigabyte thumb drive, and when that was

12   examined, officers found a video whose title gave them a

13   sneak preview of what they were to see.  That video, and

14   you'll also hear it called multimedia so those two words

15   you'll hear throughout this trial, but that video was titled

16   "9YO Vicky stripping and sucking kiddie pedo legal underage

17   preteen" is the title of the video.  And the officers watched

18   the video, a minute and 39 seconds in length.  The video

19   began of a girl fully dressed and that girl was prepubescent,

20   meaning she hadn't hit puberty yet, it was a young girl, and

21   as the video continued she began to undress until she got all

22   the way down to just stockings.  And as the video ended, the

23   young girl approaches the camera, man unzips his pants

24   exposing his penis and performs oral sex.  That's the video

25   the officers saw from that 8-gigabyte thumb drive.  They

1    watched others and you'll hear the testimony about those

2    other videos that they viewed and as a result of watching

3    that video and others, the defendant Mr. Jenkins was taken

4    into custody and charged with violating Canadian law.

5            You will hear testimony that a Canadian Border

6    Service Agency officer, criminal investigator, sat with the

7    defendant and she asked him if he knew what child pornography

8    was and he said that he did.  And when she told him that some

9    child pornography was found on the media devices found in his

10   truck, the defendant's reply was to ask to speak to his

11   parents.

12           You'll hear testimony that a trial was set in

13   Canada, that trial for October 2010, but the defendant did

14   not appear for that trial, and therefore, the trial did not

15   go forward.

16           Now, we talked a little bit about the port of entry

17   at Lansdowne.  Before you hit that port of entry, you come

18   through Jefferson County and Alexandria Bay, and also on that

19   side are United States investigators including special agents

20   with Homeland Security.  Homeland Security has this side of

21   the border, American side of the border, and when the

22   defendant did not appear for those charges in Canada and when

23   that trial did not go forward, U.S. authorities went forward

24   here, and set about to do so.  Agents began their own

25   investigation and took steps to obtain that evidence from

1    Canada.  And they were able to retrieve the items from Canada

2    and in July of 2011, an agent appeared before a federal

3    magistrate judge and obtained a search warrant to search each

4    of the items that was recovered from the defendant at the

5    Port of Lansdowne after he had crossed into the Port of

6    Lansdowne from Jefferson County, and they obtained those

7    items that had been seized from the defendant from the

8    Ontario Provincial Police.

9           Once in the custody of HSI, those items were

10   examined and you will hear testimony from the forensic agent

11   who examined the items, and that is Brian Braisted.  He is a

12   computer forensic agent and he is trained to do forensic

13   examinations of computer and other electronic media and cell

14   phones and the like.

15          In this trial he will testify as to what his

16   analysis found, and he will testify in the area of computer

17   forensics regarding how he did the examination, and all of

18   the results that he found.  You will hear testimony that that

19   examination involved him finding over 3,800 images and over

20   100 video files on each of those three items that I've

21   indicated, the Toshiba laptop, the 8-gigabyte thumb drive,

22   and the 4-gigabyte thumb drive, and each of those three

23   items, the laptop and the thumb drives, are electronic media

24   that's not made in the state of New York.

25          You will hear testimony with regard to where those

126

1    image files were found, where the video files were found.

2    You will hear testimony about the registry information for

3    that laptop computer, that it was registered to a user by the

4    name of Joe.  You will hear testimony about web pages that

5    were saved to the Toshiba laptop as favorites.  You will hear

6    testimony that a photograph was recovered from that Toshiba

7    laptop, photograph of the defendant, because as he

8    acknowledged at the border, it was his laptop.

