UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

-V-                                                    CASE NO. 11-CR-602 (GTS)

JOSEPH JENKINS,

                                    Defendant.
_____


**SENTENCING MEMORANDUM**



DATED:        September 2, 2014              Respectfully submitted,
              Syracuse, New York             OFFICE OF FEDERAL PUBLIC DEFENDER


                                             Lisa A. Peebles, Esq.
                                             Federal Public Defender
                                             Bar Roll No. 507041
                                             Office of the Federal Public Defender
                                             4 Clinton Square, 3rd Floor
                                             Syracuse. New York 13202
                                             (315) 701-0080

I.    <u>**PRELIMINARY STATEMENT**</u>

      Joseph Jenkins is scheduled for sentencing on September 25, 2014 before the Honorable Glenn T. Suddaby in Syracuse, New York.  A Presentence Investigation Report (hereinafter referred to as "PSR") was prepared by the United States Probation Department in anticipation of his sentencing.  According to the PSR, his total offense level is 35 and his Criminal History Category is I, which results in a guideline imprisonment range of 168 to 210 months.  Mr. Jenkins has raised his objections to the factual contents contained in the PSR, which are more fully set forth below.

      The Supreme Court's decision in *United States v. Booker, 543 U.S. 220(2005)* and *United States v. Fan-Fan*, 125 S.Ct. 738 (2005), held that the guidelines are only advisory.  *See* 18 U.S.C. § 3553 (a)(4).  In determining a sentence, a Court must not only consider guideline calculations, but also equally take into account all other statutory concerns listed in 18 U.S.C. § 3553 (a)(2),  as well as, the Defendant' unique circumstances.  *See* § 3553 (a) (Supp. 2004).

      The Sentencing Reform Act provides, in part, that:

The Court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in Paragraph (2) of this subsection.  The Court, in determining the particular sentence to be imposed shall consider:

     i.    The nature and circumstances of the offense and the history and characteristics of the defendant; [and]
    ii.    The need for the sentence imposed;
         (1)    To reflect the seriousness of the offense, to promote respect for the law, and to provide just  punishment for the offense;
         (2)    To attend adequate deterrence to criminal conduct;
         (3)    To protect the public from further crimes of the defendant; and
         (4)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a).

The defense is asking this Court to depart below the advisory range and impose a non-guideline sentence.  A careful consideration of the totality of relevant circumstances surrounding the facts of the present case should lead this Court to conclude that such a sentence is warranted.

## II.  OFFENDER CHARACTERISTICS/OFFENSE CONDUCT

Joseph Jenkins is 44 years old and has no criminal history.  He is an electrician by trade and had operated his own business for more than 20 years.  Up until his arrest for this offense, he was a very supportive loving son and responsible employer.  Everything changed on May 24, 2009 when he was arrested at the Canadian border for possession of child pornography and his life was turned upside down.  For the past 5 years, he has struggled with the emotional toll his arrest has taken on his elderly parents.  He has been in local custody for the past 3 years during the pendency of his federal prosecution and he has lost virtually everything he acquired through his hard work and skill as an electrician.

It is undisputed that Mr. Jenkins has led a law abiding productive life and there is nothing in his history that would indicate he is in any way a danger to the community.  In fact, possession of child pornography is the least serious of the crimes on the continuum of conduct-from possession to distribution to production to predatory abuse-that exploits children.  A person who possesses child pornography is considerably less culpable than one who produces or distributes the exploitive materials and is a marginal player in the overall child exploitation scheme.  Significantly, there is no evidence to suggest that Mr. Jenkins shared or traded any images.  There is no proof of any type of list serve, peer to peer software nor was there any type of email correspondence.  No additional directories were set up and there was no organization whatsoever to the images found in the deleted temporary file directory.  The proof in this case is markedly different from a typical possessor of child pornography as the Toshiba Laptop only contained

four suspect child pornography multimedia files and all other suspect images were discovered in the System Volume Information[1] or thumbcache.[2]  *See* ICE Computer Examination Report at 2 [hereinafter "Exhibit A"].

Courts have found that an individual cannot be in possession of child pornography where the images were found in deleted temporary files without any indication that the individual knew the images would be automatically stored on the computer's hard drive.  The mere discovery of images on a defendant's temp folder[3] is insufficient to demonstrate possession.  *See United States v. Stuloch*, 308 F.3d 922 (8th Cir. 2002).  In addition, the Ninth Circuit held that for sentencing purposes, the defendant did not knowingly receive and possess child pornography images found in his computer's temporary internet files.  In reaching that holding, the Ninth Circuit explained,

> [W]here a Defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images.  To do so, turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control.

*See United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006).

