IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,

v.

JOSEPH JENKINS,

        Defendant.

Criminal Action No.
11-CR-602 (GTS)

GOVERNMENT'S SUPPLEMENTAL
SENTENCING MEMORANDUM ADDRESSING
RESTITUTION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its supplemental sentencing memorandum addressing restitution moving the Court to order restitution to the following victims, in the following amounts as part of the defendant's sentence pursuant to Title 18, United States Code, Section 2259:

- an amount no less than $3,000 to the victim depicted in the Vicky series

- an amount no less than $3,000 to the victim, L.S., depicted in the Jan_Feb series

- an amount no less than $3,000 to the victim depicted in the Cindy series

- an amount no less than $3,000 to the victim "Margaret" depicted in the Angela series.

Each victim has indisputably suffered, and continues to suffer, harm from the continued trafficking of their images. Therefore, the Court should award restitution to each victim based upon the defendant's relative role in the causal process that underlies their general losses.

1

**I**

**RESTITUTION GUIDANCE IN *PAROLINE v. UNITED STATES***

On April 23, 2014, the Supreme Court decided *Paroline v. United States*, 134 S.Ct. 1710 (2014), and set forth a framework for determining restitution awards in child pornography cases. In *Paroline*, the Court endorsed the government's reading of 18 U.S.C. § 2259, and determined that district courts possess broad discretion to order restitution awards to victims of child sexual exploitation, based on the defendant's relative role in the causal process that underlies the victim's general losses. *Id.* at 1727.

In *Paroline*, the Supreme Court held that all six categories of losses in Section 2259 (b)(3) require a showing of "proximate causation," which has two components: a factual, causal connection between the offense and the injury (cause-in-fact) and a limitation on recovery for remote damages (proximate cause). *Id.* at 1719.   Paroline was convicted of possessing child pornography, including two images of "Amy," the victim in a widely-distributed series of child pornography images.   *Id.* at 1717. Amy sought approximately $3.3 million in restitution for counseling, treatment and lost wages. *Id.* at 1718.  Paroline contended, and the district court agreed, that Amy could not show that any of her losses were directly attributable to Paroline's offense and that she would not have incurred them had he never seen her pictures. *Id.*   The district court accordingly held that an award of restitution was not appropriate and awarded no restitution to Amy. *Id.*   Amy petitioned for a *writ of mandamus* pursuant to 18 U.S.C. § 3771 (d)(3), arguing that the five enumerated categories of losses in Section 2259(b)(3) contain no proximate cause requirement, and that Paroline was required by statute to pay her for the full amount of her losses. *Id.*  The en banc Fifth Circuit agreed, holding that Paroline should be held liable, jointly and severally, for the full $3.3 million. *Id.*

The Supreme Court rejected the holdings of both lower courts.  Instead, the Court found that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general [aggregate] losses." *Id.* at 1727.  The Court held that the statute requires proximate cause for all six of the statute's loss categories (including, for example, medical and counseling expenses) and not only for the catchall category of "any other losses suffered by the victim as a proximate result of the offense."  *See* 18 U.S.C. § 2259(b)(3)(F); 134 S. Ct. at 1720; *id.* at 1731 (Roberts, C.J., dissenting); *id.* at 1735-36 (Sotomayor, J., dissenting).

The Court also held that proximate causation was not at issue on the facts of Paroline because Amy's losses are of the type that one should expect a child-pornography victim to suffer—they are both foreseeable results and within the scope of the risk created by child pornography production, distribution, and possession. *Id.* at 1722 (op. of the Court); id. at 1731 (Roberts, C.J., dissenting); id. at 1736 (Sotomayor, J., dissenting).

