```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                              5:11-CR-602

JOSEPH VINCENT JENKINS,

                      Defendant.
-------------------------------------------x
```

Transcript of a Digitally-Recorded Detention Hearing held on October 6, 2011, at the James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York, the HONORABLE ANDREW T. BAXTER, United States Magistrate Judge, Presiding.


A P P E A R A N C E S

```
For The Government: UNITED STATES ATTORNEY'S OFFICE
                    P.O. Box 7198
                    100 South Clinton Street
                    Syracuse, New York  13261-7198
                      BY:  TAMARA THOMSON, AUSA

For Defendant:      JEFFREY R. PARRY, ESQ.
                    Attorney at Law
                    7030 East Genesee Street
                    Fayetteville, New York  13066
```

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1           (Open Court, 3:59 p.m.)

2        MS. THOMSON:  Good afternoon, your Honor, Tamara
3 Thomson on behalf of the United States.

4        THE COURT:  Ms. Thomson.

5        MR. PARRY:  Good afternoon, Judge, Jeffrey Parry
6 for Mr. Jenkins.

7        THE COURT:  Mr. Parry.  Mr. Jenkins, as we
8 discussed, this is a detention hearing.  The purpose of this
9 hearing is to determine whether or not you should be released
10 pending further proceedings in this case.  Typically how it
11 happens is the government begins by proffering evidence which
12 it believes supports your detention pending trial and then
13 your attorney will have a chance to present evidence in your
14 behalf.  Okay?  You have any questions?  All right,
15 Ms. Thomson.

16        MS. THOMSON:  Thank you, your Honor.  I have
17 tendered to the court Exhibit Number 1 and Number 2,
18 documents I'd like the court to consider, handed a copy to
19 counsel.  The first two exhibits relate to the government's
20 position that the defendant is a significant risk of flight.

21        The way this case started was the defendant in 2009
22 was entering Canada from a port of entry in our district and
23 upon entering, the Canadians obtained from him his computer
24 media and did a review of the media and discovered there was
25 child pornography.  As a result of that, he was charged by

1   the Canadians, and the charges were going through the
2   Canadian court system.
3            Exhibit 1 reflects that the defendant failed to
4   appear for those proceedings and the court did issue a bench
5   warrant.  The document indicates that the warrant was issued
6   because the defendant failed to attend court on October 18,
7   2010 at 10 a.m. in courtroom number 3, a courtroom in Canada.
8   I did also speak to the Crown prosecutor who had the case and
9   confirmed that that was the status of the case, the defendant
10  failed to appear.
11           I also submitted for the court's review
12  Exhibit Number 2, a document obtained from the Ontario Police
13  which indicated the charges that the defendant was facing,
14  that is possession of pornography, importing pornography from
15  offense date of 5/24/09 and also listed some of the
16  conditions, that he was not to possess a firearm or weapon
17  and not attend Canada except for court or legal counsel.  He
18  also had conditions to not be with a child and others noted.
19  Certainly the defendant was made aware of obligations to
20  attend court appearances and that was confirmed again with
21  the Crown prosecutor.
22           THE COURT:  Do you -- is it your understanding that
23  he had some sort of an initial appearance and was released by
24  a court or he only was in contact with the police and then
25  was released pending court?

1           MS. THOMSON:  I did not ask that question, your
2  Honor, so I don't know.  I didn't ask the prosecutor that
3  question.
4           THE COURT:  Okay.
5           MS. THOMSON:  But what is before the court and
6  uncontroverted is that there is and there was a bench warrant
7  because this defendant did fail to appear in answering those
8  charges.  That is the basic thing that you're being asked to
9  consider today, is whether or not this defendant should be
10 released or whether he should be detained.  And I submit to
11 you based on this history, and it being quite recent history,
12 that this defendant has shown his attitude towards court
13 proceedings and that is that he will not attend.
14          Also concerning to the government besides the
15 warrant is this is a very serious offense, mandatory minimum
16 term of five years, it is appropriate for the court to
17 consider that, and because this case is in a different
18 posture than some of our other cases that come in on
19 complaint, this case, the computer forensic examination has
20 already been completed, so we have a better understanding of
21 where the Guidelines would fall in this case and it does
22 appear by my viewing and by my viewing with the expert who
23 did the analysis that there would be a 22 base offense level,
24 two levels added for prepubescent images, four levels added
25 for sadistic and masochistic conduct.  And I will tell the

