UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,

                      Plaintiff,

vs.                                 11-CR-602

JOSEPH JENKINS,

                      Defendant.
---------------------------------------------------x

      Transcript of *SENTENCING* held on

November 12, 2014, at the James Hanley Federal Building,

100 South Clinton Street, Syracuse, New York,

the HONORABLE GLENN T. SUDDABY, Presiding.

                A P P E A R A N C E S

For Plaintiff:      OFFICE OF THE UNITED STATES ATTORNEY
                    100 South Clinton Street
                    James Hanley Federal Building
                    Syracuse, New York 13261
                      BY:  TAMARA THOMSON, Esq.
                          Assistant United States Attorney

For Defendant:      OFFICE OF THE FEDERAL PUBLIC DEFENDER
                    The Clinton Exchange - 3rd Floor
                    4 Clinton Square
                    Syracuse, New York 13202
                      BY:  LISA PEEBLES, ESQ.

US v. Jenkins – 11-CR-602

1          (Open court, 10:05 a.m.)

2          THE CLERK:  Case number 5:11-CR-602, United States

3   of America versus Joseph Vincent Jenkins.

4          Counsel, please note your appearance for the

5   record.

6          MS. THOMSON:  Good morning, your Honor, Tamara

7   Thomson and Gwen Carroll on behalf of the United States and

8   also in the courtroom is the case agent Chad Willard and the

9   Canadian case agent Detective Constable Kip Wohlert

10  (phonetic).

11         THE COURT:  Good morning.

12         MS. PEEBLES:  Good morning, your Honor, Lisa

13  Peebles appearing on behalf of Joseph Jenkins.  Mr. Jenkins

14  is also present.

15         THE COURT:  Good morning.

16         We're here for sentencing this morning.

17         Are counsel ready to proceed?

18         MS. THOMSON:  Yes, your Honor.

19         MS. PEEBLES:  Yes.

20         THE COURT:  Ms. Peebles, Mr. Jenkins submitted a

21  request this past week -- it was filed on November 5th --

22  concerning a new attorney.  I don't know if you had an

23  opportunity to discuss that with him before this morning.

24         MS. PEEBLES:  Well, Judge, I had an opportunity to

25  review the document and he and I had spoken at length on the

US v. Jenkins - 11-CR-602

1  phone prior to him filing that request.  And the indication

2  that I'm getting today is that Mr. Jenkins is not satisfied

3  with the submissions that I've put in on his behalf to this

4  point.  So I'll leave it up to the Court as to what the Court

5  would like to do.

6          I know Mr. Jenkins is objecting to much of the,

7  first and foremost, the special conditions of supervised

8  release and, in addition, much of what's contained in the

9  presentence report and his belief that the Court should

10  recuse itself from hearing the sentencing in this matter and

11  he filed a supplemental sentencing submission on

12  September 9th of 2014, which I believe has been docketed with

13  the Court.  I had an opportunity to review all those

14  submissions by Mr. Jenkins.

15          I have my own objections, to some degree, and I put

16  in documents on behalf of Mr. Jenkins but, as far as what the

17  Court intends to do this morning, I would leave it up to your

18  discretion.

19          THE COURT:  Okay.  Thank you.

20          Mr. Jenkins, you've submitted this motion and

21  you've requested a new attorney.  We're at sentencing at this

22  point.  All the submissions by defense counsel have been

23  made.  You have made submissions.  I've reviewed them.

24          Are you prepared to retain counsel before

25  proceeding with sentencing?

US v. Jenkins - 11-CR-602

1      THE DEFENDANT:  I'm not really sure I can retain

2  counsel at this point.

3      THE COURT:  Well, then, at this point what we're

4  going to do is I'm going to proceed with sentencing.  All the

5  submissions have been made.  You'll have an opportunity to be

6  heard.  I reviewed all of your submissions and, if there's

7  anything else that you'd like to add this morning, certainly

8  you'll have an opportunity to do that.  So we're going to

9  proceed.

10     THE DEFENDANT:  Well, I mean, I've pretty much

11 demanded that -- I don't feel you have any right to sentence

12 me after all these antics and there's a lot of screwing

13 around here and I don't agree with it and I've repeatedly

14 asked Ms. Peebles here to file a petition to have you removed

15 and I think that there's grounds for it.  I've been going

16 over submissions the last few weeks and court transcripts.  I

17 mean, that's what I want.  I'd rather -- I mean, you've set a

18 record that -- I mean, she hasn't done what I've asked her to

19 do.  We've been going around for a few months arguing.

20     THE COURT:  Mr. Jenkins, no attorney's done --

21     THE DEFENDANT:  What's that?

22     THE COURT:  No attorney's done what you've asked

23 them to do, according to you, despite being represented by a

24 number of different counselors.  You started with Mr. Parry.

25 You referred to him as an idiot and not knowing what he was

US v. Jenkins – 11-CR-602

1    doing.   The Court sent numerous attorneys to meet with you in

2    the jail so you could retain someone.   You made derogatory

3    comments about the people that were very well-regarded in

4    this community, legal community, as far as representing

5    federal defendants.   Then we provided you with a list of CJA

6    attorneys that are admitted to the Northern District of

7    New York to give you an opportunity to retain somebody.   You

8    did retain an Aaron Goldsmith out of New York who represented

9    you at trial and then he requested to be relieved because of

10   his irreconcilable differences with you and not being able to

11   get along with you.   And then, you know, the federal public

12   defender's office was assigned by Judge Peebles and has

13   represented you, in this Court's view, in a very capable and

14   competent manner and here we are again.

15          So, sir, you can demand all you want.   You can

16   criticize.   You can blame everybody else.   You can say it's

17   the attorney's fault.   But we're at a point, sir, where we're

18   going to proceed with sentencing.   You have counsel.   You've

19   been represented well and you've had an opportunity to submit

20   everything that you've wanted to to this Court and I've

21   reviewed everything that you submitted, despite its

22   derogatory tone and comments, disrespectful comments to this

23   Court and everybody else that you've had to deal with, sir.

24          So, you'll be given a full opportunity to say

25   anything you want.   If you're not going to retain somebody,

1    certainly this Court is not going appoint another attorney to

2    represent you at this point.  So you --

3              THE DEFENDANT:  At this point I don't --

4              THE COURT:  So you can proceed by representing

5    yourself today.  That's up to you, sir, but we're going to

6    proceed with sentencing.