9             Agent Braisted will show you the evidence, you'll

10   see the laptop computer and he will also walk through various

11   dates that were forensically significant, dates that show

12   activity on that computer, not just activity that involved

13   saving and where child pornography was saved but activity

14   that was going on concurrently with the child pornography,

15   such as e-mail accounts that were being accessed.  Listen to

16   the names of those e-mail accounts that were accessed on or

17   around the same time the child pornography was detected on

18   that computer.  Agent Braisted will also show you not just

19   what that computer was in its form, you've all seen a laptop,

20   he'll show you what it looked like when he examined it.  He

21   will show you screen shots of what was on that computer.  He

22   will show you screen shots of the information that was saved

23   into that computer, and he will explain the significance of

24   his findings.  In summary, you will hear that on the Toshiba

25   laptop, there were multiple video files containing child

1       pornography in a folder that was called New Folder 2, a

2       folder that was saved to the desktop.

3              On the desktop's user account Joe, you will hear

4       testimony of the graphic files, again we often call them

5       graphic or image or picture files, and you'll hear testimony

6       where it was found in the system volume information and he'll

7       explain to you what that means.  You'll also hear testimony

8       that installed on that Toshiba laptop and on the Compaq

9       laptop was file wiping software.  CCleaner, and you'll hear

10      what that means forensically.

11             You'll hear testimony about registration of thumb

12      drive use, how looking at the Toshiba laptop, it's possible

13      to establish whether or not any particular thumb drive had

14      ever been mounted to the laptop and you will hear testimony

15      that both the 8-gigabyte and the 4-gigabyte thumb drives both

16      had child pornography on it, were mounted into the Toshiba

17      laptop.  You will also hear internet history artifacts

18      showing websites that were accessed by the user of that

19      computer.  Most of the titles of those websites give the

20      subject away.  You will also hear from Agent Brian Braisted

21      that on that 8-gigabyte thumb drive he located 96 videos and

22      15 picture files of child pornography, and on the 4-gigabyte

23      thumb drive, 10 videos, 3,266 images of child pornography.

24      Also on that 4-gigabyte thumb drive you'll hear about a

25      document that was saved to that thumb drive, that document,

1    you'll receive testimony, you'll get to see it contained a

2    phrase "Lolita House XXX", and again, oftentimes the title

3    lets you know exactly what you might expect to find.  There's

4    a file name referenced in that text document of a Sasha_S3,

5    and you'll also hear testimony that that video file was found

6    on the 8-gigabyte thumb drive and you will get to see a clip

7    of that video.

8              Where there was no child pornography found on

9    particular media, Agent Braisted will testify to that as

10   well.  He'll tell you exactly what he found and exactly which

11   pieces he analyzed.  And Agent Braisted will take you through

12   that forensic examination.  It will be lengthy testimony, but

13   it's very important because it explains exactly how that

14   child pornography came to that laptop and exactly what was

15   contained on that laptop.

16             And there's one more thing that you're going

17   to see.  We talked a little bit about it in the voir dire.

18   The court forewarned you about it and so now I'd like to

19   forewarn you about it as well.  You're going to see the

20   pictures and you're going to see the videos themselves.  And

21   we understand they are difficult to view, and just so you

22   know, we are not going to show all 3,800, and a hundred

23   videos to you.  We are going to show you a very, very small

24   portion.  We will show you respect, and we will show the

25   children depicted in those images and those videos respect

129

1    and we'll show you a very small portion.  We will show them

2    to you because they are the evidence in this case, and as

3    difficult as it is to have to look at it and watch it, it's

4    the evidence in this case.

5                The images themselves will be given to you in

6    a binder, each one of you will have your own copy of a

7    binder.  On the front page of the binder we'll show you where

8    that image was found and on the reverse side will be the

9    image itself.  As I indicated, we will limit it as much as

10   possible, but as we bear the burden of proof in this case, we

11   must show you what the defendant had on his laptop, and on

12   his thumb drives.