Similar to the defendant in *Kuchinski*, the majority of Mr. Jenkins suspected images on the Toshiba were located in an area that was inaccessible to him unless advanced, purposeful steps were taken which only cyber-forensic experts or highly advanced users would be aware of, and not the average computer user.

---

[1] "System Volume Information" is a data storage within some Microsoft Windows operating systems that records restoration data, allowing users to revert a computer's state to a previous point in time in case of a major malfunction.  "The System Volume Information folder is a *hidden system folder* that the System Restore tool uses to store its information and restore points."  *See* How to gain access to the System Volume Information folder, Microsoft Corporation, May 22, 2013, *available at* <http://support.microsoft.com/kb/309531 >(emphasis added)

[2] "Cache" is data automatically stored within a computer for future use enabling the system to load certain files, webpages, or other data faster.

[3] A "temp folder" contains temporary duplicates of any open files.  Any changes made to the file are stored in the duplicate copy.  When a user saves the file, the changes made to the duplicate are applied to the original file.

> "By default, the user can't access folders and files below `\System Volume Information` using the [Windows] Explorer interface. This is true even if the user has administrative rights and the hidden/system files are set to visible. This condition *makes it difficult for the average user to access, manipulate, or delete these files*[.]"

> Steven Anson et al, *Mastering Windows Network Forensics and Investigation* 278 (2012) (emphasis added).

Even if Mr. Jenkins were able to access the System Volume Information or had the knowledge to do so, he would still be unable to view files contained therein.[4] Accessing the files contained in the System Volume Information requires either extensive knowledge of Windows' command prompt (cmd.exe) or third-party programs generally used in computer forensic analysis, neither of which Mr. Jenkins has. *Id*. at 286. Mr. Jenkins therefore lacked "access to and control over" the majority of the 594 files found on the Toshiba laptop.

Furthermore, there is a significant discrepancy in the number of images found on Mr. Jenkins' Toshiba computer. *Compare* Exhibit A at 2 *with* Ontario Police Ct. Presentation, *Regina v. Jenkins* at 3-4 [hereinafter, "Exhibit B"]. Upon his arrest in Canada, Mr. Jenkins' computers were seized and analyzed by computer forensics experts with the Ontario Provincial Police. Their analysis revealed that only 5 child pornography images were found in the Toshiba's System Volume Information folder, and were categorized as inaccessible. Exhibit B at 4; *see also* Michael Harrington Summary of Findings re Preliminary Analysis of JENKINS Computers and USB Devices at 2, 6 [hereinafter, "Exhibit C"]. Additionally, the report states, "*no classified child pornographic pictures* were found in live files." Exhibit C at 2 (emphasis added). This is in sharp contrast to ICE's analysis which found over 594 files containing child pornography "the majority of these files were found in System Volume Information […] or in

---

[4] In Windows Vista, the System Volume Information folder houses volume shadow copies that take a snapshot of the whole volume. "Every file that has changed from the last time a snapshot was taken gets captured in the volume shadow copy[.]" *Id*. at 284. Shadow co[ies

thumbcache[.]"  Exhibit A at 2.  The ICE report also found a folder called "New Folder (2)" on
the desktop of the Toshiba, where the Ontario Police's report found no child pornography in the
computer's "live files."  *Compare* ICE Supplemental Examination Report at 1-4 [hereinafter,
"Exhibit D"] *with* Exhibit C at 2.

In addition, some courts have held that possession of child pornography is a lesser-
included offense of transportation of child pornography and therefore "the Double Jeopardy
Clause prohibits a defendant from being convicted for both possession and transportation of the
same images of child pornography."  *United States v. Kennedy*, No. 08–CR–00354–RAJ (W.D.
Wash. 2008) *aff'd*, 643 F.3d 1251 (9th Cir. 2011).  Like the defendant in *Kennedy*, Mr. Jenkins
was convicted of both possession and transportation of child pornography.  Here, investigators
found some images on the Toshiba laptop that were an "exact match" for files contained in both
USB drives.  *See* Exhibit D at 4.  Mr. Jenkins contends that since he was convicted of both
possessing and transporting the same images, and as some Courts have reasoned, possession is a
lesser included offense of transportation, sentencing him for both charges would run afoul of the
Double Jeopardy Clause.