As for cause-in-fact, recognizing that child-pornography victims' injuries result from an "atypical causal process," the Court rejected the traditional but-for causation standard advocated by Paroline. Id. at 1722 (op. of the Court).[1] Instead, the Court in essence adopted the government's aggregate-causation theory, based on tort law, that when multiple causes combine to produce an event and no single cause is either necessary or sufficient, each cause can still be said to be one cause-in-fact of the event.  *Id.* at 1723-27; *see also* 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 27, p. 376 (2005); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 268 (5th ed. 1984).  This

---

[1] The Court's interpretation of the appropriate cause-in-fact standard abrogates precedent in the Second Circuit.  *See United States v. Aumais*, 656 F.3d 147, 154-55 (2d Cir. 2011), to the extent the court required "but for" causation.

alternative approach to causation is appropriate "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry." *Paroline* at 1727.

Turning to how much each defendant should pay, the Court rejected Amy's contention that every offender who possessed her images should be liable for the entire amount of her aggregate losses. *Id.* at 1724.  Although Section 3664(h) provides for joint and several liability, the Court noted that this provision applies only in cases where multiple defendants are charged in the same indictment. *See id.* at 1728; *id.* at 1731 n.1 (Roberts, C.J, dissenting). In addition, the Court determined that Amy's approach would require defendants to pay for the harm caused by others.  *Id.* at 1724 (op. of the Court).  This would both raise fairness concerns under the Eighth Amendment and frustrate the "punitive purposes" of restitution *(i.e.*, forcing defendants to confront the real harm their crimes have caused) because the victim's losses could be paid in full by a small number of defendants, allowing others to avoid restitution. *Id.* at 1726-27.  The Court also recognized that contribution is unavailable in this type of case (because there is no federal common law right of contribution and no statute provides for such a cause of action) and that this void increases the harshness of Amy's proposed "pay everything" rule.  *Id.* at 1725.  Instead, the Court concluded that defendants like Paroline should be required to pay part of what the Court called Amy's "general" losses, that is, all the losses caused by the distribution, receipt, and possession of her images. *Id.* at 1722. The size of that portion should be determined by the district court, in the exercise of its discretion. *Id.* at 1728.

The Court repeatedly emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts will have to exercise "discretion and sound

judgment" in fashioning awards. *Id.* Courts may begin their calculations by determining "the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses…ii)." *Id.* Courts may then consider a variety of factors, which "could include": (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future [defendants]"; (3) "any available and reasonably reliable estimate of the broader number of offenders"; (4) whether the defendant distributed the images; (5) whether he contributed to their original production; (6) how many images he possessed; and (7) "other facts relevant to the defendant's relative causal role." *Id.* The Court also noted that the government could "inform the district courts of the restitution sought and ordered in other cases." Using these "rough guideposts," courts should determine restitution orders that are neither "severe" nor "trivial." *Id.* The Court thus vacated the en banc Fifth Circuit's contrary holding, *In re Amy Unknown,* 701 F.3d 749, 752 (5th Cir. 2012), and remanded the case for further proceedings.

## II.

## EACH VICTIM IS ENTITLED TO RESTITUTION POST-*PAROLINE*

For purposes of determining restitution in this case, a "victim" means "the individual harmed as a result of a commission of a crime" under Chapter 110 of Title 18, which includes defendant's crimes. *See* 18 U.S.C. § 2259(c).

As noted in the government's previous sentencing memorandum, the National Center for Missing and Exploited Children (NCMEC)[2] identified videos and images of: the victim depicted in the Vicky series; the victim L.S., depicted in the Jan-Feb series; the victim depicted in the

---

[2] NCMEC is a national clearinghouse that gathers information about missing and sexually exploited children for law enforcement use. A copy of the NCMEC report is available for inspection upon request.

Cindy series; and the victim "Margaret" depicted in the Angela series, from the defendant's collection that he transported and possessed on May 24, 2009, within their database of actual children previously identified by law enforcement officials in numerous different investigations across the United States and abroad.  *See* Gov't Sent. Memo., Dkt. 178.  NCMEC identified three video files of "Vicky" (with one video having been found on the 8 GB USB thumb drive and two videos having been found on the 4GB USB thumb drive[3]); three image files of Jan_Feb (that were found on the 4 GB thumb drive); one image file of "Cindy" (found on the 4 GB thumb drive); and one image of Angela (found on the Toshiba laptop)[4].