1    court that I have viewed those images, there are images of
2    bondage, there are images of sadistic and masochistic
3    conduct.  Two levels would be added for a computer, and there
4    would be five levels added for the number of images which in
5    this case was over 3,000 images.  So it would be plus five
6    enhancement.  That puts him at a 35 which, with no credit for
7    acceptance of responsibility, on the low end, receiving a
8    sentence of 14 years under the Guidelines.  I assert to the
9    court that that's a significant reason for the defendant not
10   to appear, he's facing significant jail time for these
11   charges.
12          Also concerning to the government is the fact that
13   the defendant, in reading the pretrial services report, does
14   appear to be someone who has assets and has means to effect
15   leaving, in effect, you know, being able to provide for
16   himself to not come back to answer to these charges.  He has
17   $13,000 listed in his bank accounts and $28,000 worth of
18   assets that are noted with not as many liabilities.
19          Defendant also is -- owns his own business, so he
20   may have other assets pursuant to that business that haven't
21   been able to be found yet.
22          With regards to dangerousness to the community --
23          THE COURT:  Let me interject for just a second.  I
24   presume, although I don't know, that the penalties on the
25   Canadian charges would be significantly less serious than

1    these?
2              MS. THOMSON:  That's my understanding speaking with
3    the Crown prosecutor.  I did not review Canadian laws to find
4    out what their maximum penalties were.
5              With regards to the dangerousness, your Honor, I've
6    already gone into with the court a little bit on my
7    risk-of-flight analysis, the images the defendant was viewing
8    involved sadistic, masochistic conduct, very disturbing and
9    it causes me concern when I couple that with the fact that
10   his profession is a self-employed electrician which means
11   he's going into homes, he's going into places where there may
12   be children, there may be types of community that he's shown
13   an interest in by viewing this child pornography, homes that
14   he would enter would have no way of knowing his background,
15   his interest in viewing these images of children, who have no
16   way of making that decision of whether or not this is a
17   person they should leave in their home.  So that's great
18   concern to the government.  And it doesn't -- appears that
19   he's owned his business for the past 18 years, I see nothing
20   about other employees or -- it would appear to me he's the
21   person going into these houses and he's doing this work.
22             Lastly, your Honor, it is noted in the report that
23   there are some firearms in the residence that he's at.
24   Obviously any condition the court would impose, if the court
25   did consider his release, would encompass firearms but there

1   are some concerns that the family does have several weapons
2   in residences where the defendant could go to if he chose not
3   to comply with this court's order as he's shown in the past.
4              THE COURT:  Do you have any information as to why
5   he was traveling to Canada?
6              MS. THOMSON:  My understanding is that he was going
7   to Canada to go to a residence that's noted.
8              THE COURT:  The parents' residence in Quebec, okay.
9   All right.  Anything further?
10             MS. THOMSON:  No, your Honor.
11             THE COURT:  Mr. Parry?
12             MR. PARRY:  Thank you, Judge.  Your Honor, I'm
13  certainly not in a position to contest these documents, I
14  recognize them for what they are, I trust the U.S. Attorney
15  and I am sure they represent what she proposes that they
16  represent.  However, there is no evidence that he was even
17  aware of these proceedings, and I am very much concerning in
18  terms of the addressing the ramification of these documents
19  because very obviously they must be a violation of Canadian
20  law.  Now, having said that, Judge, my client lives in
21  Geneva, New York and has gone few places elsewhere in his
22  entire life.
23             As to the nature of the offense, we are looking at
24  allegations of child pornography.  Clinically speaking, there
25  is not necessarily a correlation between the possession of