7              THE DEFENDANT:  Well, at this point, then, I

8    request my other attorney, Mr. Goldsmith, be ordered back on

9    the case.

10             THE COURT:  Sir, he requested -- he requested -- to

11   be relieved because he could not get along with you and did

12   not agree with the things that you were demanding that he do.

13             THE DEFENDANT:  Because I insisted he did some

14   work.

15             THE COURT:  Okay.

16             THE DEFENDANT:  And to fix his mistakes.

17             THE COURT:  Okay.

18             THE DEFENDANT:  But I didn't agree with him being

19   released.

20             THE COURT:  Well, sir, you didn't have to agree to

21   have him released.  He requested and the Court granted him,

22   based on the motion that he made and the papers that he put

23   in in this matter.  So we're going to proceed.

24             Counsel, have you received the presentence report

25   that was dated April 11th, 2014, and the addendum which is

1  dated May 20th, 2014?

2          Government receive those?

3          MS. THOMSON:  Yes, your Honor.

4          THE COURT:  Ms. Peebles, did you receive those?

5          MS. PEEBLES:  I have, your Honor, and Mr. Jenkins

6  has just voiced his concern that he disagrees with everything

7  that I'm doing and I'm in a bit of conundrum right now as to

8  how I should proceed.

9          THE COURT:  I'm just going to ask you some

10  background questions as to what you did with Mr. Jenkins and

11  then we'll let him do what he'd like to do with regard to

12  sentencing.

13          MS. PEEBLES:  Yes, Judge.

14          THE COURT:  Did you receive those documents?

15          MS. PEEBLES:  I did.

16          THE COURT:  And did you have an opportunity to

17  review them or share them with Mr. Jenkins?

18          MS. PEEBLES:  I have.

19          THE COURT:  Very well.  Thank you.

20          Mr. Jenkins, did you see those documents, did you

21  review them, the presentence report and the addendum?

22          THE DEFENDANT:  I mean, there's inaccurate

23  information in there.

24          THE COURT:  That was not my question, sir.

25          Did you see those documents and did you review

1  them?

2         THE DEFENDANT:  The presentence report, yes.

3         THE COURT:  And did you see the addendum, sir,

4  which was dated May 20th, 2014?

5         THE DEFENDANT:  Yes.

6         THE COURT:  Very well.

7         The Court has also received a letter from Bonnie

8  and George Jenkins, which was dated May 25th, 2014.

9         Did the government receive a copy of that

10  correspondence?

11         MS. THOMSON:  Yes, your Honor.

12         THE COURT:  Very well.

13         Does the government have any objections to the

14  facts as stated in the presentence report?

15         MS. THOMSON:  No, your Honor.

16         THE COURT:  Ms. Peebles, did you have an

17  opportunity to look at the facts as stated in the presentence

18  report and the review it with Mr. Jenkins?

19         MS. PEEBLES:  Yes, your Honor.

20         THE COURT:  Now, Mr. Jenkins, you have objections

21  to the facts as stated in the presentence report; is that

22  correct?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And do you want to make any further

25  record as to what those objections are at this point?  You

US v. Jenkins - 11-CR-602

1  submitted some things in writing.  Do you want to add

2  anything?

3        THE DEFENDANT:  I mean, I think -- I just think

4  this whole thing is ridiculous and I request a competent

5  attorney to -- this is foolish.  I mean, I don't -- I don't

6  really know what you're doing here.  I mean, I...

7        THE COURT:  My question is, sir:  Do you have

8  objections to the facts as stated --

9        THE DEFENDANT:  I object to everything.  Yes, I

10  object to everything.

11        THE COURT:  Very well.

12        Counsel for the government, any objections to the

13  offense level calculations in the presentence report?

14        MS. THOMSON:  No, your Honor, with the noted

15  addition for obstruction.  The government calculated it in

16  two ways.  It depends on whether the Court accepts that.

17        THE COURT:  The government intends to sentence with

18  the obstruction of justice?

19        MS. THOMSON:  Yes, your Honor.

20        THE DEFENDANT:  I obstructed justice?

21        THE COURT:  Ms. Peebles.

22        MS. PEEBLES:  I would like to be heard on that but

23  I'm not entirely sure whether Mr. Jenkins is wanting me to

24  speak on his behalf.

25        THE COURT:  Mr. Jenkins, would you like Ms. Peebles

US v. Jenkins - 11-CR-602

1    to be heard on the offense level calculation with regard to

2    the obstruction of justice enhancement or do you want to

3    address it yourself, sir?

4            THE DEFENDANT:  I think I probably should address

5    it myself, too, but I'd like to hear what she has to say.

6            THE COURT:  She's working with you so you're going

7    to have to give her permission, if you want her to address

8    this issue.

9            MS. PEEBLES:  Your Honor, I had an opportunity to

10   review the trial testimony.  It's my understanding that the

11   basis for this 2-level enhancement is as a result of Mr.

12   Jenkins taking the stand and testifying.  I don't see where

13   it would warrant a 2-level adjustment.

14           What I saw when I was reading through the

15   transcript, and my understanding of his testimony, was,

16   essentially, him agreeing with everything that the Canadian

17   authorities said when he was crossing the United States

18   border, aside from the fact that he was being -- acted

19   nervous and agitated.  Other than that, it appeared to me

20   that his testimony coincided with everything that the

21   Canadian authorities were testifying to during the border

22   search.

23           I didn't see anything in there where he actually

24   denied downloading or possessing or transferring child

25   pornography.  It seemed to me that he was talking about

US v. Jenkins — 11-CR-602

1    various people having potential access to his computer and

2    hard drives.  Then they played a phone call for him, which my

3    understanding of the phone call was the conversation he was

4    having with his parents concerning the number of images and

5    suggesting that there weren't nearly as many images as was

6    initially portrayed.