13               As a result of what he had, and going from

14   Alex Bay going into Canada, he was charged with two counts in

15   the United States of transporting child pornography and

16   possessing child pornography, and that first count is that on

17   or about May 24, 2009, the defendant violated Title 18,

18   Section 2252A(a)(1), 2256(8)(a), by knowingly and unlawfully

19   transporting child pornography, and Count 2 charges on or

20   about May 24, 2009, Joseph Jenkins violated Title 18, United

21   States Code, Section 2252A(a)(5)(B) and 2256(8)(a).

22               On May 24, 2009, the defendant, Joseph

23   Jenkins, transported and possessed child pornography.  He

24   drove his truck to Canada with his laptops and his thumb

25   drives.  All that he packed and all that he acknowledged were

1    his, including that Toshiba laptop and including those two

2    thumb drives.  He transported that collection from Jefferson

3    County into Ontario, Canada.

4             After the last witness has testified and after

5    all the evidence has been presented to you, we will stand

6    before you again and on behalf of the United States of

7    America, we will ask you to return a verdict of guilty on

8    those two counts, because he transported it, and he possessed

9    it.  Thank you.

10           THE COURT:  Okay, thank you, Counsel.  Defense

11   counsel, do you choose to make an opening statement?

12           MR. GOLDSMITH:  We do, your Honor.

13           THE COURT:  Okay, proceed when you're ready.

14           MR. GOLDSMITH:  Thank you.  May I approach?

15           THE COURT:  You may.

16           MR. GOLDSMITH:  Not to my knowledge.  Not to my

17   knowledge.  A phrase that the government has just told you it

18   is going to have witnesses testify Mr. Jenkins said on

19   May 24th, 2009.  Knowledge, as the government, as the court

20   has also explained briefly, and as you're going to hear

21   several instructions later on, the key element in the crimes

22   charged against Mr. Jenkins before this court that you as the

23   jury will be deciding.  The government meets its burden of

24   proof if it can establish all of the elements beyond a

25   reasonable doubt.

1            Ladies and gentlemen, I will reintroduce myself.

2    I'm Aaron Goldsmith, and I have the pleasure of representing

3    Joseph Jenkins in this trial today.  I want to thank you for

4    all of the time and attention that you spent already in this

5    process, and certainly for the time and attention that we

6    expect from you in the coming week.

7            As you've heard some discussion about, by the

8    government, by the court, you will hear more about the

9    presumption of innocence.  In a court of law in the United

10   States of America, an individual facing criminal charges is

11   presumed innocent until proven guilty beyond a reasonable

12   doubt.  Ladies and gentlemen, that means that right now,

13   4:30 p.m. on February 3rd, 2014, as we, the lawyers in this

14   case, have been presenting opening arguments to you, Joseph

15   Jenkins stands before you an innocent man.  He remains

16   innocent in this courtroom, unless you the jury find that the

17   government proves each and every element of the crimes

18   charged against him beyond a reasonable doubt.  And the court

19   at the close of this case will instruct you further, as to

20   what those -- that means legally, as to what those elements

21   are.

22           The government, as the court has also instructed

23   you, bears the burden of proof at this trial.  As the court

24   has discussed a bit during our jury selection process,

25   Mr. Jenkins bears absolutely no burden whatsoever.  But it's

1    that burden of proof that brings me into what I want you as

2    the jury to focus on at this trial.  As part of your role,

3    responsibilities, as your jobs as the jurors, seek out that

4    burden that the government is saddled with.  By that burden,

5    every witness that takes that stand, listen to them, watch

6    them, read any documents that the government may try to

7    introduce at this case.  Watch and look and examine every

8    piece of evidence that the government is going to try and

9    introduce in this case through those witnesses.  Listen to

10   what those witnesses saw, what they heard, what they did, and

11   scrutinize every one of those witnesses, every one of those

12   documents, every piece of evidence that comes into this

13   courtroom.  Does that evidence show, does that testimony show

14   Mr. Jenkins did what the government has to prove beyond a

15   reasonable doubt or what they claim he did?  Can they

16   establish all of the elements of their case with what those

17   witnesses and what that evidence is going to prove?

18         As we have also discussed, as the court, the

19   government, myself, this evidence is unpleasant, and it is

20   necessary to look past the unpleasantness of what that

21   evidence is, to scrutinize whether the government has proven

22   its case.  It is difficult and we all acknowledge that.  But

23   again, it must be looked past.  When you're looking at the

24   evidence, when you're watching the witnesses, when you are

25   listening to the witnesses, when you are weighing what those

1    witnesses say, when you scrutinize them, scrutinize them not

2    only for what they saw and heard and did, but for what they

3    did not see, did not hear, did not do in their capacity, what

4    difference was it in what they saw or did or were able to

5    achieve that is different from what another agent or

6    different authority was able to produce in this case.