Additionally, as this Court is aware, Mr. Jenkins was originally charged and indicted in
Canada for the same offense.  He was represented by Attorney Steven J. Edgley who advised
Jenkins that he had three options: plead guilty and face a minimum of 1 year in jail; proceed to
trial or simply not return to Canada in which case there would be a bench warrant issued for his
arrest, Canada-wide and if he ever tried to return to Canada he would be subject to arrest.
Jenkins was also informed of a plea offer from the crown which required a plea of guilty to
Section 163.1(3) and a promise of 15 months incarceration, 2 years probation, a DNA order,
compliance with SOIRA and forfeiture of his property.   Unfortunately, Jenkins choose option 3

as presented by this attorney and now faces a sentence 10x greater than that proposed by the Canadian Crown. This severe consequence for failing to appear in Canada was never conveyed to Mr. Jenkins by his attorney and had he known he undoubtedly would have appeared in Canada.

III.   **SENTENCING GUIDELINES ENHANCEMENTS RESULTS IN A GUIDELINE RANGE THAT IS INCOMPATIBLE WITH § 3553(A) FACTORS**

In light of *Booker*, many of the sentencing enhancements set forth in U.S.S.G. § 2G2.2 are now being rejected by many Federal Courts.  This is because the sentencing enhancements used to achieve the advisory guideline range under § 2G2.2 are not the product of any careful study or empirical data.  The Sentencing Commission has the capacity Courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.  *Kimbrough v. United States*, 552 U.S. 85, 109 (2007; *see also Gall v. United States*,  552 U.S. 38, 46 (2007) (noting that even though the Guidelines are advisory rather than mandatory, they are [mostly] … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.

When Guidelines are not based on an empirical approach, but are instead guided by statutory directives, such as § 2G2.2 enhancements, a Court is not presented with the ordinary case in which the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.  *See e.g., Kimbrough*, 552 U.S. at 109 (quoting *Rita*, 551 U.S. at 350); *see also Gall*, 552 U.S. at 46 n. 2 (noting that not all Guidelines are tied to empirical evidence).  In these cases, it is not an abuse of discretion for a District Court to conclude when sentencing a particular defendant that application of the guideline yields a sentence greater than necessary to achieve § 3553(a)'s purposes even in a min-run case.  *Kimbrough*, 552 U.S. at 109.

In 2013, the Sentencing Commission published a report on the child pornography guidelines. *See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012)* [hereinafter, "C.P. Report"]. In its report, the Commission stated, "the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." C.P. Report at ii.[5]

In *United States v. Dorvee*, a defendant pled guilty to distribution of child pornography and sentenced to a term of 240 months, the statutory maximum. *United States v. Dorvee*, 616 F.3d 174, 178 (2d Cir. 2010). The Sentencing Court appeared to be "convinced that [the defendant] was a 'pedophile' likely to engage in sexual conduct with a minor." *Id*. at 183. In vacating the sentence, the Second Circuit found and identified "certain serious flaws" in § 2G2.2. *Id*. at 182. Specifically, the Court found that applying enhancements that are inherent to the crime and, consequently, apply to the vast majority of defendants, such as § 2G2.2 enhancements, "eviscerates the fundamental statutory requirement in § 3553(a)." *Id*. at 187. *Dorvee* encouraged District Judges to recognize their broad discretion in sentencing an offender looped into the § 2G2.2 guideline, calling it an eccentric guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results. *Id*. at 188. Similarly, in *United States v. Tutty*, the Second Circuit reversed a sentence that followed § 2G2.2 enhancements resulting in a sentence of 168 months for a first time offender. *United States v. Tutty*, 612 F.3d 128, 129-130 (2nd Cir. 2010). The District Court failed to recognize its authority to depart from the guideline range of imprisonment based on the policy considerations. *Id*. at 129.

---

[5] As a result of recent changes in internet technology "four of the six sentencing enhancements in § 2G2.2, those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels, now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability." *C.P. Report at iii*.

Multiple enhancements were applied to Mr. Jenkins' offense that adjusted his total offense level upwards as follows:

1. Two levels for material involving children under the age of 12, pursuant to § 2G2.2(b)(2) (PSR ¶ 23);

2. Four levels for material involving sado-masochistic images, pursuant to § 2G2.2(b)(4) (PSR ¶ 24);

3. Two levels for use of a computer, pursuant to § 2G2.2(b)(6) (PSR ¶ 25); and

4. Five levels for more than 600 images, pursuant to § 2G2.2(b)(7) (PSR ¶ 26).

These enhancements were addressed in both *Dorvee* and *Tutty*, recognizing that they apply in virtually every case.  *Dorvee*, 604 F.3d at 96; *Tutty*, 612 F.3d at 132.  The Sentencing Commission designates possession of child pornography at a base offense level of 22, lower than the base offense level for other serious crimes, such as production of child pornography, which has a base offense level of 32.  However, applying the § 2G2.2 sentencing enhancements, which the Court in *Dorvee* and *Tutty* found worrisome, raise Jenkins' total offense level to 35, punishing him more severely than a defendant with higher culpability.