Each victim seeking restitution is a victim of the defendant's criminal conduct and is eligible for restitution pursuant to 18 U.S.C. § 2259(b)(3).  Each victim has demonstrated that they have outstanding losses caused by the defendant and the continued trafficking of their images and videos.  The materials submitted in this case, including the restitution claims and the

---

[3] During the trial, there was testimony that the CBSA Officers viewed one of the "Vicky" videos from a thumb drive.  A condensed version of the Vicky video was played for the jury.

[4] A copy of the forensic report noting the locations of the images and videos on the three pieces of electronic media is available for review upon the Court's request.  The defendant argues that "the defendant was not charged with and he was not found guilty of knowingly transporting or receiving any particular images."  *See* Def. Sent. Memo., Dkt. 175, page 10-11.  The defendant was charged with transporting the Toshiba laptop that contained images and videos of child pornography, and with possessing the 8 GB USB and 4GB USB thumb drives that contained images and videos of child pornography.  Those images and videos were received into evidence, and the defendant was convicted of transporting and possessing the media containing the videos and images received into evidence.  The defendant also argues that "[s]ignificantly, the majority of the suspect images on the Toshiba were located in an area that was inaccessible to Jenkins unless advanced, purposeful steps were taken which only cyber-forensic experts or highly advanced users would be aware of, and not an average computer user."  This argument would only apply to the victim Angela, as she is the only victim whose sole image was found in the system volume information on the Toshiba laptop.  There was significant testimony regarding the system volume information and its accessibility.  The jury's verdict demonstrates that they were satisfied that the government proved, beyond a reasonable doubt, that the defendant transported the Toshiba laptop that contained both video and image files, including Angela's image file.

exhibits filed under seal, are sufficient for demonstrating proximate cause[5].   Each victim is aware that new defendants are frequently identified, and every person who downloads, possesses, receives, and distributes their image presents an additional harm to them.  As *Paroline* acknowledged, "the victim suffers continuing and grevious harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline,* 134 S.Ct. at 1726.   Because defendant's conduct is a proximate cause of additional losses to each victim, each victim is entitled to restitution.

Although each victim has documented her losses due to the continued trafficking of her images, it is "impossible to trace a particular amount of those losses [aside from attorney's fees] to the individual defendant by recourse to a more traditional causal inquiry." *Paroline,* 134 S. Ct. at 1727.  Thus, applying *Paroline*, the Court should order the defendant to pay restitution to each victim "in an amount that comports with [his] relative role in the causal process that underlies the victim's general losses." *Paroline*, 134 S. Ct. at 1727.

The first step in the analysis is to "determine the amount of the victim's losses caused by the continuing traffic in [her] images." *Paroline*, 134 S. Ct. at 1728.  The court must exclude the amount of this loss that was incurred prior to the offense date, in this case May 24, 2009.  Then the court should set an award of restitution in consideration of previously enumerated *Paroline* factors that bear on the relative causal significance of the defendant's conduct in producing those

---

[5] The defendant complains that defense counsel had not received notice of the restitution requests "to date." *See* Def. Sent. Memo, Dkt. 175, page 10.  Defendant Jenkins was provided a copy of the first Cindy restitution request on July 1, 2013, when Jenkins represented himself.  Moreover, attorney Aaron Goldsmith was provided a copy of the restitution request once he was retained to represent the defendant. On July 16, 2014, Lisa Peebles notified the government via e-mail that she was appointed to represent the defendant and in a responsive e-mail, the government advised of the multiple restitution requests.  Finally, the presentence investigation and report provided the defendant with notice and information about the multiple restitution claims.

losses.   Under that framework, the government will now address each individual victim's restitution claim.