1   child pornography and doing any overt acts to anyone.  There
2   is no accusation of pedophilia, there is no accusation or
3   allegations of any sort of physical assault or attempted rape
4   or even attempts to approach by my client, he simply has
5   photographs which may well, if we take the U.S. Attorney at
6   her word, which may well point to some sort of voyeurism, but
7   in terms of his psychological condition, it does not make him
8   a threat to anyone.
9           Now, granted, that he has his own business, and
10  granted, that he goes to people's houses, we are willing
11  certainly to remain -- for his release, we would certainly be
12  willing to acquiesce to some form of house arrest and I think
13  that's entirely appropriate under the circumstances.  It
14  appears to me, if we take all the allegations at face value,
15  your Honor, he's done nothing besides download things from a
16  computer and I don't want to make the acts unseemly, at worst
17  it's harmless to anyone except whoever is at the other end of
18  the computer.
19          THE COURT:  Anything further, Mr. Parry?
20          MR. PARRY:  Nothing further.
21          THE COURT:  Ms. Thomson, any response?
22          MS. THOMSON:  Your Honor, I just -- because I don't
23  want this standing on the record, I am sure the court will
24  consider whether there's a correlation between possession of
25  images and hands-on offenses.  The offense victim will

1   continue to be a victim long after this court appearance and
2   so I would ask the court not give any consideration for any
3   unmarked or unreceived reports that are -- stand for the
4   proposition offered by the defense.
5              THE COURT:  Very well.  All right.  I am prepared
6   to rule.  Presently before the court is the government's
7   motion for pretrial detention of the defendant Joseph
8   Jenkins.  A detention hearing was obviously held today during
9   which both the government and the defendant have the
10  opportunity to present evidence.  I am prepared to render a
11  decision based upon the proffers made by both parties, of the
12  exhibits presented by the government, the charging document,
13  the criminal complaint, and the pretrial services report.
14             The defendant has been charged by complaint with
15  transportation and possession of child pornography in
16  violation of 18 U.S.C. Section 2252A(a)(1) and (a)(5)(B).
17  The government bases its motion for detention on a section of
18  the Bail Reform Act that provides for a motion by the
19  government in a case that involves a crime of violence.  For
20  the purposes of the Bail Reform Act, a crime of violence is
21  defined in 18 U.S.C. Section 3156(a)(4)(C) to include felony
22  violations of chapters including 110 from Title 18.  Because
23  Section 2252A is contained in Chapter 110 of Title 18 in the
24  United States Code and is considered a crime of violence, the
25  government was permitted to move for detention based on both

1    danger to the community and risk of flight.
2            Additionally, the Bail Reform Act provides that,
3    subject to rebuttal by the defendant, it shall be presumed
4    that there are no conditions or combination of conditions
5    that shall ensure the person's return or safety of the
6    community if there was probable cause to believe that the
7    defendant has committed an offense involving a minor victim
8    under various sections of the law, including Section 2252A.
9            The filing of a valid criminal complaint will
10   suffice to establish required probable cause.  For that I
11   cite *United States v. Chimurenga*, 760 F.2d at 405 which is a
12   1985 Second Circuit case.  Based on the charging instrument
13   and the other evidence proffered by the government at this
14   hearing, the court finds there is probable cause to believe
15   that the defendant committed the charged offenses and that he
16   is therefore subject to the presumption contained in 18
17   U.S.C. Section 3142(e).
18           The defendant has the burden to rebut that
19   presumption; however, even if the defendant presents rebuttal
20   evidence, the presumption does not disappear completely but
21   continues to be weighed along with other factors.  The
22   government retains the burden of proving danger to the
23   community by clear and convincing evidence, and/or risk of
24   flight by a preponderance of the evidence.
25           The factors for the court to consider include