7              I don't see, your Honor, where there's a

8    justification for a 2-level enhancement based on that

9    testimony of Mr. Jenkins.  It appeared to me that he was

10   essentially in agreement.  And I can see in cases where an

11   individual may take the stand and say something totally

12   contrary to what's being offered by the government and the

13   jury rejects that testimony.  But in this instance, I didn't

14   see it when I reviewed the trial transcript.

15             So, it seems to me that it would be unfair to

16   enhance Mr. Jenkins' sentence as a result -- or his Guideline

17   range -- as a result of the testimony that I read during the

18   trial transcripts.

19             THE COURT:  Government like to be heard on this

20   issue?

21             MS. THOMSON:  Your Honor, I did lay out in the

22   government's sentencing memorandum three particular examples

23   that the government believes were examples of the defendant

24   committing perjury and providing material and false

25   information to the Court and jury.  I can go over those

US v. Jenkins - 11-CR-602

1   examples or rest on the papers.

2        THE COURT:  Why don't you go ahead and make your

3   record.

4        MS. THOMSON:  Your Honor, with regard to the first

5   example, the defendant testified on cross-examination that he

6   did not have the three thumb drives, that the thumb drives

7   found in the trunk he knew nothing about them.  He didn't

8   have them.  They were not his.  He was asked repeatedly on

9   cross-examination whether those thumb drives were in his

10  truck and repeatedly said that they were not, that he had no

11  knowledge of them and that they were not his.

12       However, during the testimony of the forensic

13  examiner Brian Braisted, the examiner testified that those

14  thumb drives had been previously connected to the laptop that

15  was entered into evidence and, so, the defendant's claim that

16  he has no knowledge, that these were not his flies in the

17  face of the evidence that was established in the trial, not

18  to mention the fact that the thumb drives were found in his

19  truck, that he was the only one driving and in his bag that

20  he acknowledged was his.

21       The second example cited in my memorandum is that

22  on direct examination, he testified that his attorney told

23  him to get rid of his cellular phone and his attorney told

24  him to not show up for his October trial date.  He stated

25  that his attorney advised him to break the law and to not go

US v. Jenkins – 11–CR–602

1   to his own trial in October.

2           However, later in his testimony, when asked again

3   whether his attorney instructed him not to appear on

4   October 18, 2010, as he had previously testified, he stated

5   that he wasn't told to appear.  It's different.  The

6   government sought use of that information in our motion in

7   limines and our pretrial discussions of the failure to appear

8   as consciousness of guilt.  So the defendant tried to tailor

9   his testimony to fit both circumstances and to try to take

10  away from the evidence establishing consciousness of guilt.

11          And, third and final, and very important during

12  this trial was the defendant testified that he had employees

13  working for his company, that those employees would come into

14  his home to obtain work orders via fax and email and they

15  would check his email and would check his fax machine at

16  least once a day when he was on vacation.  The purpose of his

17  testimony was clear, to show that other people had access to

18  his computer and had access to his home and that those other

19  people could have been responsible for the child pornography

20  that was found on his computer and on his media.

21          However, on cross-examination, the defendant

22  indicated that -- he was asked about his prior testimony in

23  Canada and in Canada when he was complaining about a delay

24  and about the negative impact that the delay and a speedy

25  trial had on him, he indicated that the work that would be

1   done with the computers would be work that would be done by

2   him and that he had to actually hire people to do that work

3   because of the restriction that he had without -- that he

4   couldn't use the computer in Canada.  Clearly, he tailored

5   his testimony to fit both circumstances.

6           In Canada it would be beneficial to show how he was

7   prejudiced by not being allowed access to his computer.  So

8   in that forum he indicated, I don't have anybody else, it's

9   just me.  But during the trial, he tailored his testimony to

10  indicate that there was lots of people that checked his

11  computers.  Both of them are not true.

12          THE COURT:  Okay.  Mr. Jenkins, would you like to

13  be heard on this matter before we move on?

14          MS. PEEBLES:  Judge, if I might for a moment.

15  There were only two thumb drives that had child pornography

16  on it, my understanding was the 4 gigabyte and the 8

17  gigabyte.  And the way I read his testimony was that it

18  seemed as though he said he didn't have knowledge of the

19  thumb drive.  I did not see that there was a denial of

20  ownership of the thumb drives, only a denial of whether they

21  were actually in the truck, that he understood them to be in

22  the truck.

23          But having said that, again, as far as not showing

24  up to the Canadian appearance, the way I read from the

25  lawyer, it almost laid out three options; one which would be

1   if you didn't show up, they'd issue a warrant, as long as you

2   didn't come back in the country.  That was his

3   interpretation.  I'm not sure how that was material to the

4   prosecution's case and how that would be a material

5   misstatement, as it didn't have anything to do with whether

6   or not he had child pornography on the computer or the thumb

7   drives.

8          And then, as far as other people in and out and

9   having access, again, Judge, I read the testimony on

10  cross-examination and direct and, again, I don't see how that

11  was material to whether or not he actually was the person who

12  downloaded the child pornography on the hard drive, other

13  than -- I mean, to suggest for a minute that no one would

14  ever possibly have access to his computer, I don't think he

15  said that when he was in Canada trying to explain how his

16  business would be prejudiced.

17         So, again, Judge, I'm familiar with the testimony.

18  I don't see where it warrants a 2-level obstruction.

19         Thank you.

20         THE COURT:  Thank you.

21         Mr. Jenkins.

22         THE DEFENDANT:  I didn't have an opportunity to

23  write all that down.  But that search was done out of my

24  sight.  I didn't see them pull any thumb drives out of any

25  bags.  They did connect them to the computers themselves.

US v. Jenkins - 11-CR-602

1    The government's -- the government didn't provide -- I

2    specifically requested -- and you ignored them and the

3    government ignored them -- the original CDs from -- that were

4    supposed to be turned over to my Canadian attorney.  I don't

5    know if he got them or not.  I think he did.  That was

6    supposed to have all the information, technical information

7    on it and I never got any of that.  Those thumb drives were

8    not connected to the computer before the Canadian government.

9    The whole concept is absurd.  The government didn't provide

10   the dates.  It's readily accessible information.  You don't

11   have to be a forensic scientist to figure out when it was.