7            I submit to you the evidence will show that there

8    are differences in what law enforcement agents and agencies

9    were able to produce in the investigation of this case.  That

10   will bear out at this trial, and that will bear into your

11   analysis of whether the government has met its burden.  Which

12   again, I submit to you, they will not be able to do.

13           The court provided an example to you not too long

14   ago in discussing the nature of circumstantial evidence.  The

15   paper boy delivering the paper every morning.  Paper on the

16   front porch, footsteps in the snow.  Time frame in which seen

17   before and there was nothing, only a short while later, there

18   was something.  Paper, the footprints, the snow that would

19   show the footprints.  In this particular case, I submit to

20   you that when the government finishes all of its witnesses,

21   finishes bringing in all of its evidence and testimony,

22   there's not going to be footprints, there's not going to be

23   the footprints of Mr. Joseph Jenkins.  Without any other

24   possibility of who those footprints were, who left them

25   there, when they left them there, and the circumstances that

1   they left those footprints, when the witness comes up and

2   testifies Mr. Joseph Jenkins said, not to my knowledge,

3   you'll remember that.  And you'll remember that you didn't

4   see the footsteps of Mr. Joseph Jenkins in the snow.  And at

5   the close of this case, I believe that after due deliberation

6   and scrutiny of every witness that you see and hear, scrutiny

7   of the evidence that you see, that you will find Mr. Jenkins

8   not guilty.  Thank you.

9          THE COURT:  Thank you, Counsel.  Ladies and

10  gentlemen, I have 4:38, eight minutes past my time to get you

11  home.  So I'm going to let you go home, we'll have our first

12  witness called tomorrow morning.  Please do not discuss the

13  case with anyone.  If anyone approaches you, tries to talk to

14  you about this case, I need to know about it immediately.  As

15  I indicated, please be in the jury room so we can start at

16  9:00, there will be some breakfast food in there for you.  Do

17  not view, read, or listen to anything to do with this case.

18  Should it be reported anywhere, put it aside, shut it off,

19  turn it off, whatever, and you can do all that stuff after

20  the case is over with but we do not want you improperly

21  influenced during the pendency of this trial.  Okay.  Have a

22  good night, travel safe, and we'll see you tomorrow morning.

23          (Jury Excused, 4:38 p.m.)

24          THE COURT:  Okay.  The jury's been excused for the

25  night.  Government will start at 9:00, have your first

1    witness here ready to go and we'll get started.  Is there

2    anything else we need to address before we adjourn for the

3    night?  Government, no?

4            MR. GOLDSMITH:  Just as a simple matter of

5    courtesy, I wonder if the government might tell me the first

6    few witnesses they plan on calling tomorrow.

7            THE COURT:  That's between you and them.  I'll let

8    you do it off the record after I've concluded proceedings

9    here and you can talk to them about it.  Whatever you guys

10   want to work out is fine with me.  Anything else,

11   Mr. Goldsmith?

12           MR. GOLDSMITH:  Not from defense, no.

13           THE COURT:  Okay.  We will see you tomorrow

14   morning.

15           THE CLERK:  Court's in recess.

16               (Court Adjourned, 4:39 p.m.)

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL REPORTER

2

3          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal Official

4  Realtime Court Reporter, in and for the United States

5  District Court for the Northern District of New York, DO

6  HEREBY CERTIFY that pursuant to Section 753, Title 28, United

7  States Code, that the foregoing is a true and correct

8  transcript of the stenographically reported proceedings held

9  in the above-entitled matter and that the transcript page

10  format is in conformance with the regulations of the Judicial

11  Conference of the United States.

12

13              Dated this 23rd day of May, 2014.

14

15

16              /S/ JODI L. HIBBARD
                 _____

17              JODI L. HIBBARD, RPR, CRR, CSR
                 Official U.S. Court Reporter
18

19

20

21

22

23

24

25