## IV.  LOW RISK OF RECIDIVISM AND  LACK OF DANGER TO THE COMMUNITY

The United States Sentencing Commission has expressed the "likelihood of recidivism and future criminal behavior must be considered" to protect the public.  U.S. SENTENCING GUIDELINES MANUAL, Chapter Four, Introductory Commentary.  The Commission has found that offenders without prior arrests have the lowest recidivism rate of all other offenders. *See* U.S. Sentencing Commission, *Recidivism and the "First Offender"* 13-14 (May 2004) [hereinafter "Recidivism Report"].[6]  Courts have similarly reasoned that incarceration would

---

[6] Recidivism rate for defendants with no prior arrests is 6.8%.  *See Recidivism and the "First Offender"*, 14 available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.  However, the re-conviction recidivism rate for these

have a greater significance for a defendant with no incarceration history.  *See United States v. Baker*, 445 F.3d 987 (7th Cir. 2006).  In *Baker*, the Seventh Circuit affirmed a below guideline sentence for a possessor of child pornography where the lower court took into account the defendant's lack of criminal history, [and] his relative young age."[7]  *Baker* at 992.  The Court found "consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for "just punishment,' and 'adequate deterrence[.]'"  Id. (quoting 18 U.S.C. § 3553(a)(2)(A)(B)).

Joseph Jenkins has no criminal history and a criminal history score of zero.  (PSR ¶ 37). As per the Sentencing Commission, these conditions give him the lowest rate of recidivism.  *See Recidivism Report* at 14.

In this particular case, a guideline sentence is not necessary to protect the public from further crimes of the defendant.  The defendant submits that a non-guideline sentence would "afford adequate deterrence to criminal conduct."  *See* 18 U.S.C. § 3553(a)(2)(b)(c).

## V.  RESTITUTION REQUEST

According to the PSR, the government intends to submit two requests for restitution and possibly three.  However, defense counsel has not received any such requests to date and would therefore object based upon the government's failure to provide any documentation in support of such claims.   In addition, there is no proof that Jenkins knowingly possessed images of the victims identified in the PSR, specifically, Vicky, L.S. or Margaret. While Jenkins was found guilty of transportation of child pornography and possession of child pornography in violation of 18 U.S.C. Section 2252A(a)(1) and 18 U.S.C. Section 2252A(a)(5) respectively, he was not

---

offenders is 2.5%.  *Id.*  Reconviction recidivism rates "limit[] recidivism to the first reconviction during the two year follow-up period."  *Id.* at 13.

[7] Additionally, the Court noted as significant, "the District Court's finding that a prison term would mean more to [the defendant] than to a defendant who had previously been imprisoned."  *Baker* at 992.

charged with and he was not found guilty of knowingly transporting or receiving any particular images. The indictment merely alleged that Jenkins transported a Toshiba laptop computer which contained one or more graphic image files and multimedia files containing images of a minor and minors engaged in sexually explicit conduct. In addition, the indictment alleged that he possessed two USB thumb drives containing one or more image files and multimedia files containing images of a minor and minors engaged in sexually explicit conduct. Significantly, the majority of the suspect images on the Toshiba were located in an area that was inaccessible to Jenkins unless advanced, purposeful steps were taken which only cyber-forensic experts or highly advanced users would be aware of, and not an average computer user.

Therefore, while Vicky, L.S. and Margaret are undoubtedly child pornography victims in general, in the context of this case they can only be deemed  "victims" if Jenkins knowingly possessed or transported their images.

## VI.    FINE

Jenkins did not complete a financial affidavit because he is currently charged with perjury in this court based upon allegations surrounding his finances. He is therefore invoking his right to remain silent under the Fifth Amendment.

## VII.    CONCLUSION

The recommended guideline range is excessive in light of Mr. Jenkins' exemplary work history, lack of criminal history and the nature of his offense. The defense submits that a downward departure is warranted in this case particularly because of the low risk of recidivism. We respectfully request that this Court impose the minimum sentence permitted by law. Such a sentence in this case would be sufficient, but not greater than necessary, to achieve the statutory

purposes of punishment, as required by 18 U.S.C. § 3553(a) and in light of *United States v. Booker*, 125 S.Ct. 738 (2005).

DATED:        September 2, 2014              */s/*

                                            LISA A. PEEBLES, ESQ.
                                            Federal Public Defender
                                            Bar Roll No. 507041
                                            OFFICE OF FEDERAL PUBLIC DEFENDER
                                            4 Clinton Square, 3rd Floor
                                            Syracuse, New York   13202
                                            (315) 701-0080

cc:     Tamara Thomson, Esq., AUSA
        Janna Kulakowski, USPO
        Joseph Jenkins