### A.      VICKY'S RESTITUTION REQUEST

On March 5, 2014, Vicky submitted a restitution request seeking a total restitution award of $1,357,292.43.  *See* Gov't Sent. Memo., Dkt. 178. Ex. 1.  Vicky notes that she has received to date $856,417.13 in restitution payments[6], and therefore seeks the net amount of economic losses of $500,875.[7] *Id.*

Now, considering the *Paroline* factors:

a.      Past Criminal Defendants – Vicky is a widely-circulated series; numerous defendants, have contributed to her general losses.

b.      Reasonable Predictions of Future Offenders –Vicky's images are in large circulation; it would stand to reason that numerous future offenders are likely to be caught and convicted for crimes contributing to her general losses.  However, it is impossible to calculate how many offenders will be caught and convicted.

c.      Whether the Defendant Reproduced or Distributed Images – The defendant did not distribute or reproduce any images of Vicky.

d.      Whether the Defendant was Connected to Production – The defendant had no connection to the production of the images of Vicky.

e.      How Many Images the Defendant Possessed – The defendant possessed three

---

[6] What to request is up to the victim; however, this reduction is not required.  *See* 18 U.S.C. §3664(f)(1)(B)("[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.)

[7]  The expenses and losses submitted on behalf of Vicky begin in 2009, at or near the time of the offense, therefore, no adjustment has been made for expenses occurring before the defendant's criminal conduct.

videos of Vicky.  Based on the Sentencing Guidelines, one video is the equivalent of 75 images, U.S.S.G. § 2G2.2 app. note 4(B)(ii), so defendant's possession involved 225 distinct images.

For a victim, like Vicky, who has already received a substantial number of restitution awards, looking at those prior awards to find a benchmark amount might be the most useful factor.   In the end the amount of restitution must be reasonable; it may not be "trivial," "token," or "nominal." *Paroline*, 134 S. Ct. at 1727.    Vicky has had 502 prior orders of restitution entered.  *See* Dkt. 178, exhibit 1A.  The mode of the prior orders is $1000 (106 prior awards of $1000 each).  Of those prior orders, 80% of the prior awards fell within a range of $752-$10,000, when removing 10% from the low end and 10% from the high end of the awards (in an effort to reduce the trivial and excessive awards).  The mean of the 80% of the awards is $2,876.64[8].  If the court were to divide the total losses by the number of defendants previously ordered to pay restitution plus the defendant (in the instant matter 502 + Jenkins = 503) each defendant would be responsible for $21,418.08.   In the mine-run of possession cases, $3,000 per victim, per defendant is a reasonable floor and an award of that size would not be trivial, token, or nominal[9].  However, the defendant in this case possessed 3 videos which is the equivalent of 225 images.

Therefore, the Court should award "Vicky" an appropriate amount of restitution based on the defendant's relative role in the causal process that underlies her general losses, and that amount should be no less than $3,000 giving consideration to: the enumerated factors; the 80%

---

[8] In *Paroline*, the United States noted that 85% of the awards for Amy fell within a range of $1,000 to $50,000, with the average award in that range being approximately $5,400.  *See Paroline v. United States*, Appellate Brief, 2013 WL 6699432, at note 10 (noting that approximately 85% of Amy's restitution awards have been in the range of $1000 to $50,000 and the average award is approximately $5400.)

[9] This amount, $3,000 is roughly the mean of the awards granted to Amy before the Supreme Court issued its decision in *Paroline*.

apportionment analysis resulting in a mean award of $2,876.64; the apportionment analysis of the total loss divided by number of offenders (including the defendant) resulting in an award of $21,418.08 (but balanced against the factor that numerous future offenders are likely to be caught and convicted for crimes contributing to her general losses); and paying particular attention to the *Paroline* factor regarding number of images because the defendant had three videos of the victim, which is the equivalent of 225 images.

### B.  CALCULATING JAN_FEB'S RESTITUTION

Jan_Feb submitted documentation, dated March 11, 2014, showing that she has outstanding losses caused by the continuing traffic in her images.  Jan_Feb calculates these losses at $1,841,400 for medical care and treatment, expert witness fees of $7,500, and attorney's fees of approximately $5,000.  *See* Dkt. 178, ex. 2.  Jan_Feb seeks the imposition of an order of restitution of $150,000 from this defendant, and from each defendant that is found to have possessed, received, transported or distributed her images.