1   nature and characteristics of the offense charged, the
2   history and characteristics of the defendant, the weight of
3   the evidence against the defendant, and the nature and
4   seriousness of the risk to the community if the defendant
5   were to be released.  Those factors are set forth in Section
6   3142(g) of the bail statute.
7            I conclude that the defendant has not rebutted the
8   presumption in this case.  I find that the government has
9   sustained its burden of proof by clear and convincing
10  evidence that no condition or combination of conditions would
11  reasonably assure the defendant would not endanger others and
12  the community by his continued involvement with child
13  pornography related offenses.
14           I also conclude that the government has sustained
15  its burden to prove by a preponderance of the evidence that
16  no conditions of release or combinations of conditions would
17  reasonably assure the defendant's future appearance as
18  required.
19           I will consider in turn the statutory factors
20  supporting my decision.
21           First, with respect to the nature and the
22  characteristics of the offense charged, I note that the
23  defendant is charged not only with possession of child
24  pornography but attempting to transport child pornography
25  from the United States into Canada.  The purposes of

1    defendant's trip is unclear.  According to the pretrial
2    services report, his parents reside there during part of the
3    year which may explain his trip, may tend to negate the
4    possibility that the defendant was traveling to meet and
5    sexually abuse minors through the use of the child
6    pornography images he was carrying.  However, the
7    transportation charge does suggest that at a minimum,
8    defendant's penchant for child pornography is sufficiently
9    strong that he needs to carry images with him even on a
10   temporary trip away from his home.  That transportation
11   charge carries a mandatory minimum sentence of five years
12   imprisonment and the United States Sentencing Guideline range
13   that's much higher than that, all of which provides
14   substantial motivation for the defendant to flee to avoid
15   sentencing on these charges.
16            With respect to the history and characteristics of
17   the defendant, the defendant obviously has roots in Geneva,
18   New York although the home in which he lives is owned by his
19   parents and his business as a self-employed electrician seems
20   to provide fairly limited income.  He has no significant
21   criminal history before the instant offense and no apparent
22   substance abuse or mental health history; however, as noted
23   in the complaint, the defendant was originally charged in
24   Canada as a result of the conduct now charged in this case
25   and failed to appear for his trial in Ontario in

1    October 2010, resulting in issuance of a bench warrant.
2              While it is somewhat unclear, the circumstances
3    under which the defendant was released and the notice that he
4    received of this particular proceeding, I think it's fair to
5    conclude based on documents that the government has presented
6    and the fact that the Canadian court saw fit to issue a bench
7    warrant, that the defendant was aware of his obligations to
8    appear at proceedings in Canada and intentionally did not
9    appear at those proceedings.  The defendant's failure to
10   appear to face the charges in Canada strongly indicates that
11   he would be a substantial risk not to appear to face the
12   charges in this court.
13             While we don't have specific information about the
14   relative severity of the charges, I know based on my
15   experience in other cases that the criminal penalties in
16   Canada tend to be significantly less than the penalties in
17   this country, particularly with respect to federal penalties
18   for child exploitation offenses, so if the defendant was
19   going to flee to avoid the charges in Canada, he certainly
20   has much stronger incentive to do so in this case.
21             With respect to the weight of the evidence, the
22   complaint, and the prosecutor's proffer document that the
23   weight of the evidence against the defendant is very strong,
24   he was stopped by Canadian border officials entering the
25   country, that country from the United States in possession of