12   But the government -- there should have been first and last

13   dates.  The government didn't provide them because the

14   Canadians plugged them in after my arrest.  There's files on

15   the thumb drive that are dated after my arrest.  Nothing

16   makes sense here and nothing -- none of it came out at trial.

17   That's one of the things -- that's why I demanded a new

18   attorney.  I wanted a retrial.  None of it came out.  None of

19   that came out right at trial and it wasn't done to my

20   satisfaction.  And the government suppressed --

21            THE COURT:  Mr. Jenkins --

22            THE DEFENDANT:  -- paperwork.  They got --

23            THE COURT:  Mr. Jenkins, I'm asking you about your

24   trial testimony and the obstruction of justice enhancement.

25            THE DEFENDANT:  I have to --

US v. Jenkins – 11-CR-602

1          THE COURT:  You'll be given an opportunity to

2     discuss anything else afterwards.

3          Right now, sir, do you have anything else to say

4     about the obstruction of justice enhancement?

5          THE DEFENDANT:  I disagree with it.   The

6     testimony -- the government is apparently trying to

7     misconstrue some testimony I gave in Canada, which is pretty

8     much what they do.  I just said that we had to switch jobs

9     around.  I didn't say I had the -- I don't remember exactly

10    what I said.  I don't believe I said I had to hire somebody,

11    but I just had to pay people.  We had to switch jobs.  I know

12    what they're trying to do.  They're just trying to

13    misconstrue it and it's...

14         THE COURT:  Okay, sir, are you done with regard to

15    that?

16         THE DEFENDANT:  Yeah, I'm done with that.

17         THE COURT:  Well, the Court heard the testimony.

18    The Court sat through the trial, obviously, and it was clear

19    to this Court that Mr. Jenkins was trying to, at several

20    points in his testimony, suggest that other people were

21    responsible.  If there was child pornography on his computer,

22    that he certainly was not responsible and that he did perjure

23    himself at different instances, including the three that the

24    government has cited and in the Court's view other instances

25    where he denied being online at certain times and he was

US v. Jenkins - 11-CR-602

1    challenged by the government with the forensic records of his

2    computer of times that he went on the computer and signed on

3    with certain passwords, names --

4              THE DEFENDANT:  There were no --

5              THE COURT:  -- and suggested that there was, you

6    know, a download of child pornography right after that time

7    and him denying that he had done that.

8              So there was testimony, in this Court's view, at

9    various instances throughout his testimony at trial where he

10   perjured himself.  I think it was obvious to this Court and

11   certainly obvious to the jury.

12             The criminal history computation.

13             The government have any objection?

14             MS. THOMSON:  No, your Honor.

15             THE COURT:  Ms. Peebles?

16             MS. PEEBLES:  No, your Honor.

17             THE COURT:  Mr. Jenkins, you want to be heard on

18   the criminal history computation?

19             THE DEFENDANT:  (No response.)

20             THE COURT:  Do you have any objection --

21             THE DEFENDANT:  I'm sorry?

22             THE COURT:  -- to your criminal history

23   computation?  Do you understand what that is?

24             (Discussion held off the record between defendant

25             and attorney.)

US v. Jenkins – 11-CR-602

1          THE DEFENDANT:  No.

2          THE COURT:  No objection, okay, very well.

3          The government?

4          MS. THOMSON:  Thank you, your Honor.

5          During this trial, when the defendant was

6   cross-examined with regard to a recorded phone call, a phone

7   call between the defendant and his father, I think the father

8   made a comment that does the very best job of summarizing the

9   very point that Mr. Jenkins is missing.

10          During this telephone call the defendant is arguing

11   with his father, a father who has supported him throughout

12   his case.  He continues to argue with him and the father says

13   quite poignantly:  You should have never had that crap with

14   you and squarely tells the defendant that the position that

15   he's in is of his own doing.  That is the philosophy of the

16   father in this case.

17          The philosophy of the son in this case is that he

18   wants to blame everybody else.  It's everyone else's fault

19   but his.  He wants it to be about international conspiracies,

20   about falsifying evidence, evidence that he indicates in his

21   submission on September 9, 2014, that the government's case

22   "required evidence to be falsified so their 'special fagots'

23   did as much".

24          According to the defendant, this case is about this

25   honorable Court conspiring with the government.  He indicates

US v. Jenkins – 11-CR-602

1   in his November 5th, 2014, submission, "with no idiot lawyer

2   to sabotage the defense, the Court itself began harassing me

3   for several months obstructing, ignoring requests or agreed

4   with whatever incoherent nonsense the government spewed

5   issuing decisions and orders simply to prejudice and gain

6   advantages (prosecutorial) and also praised the dismissed and

7   incompetent attorney for among other things 'an outstanding

8   job'".  That's what the defendant wants it to be about.

9          We've spent a lot of time with dealing with those

10  accusations with the complaint about the double jeopardy, the

11  complaint about the case being in the United States instead

12  of Canada.  We've spent a lot of time going over multiple

13  attorneys, going over multiple proceedings.

14         At the end of the day what this case is about is a

15  man, the defendant, amassing a collection of child

16  pornography, a collection that was so dear to him he couldn't

17  even take a vacation without having it out of his sight, a

18  collection that included the rape, abuse of children.  The

19  Court saw those images and the Court only saw a small sliver

20  because that's what was presented at trial to spare the jury

21  and to spare the Court from having to look at his collection,

22  the images he was interested in.  That's what this case is

23  about.

24         The defendant, as I indicated, wants it to be about

25  all those things but he takes it a step even further, a step

US v. Jenkins – 11–CR–602

1   that is so low it's hard to even describe.

2          In his September 9, 2014, submission on Page 2 the

3   defendant takes it to the level of indicating, with regard to

4   what was on his computer, "most, by way are 'webcam' videos,

5   they (victims) intentionally produced and broadcast

6   (themselves) over the internet and should be prosecuted

7   (themselves)".

8          So now it's the children's fault.  It's their fault

9   that he had access and made a collection of their abuse.