Considering the *Paroline* factors:

a.      Past Criminal Defendants – Jan_Feb is a widely-circulated series[10]; numerous defendants, have contributed to her general losses.

b.      Reasonable Predictions of Future Offenders –Jan_Feb's images are in large circulation; it would stand to reason that numerous future offenders are likely to be caught and convicted for crimes contributing to her general losses.  However, it is impossible to calculate how many offenders will be caught and convicted.

---

[10] Jan_Feb states that "[t]he Jan_Feb series is recognized by law enforcement authorities, unfortunately, as one of the most prolific and widely-traded images series via the Internet (sic)."  *See* Dkt. 178, exhibit 2, page 3.

c.      Whether the Defendant Reproduced or Distributed Images – The defendant did not distribute or reproduce any images of Jan_Feb.

d.      Whether the Defendant was Connected to Production – The defendant had no connection to the production of the images of Jan_Feb.

e.      How Many Images the Defendant Possessed – The defendant possessed three images of Jan_Feb.

Jan_Feb has already received 149 restitution awards; again, there is utility in looking at those prior awards to find a benchmark amount. *See* Dkt. 178, exhibit 2A.  The mode of the prior orders is $1,000 (47 prior awards of $1,000 each).  Of those prior orders, 80% of the prior awards fell within a range of $1,000-$10,000, when removing 10% from the low end and 10% from the high end of the awards (in an effort to reduce the trivial and excessive awards).  The mean of the awards in that range is $2,957.11.  If the court were to divide the total losses by the number of defendants previously ordered to pay restitution plus the defendant (in the instant matter 149 + Jenkins = 150) each defendant would be responsible for $17,991.80.  In the mine-run of possession cases, $3,000 per victim, per defendant is a reasonable floor and an award of that size would not be trivial, token, or nominal.

Therefore, the Court should award "Jan_Feb" an appropriate amount of restitution based on the defendant's relative role in the causal process that underlies her general losses, and that amount should be no less than $3,000 giving consideration to the enumerated factors and the 80% apportionment analysis resulting in a mean award of $2,957.11; but balancing the apportionment analysis resulting in the defendant having a $17,991.80 share of loss, with the fact that the defendant possessed three images of Jan_Feb.

## C.  CALCULATING CINDY'S RESTITUTION

Cindy submitted documentation, dated June 13, 2014, showing that she has outstanding losses caused by the continuing traffic in her images.   Cindy calculates these losses at $1,344,963.70.  *See* Dkt. 178, ex. 3.

Considering the *Paroline* factors:

a.      Past Criminal Defendants – Cindy is a widely-circulated series; numerous defendants, have contributed to her general losses.

b.      Reasonable Predictions of Future Offenders –Cindy's images are in large circulation; it would stand to reason that numerous future offenders are likely to be caught and convicted for crimes contributing to her general losses.  However, it is impossible to calculate how many offenders will be caught and convicted.

c.      Whether the Defendant Reproduced or Distributed Images – The defendant did not distribute or reproduce any images of Cindy.

d.      Whether the Defendant was Connected to Production – The defendant had no connection to the production of the images of Cindy.

e.      How Many Images the Defendant Possessed – The defendant possessed one image of Cindy.

Cindy has already received 123 restitution awards.  *See* Dkt. 178, exhibit 3A.  The mode of the prior orders is $1,000 (39 prior awards of $1,000 each).  Of those prior orders, 80% of the prior awards fell within a range of $1,000-$8,000, when removing 10% from the low end and 10% from the high end of the awards.  The mean of the awards in that range is $2,301.52.  If the court were to divide the total losses by the number of defendants previously ordered to pay restitution plus the defendant (in the instant matter 123 + Jenkins = 124) each defendant would be responsible for $5,035.33.  In the mine-run of possession cases, $3,000 per victim, per

defendant is a reasonable floor and an award of that size would not be trivial, token, or nominal.