1  a laptop computer which he admitted was his and various other
2  electronic storage media.  Forensic examination of the
3  computer and storage media reveals more than 3800 images and
4  109 multimedia files of suspected child pornography, further
5  indicating that the defendant has a serious addiction to
6  child pornography.  The examples provided in the complaint
7  are clearly child pornography as defined in the statute.
8          In terms of the risk and seriousness, nature and
9  seriousness of the risk to the community, the possession of
10 child pornography in itself is a crime of violence and
11 presents obvious concerns regarding danger to children and
12 the community in general.  For that I cite *United States v.*
13 *Reiner*, R-e-i-n-e-r, 468 F.Supp. at 398 which is a 2006
14 District Court opinion from the Eastern District of New York.
15 Even in the absence of evidence of active sexual abuse of
16 children by a defendant, child pornography is "an insidious
17 offense that is dangerous to the entire community, not just
18 minors."  *United States v. Schenberger*, 498 F.Supp.2d at 744,
19 District of New Jersey 2007.
20         Although there are circumstances where bail is
21 appropriate for a defendant charged with child pornography
22 offenses, this is not such a case.  As noted, defendant's
23 conduct in this case suggests a strong addiction to child
24 pornography and his transportation of pornographic images
25 suggests that he may use it not only for personal viewing but

Case 5:11-cr-00602-GTS   Document 198   Filed 02/13/15   Page 15 of 18

15

1   in attempting to abuse actual minors.  That and the
2   defendant's failure to appear for his trial in Canada
3   convinces this court that he is not a suitable candidate for
4   release.
5         The court has considered whether any conditions of
6   release would adequately mitigate the risk of flight and the
7   danger posed by the defendant to the community and finds that
8   they would not.
9         Pretrial services has in some child pornography
10  cases structured strict conditions of release to try to
11  mitigate the risk that the defendant will continue his
12  involvement with pornography over the internet.  However,
13  given the proliferation of ways to access the internet, those
14  conditions are not adequate.  Given the nature of the risk to
15  children in the community posed by Mr. Jenkins, the quantity
16  of child pornography images possessed by Mr. Jenkins, the
17  severity of those images as described in this courtroom by
18  Assistant U.S. Attorney Thomson and his travel with those
19  images suggests he presents a greater danger to the community
20  than many child pornography defendants who confine their
21  activities to viewing a limited number of images at home.
22        As noted, Mr. Jenkins supports himself as an
23  electrician which frequently would bring him into family
24  homes of his customers possibly with minors.  While that
25  issue could be addressed by precluding him from exercising

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

1  his livelihood, I find that the other concerns are not
2  sufficient to consider his release.
3           Therefore, based on all the information presented
4  to the court today, it's ordered that the government's motion
5  for detention is granted.  I will sign a -- an order of
6  detention pending trial, which, among other things, specifies
7  the particular directions and conditions of the defendant's
8  confinement.  Mr. Parry, it only briefly alludes to the
9  government -- to the court's findings in this particular case
10 so if you decide after consulting with your client that you
11 want to appeal this decision to the District Court, I expect
12 that you'll need to order a transcript of this proceeding for
13 the benefit of the District Court.  Is there anything else?
14          MS. THOMSON:  No, your Honor.
15          THE COURT:  Mr. Parry?
16          MR. PARRY:  No.
17          THE COURT:  All right.  The defendant is remanded
18 to the custody of the United States Marshal pending further
19 proceedings in this court and court is adjourned.
20          Oh, yes, do you want us to set a preliminary
21 hearing?
22          MR. PARRY:  Your Honor, I think we should.
23          THE COURT:  All right.  He was first arrested on
24 Tuesday?  All right, so we want to set it by, what's two
25 weeks from Tuesday?  18th.  Why don't we say 1 p.m. on

1 Tuesday, October 18th for a prelim.
2 MR. PARRY: Thank you, Judge.
3 (Proceedings Adjourned, 4:21 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T I O N

1
2
3
4      I, JODI L. HIBBARD, RPR, CRR, CSR,
5  Official Court Reporter in and for the United States
6  District Court, Northern District of New York, DO
7  HEREBY CERTIFY that I have listened to and
8  transcribed the foregoing proceedings and that the
9  foregoing is a true and correct transcript thereof
10 to the best of my ability.
11
12
13
14
15
16
17
18                                    _____
19                                    JODI L. HIBBARD, RPR, CRR, CSR
                                      Official U.S. Court Reporter
20
21
22
23
24
25