10  That's a low I haven't really seen yet.

11         But while we're talking about that, the defendant

12  also makes numerous claims and complaints about double

13  jeopardy, about how unfair it is that he was tried in a court

14  in the United States.  He complains that if the matter had

15  stayed in Canada, he would have had exposure that was ten

16  times less than the exposure that he has in the United

17  States.

18         Your Honor, that is akin to killing your parents

19  and crying orphan.  The matter didn't remain in Canada

20  because he chose not to show up for those charges.  That was

21  his choice and he can blame the attorneys and he can blame

22  the system all he wants but, like his father indicated, you

23  should have never had that crap with you and when you did,

24  you should have dealt with it, but he didn't, and that's why

25  we're here.

US v. Jenkins – 11–CR–602

1          And after you remove all of the nonsense, all of

2    the antics, all of the baseless allegations that we've

3    listened to for years, I hope the Court goes back to the core

4    of why we're here.  We're here because of his collection of

5    child pornography and, because of that collection and because

6    of all the factors that the Court I know will consider, the

7    sentence should reflect the seriousness of the crime, afford

8    adequate deterrent and, most importantly, show the defendant

9    that he only has himself to blame.

10          The government, as noted in the sentencing

11   memorandum, is seeking a sentence within the Guideline range,

12   as well as the other imposition of restitution as the parties

13   have carefully briefed.

14          We're also seeking the imposition of a fine in the

15   amount of $20,000 and, of course, the imposition of the

16   special assessment of $200.

17          Thank you.

18          THE COURT:  Okay.  Mr. Jenkins, is it your

19   intention to allow Ms. Peebles to be heard before you're

20   heard?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Go ahead, Ms. Peebles.

23          MS. PEEBLES:  Your Honor, in my sentencing

24   submission to the Court, I lay out the basis for our request

25   to ask the Court to depart or vary from the Guideline, which

23

US v. Jenkins – 11-CR-602

1   now has been increased by two levels for the obstruction,

2   primarily because of the culpability of Mr. Jenkins in

3   connection with the actual possession and transport of child

4   pornography.

5           I know the Court's aware of many individuals that

6   come before this Court that have been charged with similar

7   types of acts and that is the downloading and receipt of

8   child pornography.  Typically what we find are tens of

9   thousands of images, sometimes more, a hundred thousand

10  images, as a result of the peer-to-peer software sharing

11  system.  We see distribution.  We see multiple efforts at

12  sharing and chat rooms.  We don't have any of that in this

13  case.

14          Now, if we leave aside all of the, shall we

15  classify them as antics by Mr. Jenkins and where we are today

16  and some of his concerns with regard to the proceedings, if

17  we leave that aside and look at the actual conduct for what

18  he's here today to be sentenced for, I would suggest that he

19  is at a level, your Honor, on a continuum that is much less

20  than those that are typically before this Court.

21          I think, your Honor, all things considered, that

22  the sentencing enhancements as we laid out in our sentencing

23  submissions really overinflate the culpability of Mr. Jenkins

24  in the actual possession and transport of child pornography.

25          I know that there are some issues concerning,

US v. Jenkins - 11-CR-602

1   obviously, his concern with the proceeding and the process

2   and how we wound up here.  But I will say this.  I've seen

3   and I've read the letter from his Canadian attorney,

4   Mr. Edgley, and I refer to it in my sentencing submission and

5   it did say:  The third option is that you simply not return

6   to Canada, in which case there would be a bench warrant

7   issued for your arrest and if you ever tried to come to

8   Canada again, you would be subject to arrest pursuant to this

9   warrant and also the money that was posted for bail would be

10  forfeited to her Majesty the Queen and, as we discussed, he

11  would also get his lawyer fee out of that money.

12          So, he laid it out as option one, option two, and

13  option three.  Again, your Honor, I think in hindsight,

14  Mr. Jenkins would have chose to go to his trial and attend

15  the proceedings in Canada.  It would have been the better

16  choice.  But he didn't do that for, I believe, the reasons

17  set forth in the letter sent by Mr. Edgley.

18          Having said that, your Honor, I know Mr. Jenkins

19  has been held in local custody.  He's been subjected to a

20  competency evaluation.  The psychologist did find that he was

21  competent and that was before the Court.  And I don't think,

22  your Honor, that sitting in the local -- well, I believe

23  sitting in a local jail for a three-year period has been a

24  struggle for Mr. Jenkins and he's moved around from place to

25  place.  It's been a difficult three years for him.  This case

US v. Jenkins - 11-CR-602

1   has been pending literally from Canada for a five-year

2   period.  He was a reputable electrician with no prior

3   criminal history.

4           I think the fact that he had no prior criminal

5   history, your Honor, suggests that the chances that he would

6   be a recidivist is very minimal and I think, your Honor, this

7   entire process has taken its toll on him to the point where

8   we are where we are today and his ability to think clearly

9   and make articulate arguments has somewhat been clouded

10  because of the way in which the process has all unfolded.

11          I'm not, again, Judge, suggesting that there's

12  merit to some of the arguments that Mr. Jenkins wanted to

13  bring forth with but he's filed those supplemental motions on

14  his own.

15          But I do think, if the Court considers exactly what

16  he was convicted of by the jury, that a sentence of no more

17  than 5 years would be appropriate in this case because of his

18  lack of criminal history, because of the continuum where he

19  falls, and, also, your Honor, because of the circumstances in

20  which he wound up here.

21          As far as the restitution goes, your Honor, I think

22  what we've set out in our supplemental sentencing memo lays

23  down the methodology that we believe the Court should implore

24  in terms of deciding what the appropriate amount is in this

25  case, taking into account the *Paroline* factors and the basis

US v. Jenkins – 11-CR-602

1   for those arguments, the least amount would be nontrivial in

2   our opinion based on the assessment of taking into account

3   the approach that the Supreme Court suggested, looking at

4   future individual downloaders and also past downloaders in

5   combination are factors that the Court needs to consider in

6   addition to the relative culpability of Mr. Jenkins, as

7   opposed to those that produce and share and distribute those

8   images.  And we believe an amount of no more than $5,000 per

9   victim in this case would certainly satisfy the *Paroline*

10  factors and that's what we're asking the Court to consider.