Therefore, the Court should award Cindy an appropriate amount of restitution based on the defendant's relative role in the causal process that underlies her general losses, and that amount should be no less than $3,000 giving consideration to the enumerated factors and the 80% apportionment analysis resulting in a mean award of $2,301.52; but balancing the apportionment analysis resulting in the defendant having a $5,035.33 share of loss, with the fact that the defendant possessed one image of Cindy.

## D.  CALCULATING ANGELA'S RESTITUTION

Angela submitted a restitution request, dated May 21, 2014, seeking $12,100 to 16,520.20[11] as the defendant's share of her total losses.  Angela calculates the total covered losses as $366,000 to $587,000, or double the amount of the total covered losses for the next 20 years of $183,000 to $293,000 losses.  *See* Gov't Sent. Memo., Dkt. 178. Ex. 4.

Considering the *Paroline* factors:

a.      Past Criminal Defendants – Angela describes drowning in hundreds of victim notification letters and emails. *See* Gov't Sent. Memo., Dkt. 178. Ex. 4, victim impact statement dated February 19, 2014.  Angela also states that she has received zero restitution from any of the over 3,000 pedophiles who have possession of her images.  *See* Dkt. 178. Ex. 4, victim impact statement/financial crime form, dated February 18, 2014, page 3 of 3.

b.      Reasonable Predictions of Future Offenders – It is impossible to calculate how many offenders will be caught and convicted.

---

[11] This figure is derived from the May 21, 2014 cover letter to the restitution request.  The attached affidavit of Marc C. Lenahan requests the range for the order of restitution be an amount between $11,980 to $16,400.

     c.      Whether the Defendant Reproduced or Distributed Images – The defendant did not distribute or reproduce any images of Angela.

     d.      Whether the Defendant was Connected to Production – The defendant had no connection to the production of the images of Angela.

     e.      How Many Images the Defendant Possessed – The defendant possessed one image of Angela.

Angela only recently began requesting restitution and therefore there are only 17 prior restitution awards.  *See* Dkt. 178, exhibit 4A.  The mode of the prior orders is $1,000 (9 prior awards of $1,000 each).  Of those prior orders, the range is $850-$5,000[12].  The mean of the 17 awards is $1,711.76.  If the court were to divide the total losses by the number of defendants previously ordered to pay restitution plus the defendant (in the instant matter 17 + Jenkins = 18) each defendant would be responsible for between $20,333 and $32,611.  In the mine-run of possession cases, $3,000 per victim, per defendant is a reasonable floor and an award of that size would not be trivial, token, or nominal.

Therefore, the Court should award Angela an appropriate amount of restitution based on the defendant's relative role in the causal process that underlies her general losses, and that amount should be no less than $3,000 giving consideration to: the enumerated factors, the 100% apportionment analysis resulting in a mean award of $1,711.76.52; but balancing the apportionment analysis resulting in the defendant having a share of the loss between $20,333 and $32,611, with the fact that the defendant possessed one image of Angela.  Moreover, the court should consider that Angela has not received any restitution to date as a basis to order no less

---

[12] Given the small amount of prior awards and that no award appeared too trivial or excessive the 80% calculation previously undertaken for the other three victims was not used.

than $3,000.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, the government recommends the Court order the defendant to pay restitution in an amount that comports with his relative role in the causal process that underlies each victim's general losses as enumerated herein.

Respectfully submitted,

Richard S. Hartunian
United States Attorney


By:     s/Tamara B. Thomson_____
Tamara B. Thomson
Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*****************************************

UNITED STATES OF AMERICA,

                                              Criminal Action No.

v.                                            11-CR-602 (GTS)

JOSEPH JENKINS,

          Defendant.

*****************************************

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2014, I electronically filed the **SUPPLEMENTAL SENTENCING MEMORANDUM OF THE UNITED STATES** with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing. In addition, I hereby certify that I have e-mailed the document to the following CM/ECF participant:

                    Lisa Peebles, Esq.


                    Tamara B. Thomson

16