11          As far as the fine amount, your Honor, $20,000 for

12  Mr. Jenkins who doesn't have the resources at this point in

13  time and the reason he didn't fill out the financial

14  affidavit --

15          THE COURT:  How do we know that?  How do we know

16  what his resources are?  He's never cooperated to fill out a

17  financial affidavit.

18          MS. PEEBLES:  Well, now he's in a catch 22 since we

19  have the perjury charges pending and, as his lawyer, we would

20  have to advise him to invoke his Fifth Amendment right, which

21  we have, and that's an issue.

22          THE COURT:  I understand that.

23          MS. PEEBLES:  Perhaps the Court could reserve

24  decision on the amount of the fine to impose until the

25  perjury charges are addressed by the district court and

US v. Jenkins – 11-CR-602

1  again, Judge, I believe Mr. Jenkins is in somewhat of a catch

2  22 on that for the --

3          THE COURT:  Situation created by who?

4          THE DEFENDANT:  You.

5          THE COURT:  There you go.

6          Go ahead, Ms. Peebles.

7          MS. PEEBLES:  Yeah.  So with that having been said,

8  your Honor, I would just ask the Court to consider our

9  submissions in that regard and, also, to impose a sentence of

10 no more than 5 years.

11         THE COURT:  Thank you, Ms. Peebles.

12         Mr. Jenkins, would you like to be heard, sir?

13         THE DEFENDANT:  Yeah, I don't think it's...

14         THE COURT:  If you want to be heard.

15         THE DEFENDANT:  I don't remember what the

16 prosecutor said now.  I kind of forgot.  I haven't been able

17 to write anything down.

18         THE COURT:  Sir, if you want to be heard, please

19 stand up and speak into the microphone.  You can be heard.

20         THE DEFENDANT:  You said a lot of stuff about

21 downloading, getting stuff on the computer.  That was never

22 proved before or after the other.  I'm just so frustrated

23 right now I can't even think.  I couldn't write stuff down

24 when she was talking.  Whatever -- whatever finances they did

25 put on this, the government said they subpoenaed that stuff.

US v. Jenkins – 11–CR–602

1   It wasn't to be used for sentencing purposes or restitution.

2   So I object to anything that they refer to on there being

3   used that would determine restitution.  And I can't remember

4   what she said now.

5              (Discussion held off the record.)

6              THE DEFENDANT:  You know, whatever I say doesn't

7   make any difference.  You made up your mind a long time ago.

8   You made up your mind a long time ago.  This is just –– this

9   is just ridiculous.  I object to the whole thing.

10             THE COURT:  Are you done, sir?

11             THE DEFENDANT:  I'm done.

12             THE COURT:  Okay.  The Court's prepared to impose

13  sentence.

14             The Court has reviewed and considered all the

15  pertinent information, including, but not limited to, the

16  presentence investigation report, the addendum, submissions

17  by counsel, the Sentencing Guidelines manual, as well as the

18  factors outlined in 18, U.S.C., Section 3553(a).

19             The Court adopts the factual information and the

20  Guideline applications contained in the presentence

21  investigation report with the following exception:  The Court

22  finds the defendant obstructed justice, the administration of

23  justice at trial as defined in USSG, Section 3C1.1 and,

24  therefore, a 2-level enhancement for his conduct is

25  warranted.

US v. Jenkins – 11–CR–602

1        Therefore, the Guideline imprisonment range goes

2    from 168 to 210 months to a Guideline imprisonment range of

3    210 to 262 months.

4        Having been convicted at trial of Counts 1 and 2 of

5    the indictment, it is the judgment of the Court that you are

6    hereby committed to the custody of the bureau prisons to be

7    imprisoned for a total term of 225 months.

8        This term consists of 225 months on Count 1 and 120

9    months on Count 2 to run concurrently.

10       The Court finds this sentence is sufficient but not

11   greater than necessary to comply with the purposes of

12   sentencing, after considering the defendant's background, the

13   nature of the offense, and the defendant's behavior before

14   this Court.

15       This defendant has never even hinted at an

16   acceptance of responsibility, has blamed everybody and

17   everyone for his criminal activity, including the Canadian

18   law enforcement officers, the Canadian court, his attorney in

19   Canada, his attorneys who tried so desperately to help him

20   here in the United States, the prosecution, and even this

21   Court.  You've made it extremely clear that, without a doubt,

22   you accept absolutely no responsibility for your actions.

23       I couldn't disagree with your attorney more when

24   she says that you're not a threat to commit this crime again.

25   You've demonstrated that you have a total lack of respect for

US v. Jenkins - 11-CR-602

1    the law and disdain for the law.  That's in the Court's view

2    it is without question that, if given the opportunity, you

3    will do exactly what you want to do in any situation and you

4    are a very high risk to reoffend.

5            You attempted to transport thousands of images and

6    videos of child pornography into Canada and then later failed

7    to appear for your Canadian trial.  You attempted to evade

8    justice and when you were arrested in the United States, you

9    blamed Canada.  You blamed the U.S. government, law

10   enforcement for doing illegal acts to prosecute you.

11           Based on your evasion of the charges in Canada,

12   there is an active warrant for your arrest in Canada.  You

13   have since demonstrated a total disregard of the law and a

14   complete lack of respect for this Court and any of the

15   attorneys who have tried to help you.

16           Based on these factors and your large collection of

17   child pornography, the Court has imposed a sentence that

18   reflects the seriousness of your crime, that promotes respect

19   for the law, and that provides you with adequate deterrence

20   from committing further crimes, and that protects the public.

21           While in custody, the Court recommends you receive

22   mental health treatment and sex offender treatment when, and

23   if, eligible.

24           With regard to restitution, the defendant shall pay

25   to the victims of this offense pursuant to 18, U.S.C.,

US v. Jenkins – 11–CR–602

1  Section 2259.  The Court finds that, based on the indictment,

2  trial evidence, jury verdict and the government's memorandum

3  of law, the defendant knowingly transported and possessed the

4  images of Vicky, L.S., Cindy and Angela.  And I'm referring

5  to docket numbers 10, 151, 152, 154, 178 and 183.

6          The Court also finds that, based on the

7  government's memorandum of law and exhibits, that each of the

8  four victims has outstanding losses caused by the continuing

9  traffic of their images in the following amounts:

10         Vicky has outstanding losses of approximately

11 $500,875.

12         L.S. has outstanding losses of approximately

13 $1,841,400.

14         Cindy has outstanding losses of approximately

15 $1,344,963.

16         And Angela has outstanding losses between 366,000

17 and 587,000.

18         The Court finds, again, based on the government's

19 memorandum of law and exhibits, that, while it is far from

20 clear that this aggregation is required by *Paroline* in the

21 United States, even assuming that this aggregation is

22 required, the losses attributed solely to the group of

23 traffickers amounts to at least half the victims losses,

24 given that appears it is likely that the public's viewing of

25 the victim's images is the cause of victims losses as it is

US v. Jenkins - 11-CR-602

1    that the victims original abusers is the cause of those

2    losses.

3            Finally, the Court finds, again, based on the

4    government's memorandum of law and exhibits, that the amounts

5    of restitution that comport with the defendant's relative

6    role in the causal process that underlies each victim's

7    general losses are as follows:

8            $3,000 for Vicky; two, $3,000 for L.S;, three,

9    $3,000 for Cindy; and, four, $3,000 for Angela.

10           The Court notes that it rendered this last finding

11   based on the careful consideration of the factors enumerated

12   in *Paroline*.

13           For example, the Court finds that the number of

14   past criminal defendants found to have contributed to the

15   victim's general losses are as follows:

16           502 with regard to Vicky, 149 with regard to L.S.,

17   123 with regard to Cindy; and 17 with regard to Angela.

18           The Court finds that there is no evidence before it

19   to support a reasonable prediction of the number of future

20   offenders likely to be caught and convicted for crimes

21   contributing to the victim's general losses, nor is there

22   evidence before it to support a reasonably reliable estimate

23   of the broader number of offenders involved.

24           The Court finds that the defendant did not

25   reproduce or distribute images of the victims.  The Court

 1   finds that the defendant has no connection to the initial

 2   production of the images.

 3        The Court finds the defendant possessed the

 4   following number of images of the victims:

 5        Three videos or 222 images of Vicky; 3 images of

 6   L.S., 1 image of Cindy, and 1 image of Angela.

 7        While the defendant's per capita share of Vicky's

 8   total losses amounts to only approximately $500, the Court

 9   finds that the amount should be increased to $3,000 due to,

10   one, the above-average number of images of her that he

11   possessed and, two, the particularly explicit and offensive

12   nature of these images.

13        While defendant's per capita share of L.S.'s total

14   losses amounts to approximately $6,138, the Court finds that

15   the amount should be diminished to $3,000 due to a

16   below-average number of images of her that he possessed; and,

17   two, the fact that the government itself has estimated the

18   defendant's share as $3,000.

19        While defendant's per capita share of Cindy's total

20   losses amounts to approximately $5,423, the Court finds that

21   the amount should be diminished to $3,000, due to the

22   below-average number of images of her that he possessed; and,

23   two, the fact that the government itself has estimated the

24   defendant's share as $3,000.

25        Finally, while the defendant's per capita share of

US v. Jenkins - 11-CR-602

1   Angela's losses amounts to between $20,333 and $32,611, the

2   Court finds that the amount should be diminished to $3,000

3   due the below-average number of images of her that he

4   possessed and the fact that the government itself has

5   estimated the defendant's share at $3,000.

6          After considering the factors outlined in 18,

7   U.S.C., Section 3664(F)(2), including your financial

8   resources, other assets, restitution is to be paid

9   immediately.

10         The Court also finds that, based on your financial

11  resources, projected earnings and your financial obligations,

12  that you do have the ability to pay a fine.  Therefore, you

13  shall pay to the clerk of court a fine in the amount of

14  $40,000, which is due and payable immediately.

15         You shall also pay a special assessment of $200,

16  which is due immediately.

17         Upon your release from imprisonment, you shall be

18  placed on supervised release for a term of 25 years on each

19  count to run concurrently.

20         While on supervised release, you shall not commit

21  another federal, state or local crime.  You shall comply with

22  the standard conditions that have been adopted by this Court.

23  You shall comply with the following special conditions that

24  have been provided to you and your attorney.

25         The Court adopts these special conditions which

US v. Jenkins - 11-CR-602

1  will be made a part of this record.

2           Ms. Peebles, did you have an opportunity to review

3  those special conditions with Mr. Jenkins prior to this

4  proceeding.

5           MS. PEEBLES:  Yes, your Honor, and we are objecting

6  to the imposition of the ten special conditions that have

7  been set forth in the addendum.

8           THE COURT:  Very well, but you did review them with

9  him?

10          MS. PEEBLES:  Yes, your Honor.

11          THE COURT:  Mr. Jenkins, you saw those special

12  conditions prior to these proceedings today?

13          THE DEFENDANT:  Yes, I believe I did.

14          THE COURT:  Well, sir, you did or you didn't?

15          THE DEFENDANT:  Yes, I think I did -- yes.

16          THE COURT:  Sir, you need to understand that you're

17  going to be required to abide by those special conditions

18  once you're released and you're on supervised release.

19

20

21                    *          *          *

22          (Special conditions distributed to defendant

23           and counsel are as follows:)

24          1.  You shall register with the state sex offender

25  registry agency in any state where you reside, are employed,

1    carry on a vocation or are a student.

2            2.   You shall not have any direct contact with a

3    person under the age of 18 unless it is supervised by a

4    person approved of by the probation officer.  You shall not

5    have indirect contact with a person under the age of 18

6    through another person or through a device (including a

7    telephone, computer, radio, or other means) unless it is

8    supervised by a person approved of by the probation officer.

9    You shall reasonably avoid and remove yourself from

10   situations in which you have any other form of contact with a

11   minor.

12           3.   You shall not be in any area in which persons

13   under the age of 18 are likely to congregate, such as school

14   grounds, child care centers, or playgrounds, without the

15   permission of the probation officer.

16           4.   You shall participate in a mental health

17   program, which will include, but will not be limited to,

18   participation in a treatment program for sexual disorders.

19   The program shall be approved by the United States Probation

20   Office.

21            5. Your supervised release may include

22   examinations using a polygraph, computerized voice stress

23   analyzer, or other similar device to obtain information

24   necessary for supervision, case monitoring, and treatment.

25   You shall answer the questions posed during the examination,

US v. Jenkins – 11-CR-602

1   subject to your right to challenge in a court of law the use

2   of such statements as violations of your Fifth Amendment

3   rights.  In this regard, you shall be deemed to have not

4   waived your Fifth Amendment rights.  The results of any

5   examinations shall be disclosed to the United States

6   Probation Office and the Court, but shall not be further

7   disclosed without the approval of the Court.

8           6.  You shall contribute to the cost of any

9   evaluation, testing, treatment and/or monitoring services

10   rendered in an amount to be determined by the probation

11   officer based on your ability to pay and the availability of

12   third-party payments.

13           7.  You shall not use or possess any computer or

14   any other device with online capabilities, at any location,

15   except at your place of employment, unless you participate in

16   the Computer Restriction and Monitoring Program.  You shall

17   permit the United States Probation Office to conduct

18   periodic, unannounced examinations of any computer equipment

19   you use or possess, limited to all hardware and software

20   related to online use, (e.g., use of the World Wide Web,

21   email, instant messaging, et cetera.)  These examinations may

22   include retrieval and copying of data related to online use,

23   and the viewing of pictures and movies which may be potential

24   violations of the terms and conditions of supervised release

25   from this computer equipment including any internal or

1    external peripherals, internet-capable devices, and data

2    storage media.  This computer equipment may be removed to the

3    Probation Office or to the office of their designee for a

4    more thorough examination.  The Probation Office may use

5    and/or install any hardware or software system that is needed

6    to monitor your computer use, subject to the limitations

7    described above.

8            8.  If your employment requires the use of a

9    computer, you may use a computer in connection with the

10   employment approved by the probation officer, at your place

11   of employment, provided you notify your employer of:  (1) the

12   nature of your conviction; and (2) the fact that your

13   conviction was facilitated by the use of the computer.  The

14   Probation Office must confirm your compliance with this

15   notification requirement.

16           9.  You shall not incur new credit charges or open

17   additional lines of credit without the approval of the

18   probation officer.

19           10.  The defendant shall apply all monies he

20   receives from any income tax refunds, lottery winnings,

21   judgments, and/or any other anticipated or unexpected

22   financial gains to the outstanding court-ordered financial

23   obligation.

24                    *          *          *

25           THE COURT:  You shall also forfeit to the United

US v. Jenkins - 11-CR-602

1    States all right, title and interest in the items listed in

2    the forfeiture allegation contained in the indictment and

3    further listed in the special verdict form.

4           Both parties have a right to appeal this sentence

5    in certain limited circumstances.  You are advised to consult

6    with your attorney to determine whether or not an appeal is

7    warranted.

8           Any appeal must be filed within 14 days of the date

9    of the judgment being filed in this case.

10          Defendant will be remanded to the custody of the

11    United States Marshals in accordance with the terms of this

12    sentence.

13          (Discussion held off the record between courtroom

14           deputy and the Court.)

15         THE COURT:  I want to make it clear for the record

16    that with the obstruction of justice enhancement, the Court

17    found that the offense level was 37 and the Criminal History

18    Category was I, which gave us the Guideline imprisonment

19    range of 210 to 262 months.

20          Anything further on behalf of the government?

21         MS. THOMSON:  Your Honor, first I realize that this

22    matter has taken a great deal of the Court's time already,

23    but I would ask if the Court would just allow me to briefly

24    supplement the record with regard to the issue of

25    substitution of counsel, just in the interest of making sure

US v. Jenkins – 11–CR–602

1    that the record is complete and that the record reflects the

2    government's position with regard to the substitution of

3    counsel.

4            THE COURT:  Go ahead.

5            MS. THOMSON:  Thank you, your Honor.

6            Your Honor, the Court, to have substituted counsel,

7    must have found that there was good cause for that

8    substitution, as the defendant does not have an absolute

9    right to substitution of counsel.

10           The defendant didn't even make out a showing of

11   good cause in his submissions.  If you actually look at what

12   he wrote with regard to counsel, he indicated on Page 2 of

13   his submission, public defender's office had done a

14   better-than-average job litigating within the "pretend

15   subject matter jurisdiction" the Northern District exerts.

16           He doesn't really explain any bases for the

17   substitution of counsel, other than to go on and say it was

18   wrong for Court to order the defendant to retain private

19   counsel, which previously happened, was wrong to dismiss the

20   attorney, which the Court did at the attorney's request, and

21   that the Court was incompetent and caused financial strain

22   and the Court's CJA panel of attorneys are not qualified or

23   are easily corrupted.

24           None of the allegations that he set forth or the

25   comments that he made rise to the level of good cause, the

US v. Jenkins – 11–CR–602

 1   timeliness of the motion also again with counsel here, the
 2   Court having allowed him that substitution of counsel.
 3           There was no actual nature of a conflict that was
 4   explained, just the defendant wanted, yet again, to have
 5   things delayed so that he may or may not take an action which
 6   we've been down that road before.
 7           THE COURT:  And, as I've indicated, all the
 8   defendant's submissions are docketed and they're on the
 9   record and he certainly agreed to have Ms. Peebles
10   participate this morning and so he has been represented and
11   he's had a fair and fall opportunity to represent himself and
12   the record that he would like.
13           MS. THOMSON:  Thank you, your Honor.
14           THE COURT:  I think that matter is sufficiently
15   covered.
16           Ms. Peebles, anything further on behalf of
17   Mr. Jenkins?
18           MS. PEEBLES:  No, your Honor.
19           THE COURT:  Thank you, Ms. Peebles, for your
20   representation.
21           Mr. Jenkins, anything further, sir?
22           THE DEFENDANT:  I think you're a fraud and I think
23   this whole thing's a fraud.  This is ridiculous.
24           THE COURT:  Okay, sir.  Good luck to you.
25           THE CLERK:  Court is adjourned.

Case 5:11-cr-00602-GTS   Document 201   Filed 03/02/15   Page 42 of 42

US v. Jenkins – 11-CR-602

1          (Proceedings adjourned at 10:56 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25